UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                        )
BENOIT BROOKENS,                        )
                                        )
            Plaintiff,                  )
                                        )
      v.                                )        Civil Action No. 08-0086 (ESH)
                                        )
ELAINE L. CHAO,                         )
Secretary, Department of Labor          )
                                        )
            Defendant.                  )
_____)

## DEFENDANT'S MOTION TO DISMISS
## OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Defendant Elaine L. Chao, Secretary, United States Department of Labor, respectfully

moves to dismiss this action in its entirety, or in the alternative, for summary judgment on certain

claims, in this case involving allegations of employment discrimination.  First, Plaintiff failed to

exhaust his administrative remedies for several of his claims and was untimely in suing for

others.  Second, his complaint fails to state a claim upon which relief may be granted because his

complaint fails to provide a sufficient factual basis to support viable claims of employment

discrimination.  Third, still others of his claims fail because the undisputed facts demonstrate that

he was simply ineligible for the positions he sought and was denied.

*Pro se* Plaintiff is advised that if he fails to respond to this motion to dismiss, the Court

may grant this motion and dismiss the case or particular claims because of the failure to respond.

*See Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988).

*Pro se* Plaintiff will also take note that the assertions contained in the accompanying

declarations and other attachments in support of Defendant's motion for summary judgment will

be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in Defendant's declarations and attachments. *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e); and Local Civil Rules 7(h) and 56.1.

Attached hereto are: a supporting memorandum, a statement of material fact, supporting exhibits, and a proposed order.

April 24, 2008                                    Respectfully submitted,

                                                         _____
                                                 JEFFREY A. TAYLOR, D.C. Bar # 498610
                                                 United States Attorney

                                                   /s/
                                                 _____
                                                 RUDOLPH CONTRERAS, D.C. Bar # 434122
                                                 Assistant United States Attorney

                                                   /s/
                                                 _____
                                                 ALAN BURCH, D.C. Bar # 470655
                                                 Assistant United States Attorney
                                                 555 4th St., N.W.
                                                 Washington, D.C. 20530
                                                 (202) 514-7204
                                                 alan.burch@usdoj.gov

OF COUNSEL:
Rolando Valdez
Office of the Solicitor
U.S. Department of Labor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| | ) | |
| BENOIT BROOKENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 08-0086 (ESH) |
| | ) | |
| ELAINE L. CHAO, | ) | |
| Secretary, Department of Labor | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

The United States Department of Labor and Secretary Elaine L. Chao, by her undersigned counsel, provides this memorandum in support of her position that the complaint in this action should be dismissed in its entirety, or in the alternative, that certain claims are subject to summary judgment in Defendant's favor. On January 16, 2008, Plaintiff, a GS-12 International Economist in the Department of Labor's ("DOL" or "Agency") Bureau of International Labor Affairs ("ILAB"), filed this discrimination complaint raising a dozen different claims, including several recent personnel actions and numerous non-selections for various GS-15 positions since 1994.

Dismissal is appropriate for several reasons. First, five claims are untimely because Plaintiff filed this action more than 90 days after he received a decision on his appeal from the EEOC Office of Federal Operations ("EEOC"). Second, he failed to exhaust his administrative remedies with respect to two claims by failing to bring them to the administrative process in a timely manner. Third, all of his claims fail to state a claim upon which relief can be granted

because his complaint fails to provide a sufficient factual basis to support an inference by the Court that the agency's various actions were taken on the basis of his race, age, or prior EEO activity or that any were materially adverse to Plaintiff.

Finally, and in the alternative, summary judgment is appropriate because it is not open to dispute that Plaintiff, as a GS-12 employee, was simply ineligible for the GS-15 positions he applied for and was denied. Moreover, the facts of his GS-12 status and resulting ineligibility are sufficiently well established from prior administrative proceedings to trigger issue preclusion on this point, further confirming the appropriateness of summary judgment.

## BACKGROUND

Plaintiff brings this civil action, *pro se*, pursuant to Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. Complaint ("Compl.") at ¶ 1. Plaintiff, who has been employed as an International Economist in DOL's ILAB division at grade GS-12 since 1990, identifies himself as a "Black American male, over age forty (40)." *Id.* at ¶¶ 2(A), 5. The Complaint asserts that Plaintiff filed a single discrimination complaint with DOL in 2001. *Id.* ¶ 8. The Complaint appears to identify 12 different personnel actions that Plaintiff alleges adversely affected him, though as explained more below, the Complaint does not specifically state how Plaintiff was discriminated against in each instance. To facilitate the analysis of these twelve claims, Defendant's memorandum refers to them as sequentially numbered below:

### Personnel Action No. 1

In paragraphs 8-16 and 29-30, the Complaint identifies a set of facts related to (a) several intra-agency DOL ILAB details, (b) details from DOL to the Department of State in 2001, and (c)

Plaintiff's requests, in or around 1997, for desk audits. Beginning in 2001, Plaintiff filed administrative complaints about these personnel actions with the Department of Labor's Civil Rights Center ("CRC"). Following CRC's investigation of these claims, Plaintiff requested an administrative hearing before an EEOC Administrative Judge ("AJ"). On June 24, 2004, the AJ granted DOL's motion for summary judgment, finding that no discrimination had occurred. Plaintiff appealed the AJ's decision to the EEOC Office of Federal Operations ("OFO") and the OFO denied Plaintiff's request and affirmed the AJ's findings. *See Brookens v. Chao*, EEOC Doc. 01A45258, 2005 WL 1073796 (Apr. 28, 2005). Plaintiff filed a timely motion for reconsideration. The OFO accepted Plaintiff's motion and reconsidered its prior decision as well as the entire record. The OFO denied Plaintiff's request for reconsideration and noted that the Plaintiff did not have any more administrative appeal rights. *Brookens v. Chao*, EEOC Doc. 05A50920, 2005 WL 1606071 (June 22, 2005), attached hereto as Ex. A. The OFO's decision was dated June 22, 2005, and it informed Plaintiff that he had 90 days from his receipt of the decision to file a civil action in the appropriate United States District Court. *Id*. at 1.

### *Personnel Action No. 2*

In paragraphs 18 through 28, the Complaint describes the Agency's decision not to consider Plaintiff nor select him for a GS-15 temporary promotion as the Acting Director of the Trade Policy Division in ILAB, after he expressed interest in June 2005. In August 2005, Plaintiff filed an administrative complaint of discrimination because he was not considered or selected for this managerial temporary promotion opportunity in his office. Following CRC's investigation, the Plaintiff requested a hearing before an EEOC AJ. At the conclusion of the discovery process, the AJ denied the Agency's summary judgment motion and held an

3

administrative hearing.  One of the issues in this case was whether Plaintiff, a GS-12

International Economist, was eligible to be considered for a GS-15 temporary promotion.  The

Agency argued that Plaintiff could not properly be considered for the temporary promotion

because he did not possess the one-year time-in-grade at the GS-14 grade level.  Following a

hearing, the AJ issued a bench decision in favor of the Agency, finding no discrimination.  In his

decision, the AJ determined that Plaintiff was not eligible for a GS-15 temporary promotion

because he did not meet the one-year time-in-grade eligibility requirement.  *See* Ex. B at 17.

Plaintiff filed a timely appeal with the OFO.  On July 17, 2007, the OFO affirmed the AJ's

findings.  *See Brookens v. Chao*, EEOC Doc. 0120071829, 2007 WL 2161734 (July 17, 2007).

Plaintiff's request for reconsideration was denied on October 9, 2007, and the EEOC notified

Plaintiff of his right to file a civil action within 90 days of receipt of the EEOC's decision.  *See*

*Brookens v. Chao*, EEOC Appeal No. 0520070890, 2007 WL 3051339 (Oct. 9, 2007), attached

hereto as Ex. C.

***Personnel Action No. 3***

In paragraph 31, the Complaint asserts simply that, in September 2007, an individual

Plaintiff deemed lesser-qualified, Timothy Wedding, was selected as the Director of the Trade

Policy and Negotiations Division of ILAB.  The Complaint does not assert that he applied for the

position, that he was qualified for the position, that his non-selection was the result of any

invidious discrimination, nor that he experienced an adverse action as a result of Mr. Wedding's

selection.

On July 30, 2007, Plaintiff filed a formal complaint of discrimination with CRC, which

he later amended to include this non-selection.  In CRC Case No. 07-11-04, Plaintiff alleged

discrimination by DOL concerning the determination that he was not qualified for this GS-15

Supervisory International Economist position.  On April 17, 2008, CRC completed the

investigation concerning of this case.  Plaintiff, who has 15 days from the conclusion of CRC's

investigation to elect a hearing before an EEOC AJ or to receive a Final Agency Decision from

CRC, has not yet elected either administrative resolution to his case, although more than 180

days have passed since Plaintiff filed his formal complaint.

**Personnel Action No. 4**

In paragraph 33, the Complaint states merely that on or about April 20, 2007, Plaintiff

"requested from Gregory Schoepfle a desk audit and was denied."  In CRC Case No. 07-11-04,

Plaintiff included an allegation of being denied a desk audit on or around May 3, 2007.  CRC

completed its investigation of these charges on April 17, 2008.  The Plaintiff, who has 15 days

from the conclusion of CRC's  investigation to elect a hearing before an EEOC AJ or to receive a

Final Agency Decision from CRC, has not yet elected either administrative resolution to his case.

**Personnel Action No. 5**

In paragraphs 34 and 50, the Complaint references Plaintiff's request for a desk audit on

December 21, 2007.  Plaintiff's request was denied by his supervisor, Timothy Wedding.

Plaintiff initiated contact withe agency's EEO office on January 22, 2008, and was informed, via

hand-delivered letter, that he had until March 27, 2008, to file a formal written complaint.  *See*

Perez Decl. ¶¶ 4-5, attached hereto as Ex. D.  Plaintiff filed his written complaint one day late, on

March 28, 2008, and the agency has not yet decided whether it will accept it or reject it as

untimely.  *Id.* ¶ 6.

*Personnel Action No. 6*

In paragraphs 36-38, the Complaint describes DOL's cancellation of position advertised as Deputy Assistant Secretary for Regulatory Economics and Economic Policy SES under vacancy announcement DOL-SES-ASP-04-04, and later readvertised.  The Complaint asserts that the Secretary of Labor approved the reposting of this vacancy announcement because too few candidates had originally applied.  *See* Compl. ¶¶ 36-37.  The Complaint alleges that two other DOL employees were disqualified from consideration as a result of the reclassification.  *Id.* ¶ 38.

Plaintiff filed a formal complaint of age and race discrimination based on the Department's decision to cancel vacancy announcement DOL-SES-ASP-04-04.  Following CRC's investigation of these issues, Plaintiff requested a hearing before an EEOC AJ.  Over Plaintiff's protests, on February 6, 2007, the AJ granted the Agency's motion for summary judgment, ruling that the Agency offered a legitimate reason for canceling the vacancy announcement.  On March 27, 2007, the AJ issued a decision without a hearing and DOL then adopted this finding of no discrimination.  In May 2007, Plaintiff filed a timely appeal with the EEOC.  Following a review of the entire record, the OFO affirmed the Agency's final order, determining that the AJ appropriately issued a decision without a hearing because the Agency offered a legitimate reason for canceling the vacancy announcement.  *See Brookens v. Chao*, EEOC Doc. 0120072770, 2007 WL 2768104 (Sep. 12, 2007).  The OFO mailed Plaintiff a copy of the Decision on September 12, 2007.  The OFO Decision contained a section that notified Plaintiff of his right to file a civil action within 90 days of receipt of the EEOC's decision.  *Id.*

*Personnel Action No. 7*

In paragraph 40, the Complaint states that in March 2006 he applied for a GS-15 Policy

Advisor vacancy announcement in ILAB and that the Agency subsequently cancelled this position.  Concerning this claim Plaintiff filed, in June 2006, a formal complaint of discrimination with the CRC alleging race and age discrimination, as well as retaliation. Following the CRC investigation, Plaintiff requested a hearing before an EEOC AJ.  In March 2007, during the administrative case discovery phase, the AJ dismissed this complaint based on Plaintiff's failure to adequately respond to an order to show cause.  The AJ remanded the case to the Agency ordering DOL to produce a final agency decision.  In May 2007, CRC issued a final agency decision determining that Plaintiff had failed to prove that ILAB was motivated by discriminatory animus when it cancelled this vacancy announcement.  Plaintiff appealed DOL's decision to the EEOC contending that the AJ abused his discretion in dismissing Plaintiff's request for a hearing.  On appeal, DOL asked the EEOC to affirm the final agency decision which found that no discrimination had occurred.  The OFO denied the Plaintiff's appeal, affirmed the Agency's final agency decision, and notified Plaintiff that he had 90 calendar days from the receipt of the OFO's decision to file a civil action in the appropriate district court. *Brookens v. Chao*, EEOC Doc. 0120073044, 2007 WL 3051365 at 5 (Oct. 10, 2007), attached hereto as Ex. E.

### *Personnel Action No. 8*

In paragraphs 41-42, the Complaint states that in October 2006, he applied for another SES position, Director, Office of Trade and Labor Affairs in ILAB, which was advertised under vacancy announcement DOL-SES-06-21.  Plaintiff alleges that he was improperly disqualified from consideration for this SES position.

On January 5, 2007, Plaintiff filed a formal complaint of discrimination with the CRC.

Following the Agency's investigation, Plaintiff requested a hearing before an EEOC AJ.  The

parties litigated these issues in EEOC Case No. 570-2007-00778X.  In August 2007, the Agency

filed a motion to dismiss based on the doctrine of collateral estoppel because the parties had fully

and fairly litigated the issue of whether Plaintiff, a GS-12 International Economist, was eligible

for promotion to grade GS-15 in EEOC case 570-2007-00121X (Personnel Action No. 2, *supra*).

In September 2007, the AJ issued a stay of discovery.  On March 3, 2008, the Agency filed a

second motion to dismiss because Plaintiff elected, through the instant case, to pursue civil

action relief on this discrimination claim.  On March 14, 2008, the AJ dismissed Plaintiff's

administrative complaint.

### Personnel Action No. 9

In paragraphs 43-44, the Complaint states that he failed to receive proper consideration or

be interviewed for vacancy announcement ILAB 07-010M.  The Deputy Director position in

ILAB's Office of International Relations was advertised as a GS-14/15 position.  On March 15,

2007, Plaintiff filed a formal complaint of discrimination with CRC. Following CRC's

investigation, Plaintiff requested a hearing on this issue in EEOC Case No. 570-2008-00278X.

This EEOC case was assigned to the same AJ who was also considering Plaintiff's EEO case

described in Personnel Action No. 8, *supra*.  On March 3, 2008, the Agency moved to dismiss

both of these complaints because Plaintiff had elected to pursue relief on these two cases through

this civil action in District Court.  On March 14, 2008, the AJ dismissed this administrative

complaint.

### Personnel Action No. 10

In paragraphs 45-46, the Complaint simply alleges that another individual was non-

8

competitively promoted from GS-11 to GS-14 and Plaintiff was denied the same opportunity "for no valid business reason."  Compl. ¶ 46.

**Personnel Action No. 11**

In paragraph 48, under a general caption of "Retaliation," the Complaint summarily concludes that as a result of his protected activity, the Agency took the actions described above as Personnel Actions Nos. 1-10.

**Personnel Action No. 12**

In paragraph 49, the Complaint asserts that, in December 2007, Timothy Wedding denied Plaintiff a Within Grade Increase.  Plaintiff filed an appeal of this denial with the Merit Systems Protection Board about this issue on February 12, 2008.  Shortly before the administrative hearing, Plaintiff amended his MSPB appeal to include charges of discrimination.  *See* MSPB Docket No. DC-531D-08-0302-I-1.  The MSPB held a hearing on Plaintiff's appeal on April 21, 2008.

Plaintiff also raised the denial of his Within Grade Increase in a discrimination complaint before CRC.  Following informal counseling, on March 12, 2008, Plaintiff received a hand-delivered Notice to File from CRC personnel.  The Notice to File informed Plaintiff that he had 15 days to file his formal complaint of discrimination with CRC.  Sixteen days later, on March 28, 2008, Plaintiff filed his formal complaint of discrimination.  CRC has not yet accepted or denied Plaintiff's discrimination complaint concerning the denial of a within grade increase.  *See* Barry-Perez Decl. at 2.

## LEGAL STANDARDS

### I.    Motion to Dismiss.

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if Plaintiff's complaint fails to plead "enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Kowal*, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id.*

In *Erickson v. Pardus*, 127 S. Ct. 2197, 2200, 167 L. Ed. 2d 1081 (2007), the Supreme Court noted the long established admonition that *pro se* complaints are "liberally construed," but it bears noting that its reversal of the dismissal of the complaint at issue was fully consistent with the *Twombly* standard because the complaint included factual allegations describing the prison's

10

termination of plaintiff's treatment for hepatitis.  *See id.* at 2200.[1]  Even under a liberal

construction, therefore, it does not suffice for a complaint to rely on conclusory allegations or to

raise only a "suspicion" of wrongdoing, *Twombly*, 127 S. Ct. at 1965.  The complaint must give

notice of the factual basis for the relief sought.

As a general matter, the Court is not to consider matters outside the pleading, per Rule

12(b), without converting defendant's motion to a motion for summary judgment.  In interpreting

the scope of this limitation, however, the D.C. Circuit has instructed that the Court may also

consider "any documents either attached to or incorporated in the complaint and matters of which

we may take judicial notice."  *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624

(D.C. Cir. 1997).

For example, the D.C. Circuit recently instructed that court papers filed elsewhere by the

plaintiff may be relied upon by the Court in deciding a motion to dismiss.  *See Jankovic v.*

*Internat'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (citing *Marshall County Health*

*Care Auth. v. Shalala*, 988 F.2d 1221, 1222-23 (D.C. Cir. 1993)); *accord Covad Commun. Co. v.*

*Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (judicial notice of other court

---

[1] Furthermore, the crux of the holding was the circuit court's erroneous requirements
regarding pleading the particulars of the harm resulting from the conduct alleged:

> It may in the final analysis be shown that the District Court was correct to grant
> respondents' motion to dismiss.  That is not the issue here, however.  It was error for the
> Court of Appeals to conclude that the allegations in question, concerning *harm* caused
> petitioner by the termination of his medication, were too conclusory to establish for
> pleading purposes that petitioner had suffered "a cognizable independent harm" as a
> result of his removal from the hepatitis C treatment program.

*Id.* at 2199-2200 (emphasis added).  Hence, *Twombly*'s focus on the complaint is equally
applicable to a *pro se* complaint, although the inferences drawn from the complaint's factual
allegations are subject to a liberal construction.

decisions and party's failure to respond to argument regarding them). Similarly, the D.C. Circuit approved judicial notice of public records on file at a government agency in *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (patent assignment records on file with the Patent Trademark Office).

At the same time, factual allegations raised in subsequent filings such as briefs or memoranda of law may not be considered by the Court in deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir.1994); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 64 (D.D.C. Dec. 31, 2007).

These standards apply equally in employment cases. *See, e.g., Kassner v. Second Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007); *Ofori-Tenkorang v. American Internat'l Group, Inc.*, 460 F.3d 296, 307 (2d Cir. 2006). Although plaintiff need not specifically plead the facts supporting a *prima facie* case, *see Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), the Court is to rely on the factual allegations in the complaint as pleaded and, along with reasonable inferences therefrom, draw appropriate legal conclusions from those facts. It does not appear, therefore, that simply pleading "discrimination," per *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), suffices to survive a motion to dismiss a complaint of employment discrimination. *See Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 253-54 (D.C. Cir. 2008) (citing *Sparrow* only for standard of appellate review and citing *Twombly* for standard on motion to dismiss).

*Pro se* Plaintiff is advised that if he fails to respond to this motion to dismiss, the Court may grant this motion and dismiss the pertinent claims because of the failure to respond. *See*

*Fox v. Strickland*, 837 F.2d 507 (D.C. Cir. 1988).

## II.    Motion for Summary Judgment.

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 247-48; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (citing *Anderson*, 477 U.S. at 249-50. "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Celotex Corp.*, 477 U.S. at 323 (citations omitted).

Similarly, mere conclusory allegations are not enough to survive a motion for summary judgment. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *Thrash v. Library of Congress*, 2006 U.S. Dist. LEXIS 9988 at *20 (D.D.C. Feb. 24, 2006); *Rowland v. Riley*, 5 F. Supp. 2d 1,3

(D.D.C. 1998); *Benn v. Unisys Corp.*, 176 F.R.D. 2 (D.D.C. 1997).  Likewise, an affidavit which merely recites conclusory allegations will not defeat summary judgment.  *See Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace conclusory allegations of the complaint or answer with conclusory allegations of an affidavit.") As the Supreme Court has instructed: "the plain language of Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial."  *Celotex*, 477 U.S. at 322.

*Pro se* Plaintiff will also take note that the assertions contained in the accompanying declarations and other attachments in support of Defendant's motion for summary judgment will be accepted by the Court as true unless Plaintiff submits his own affidavit or other documentary evidence contradicting the assertions in Defendant's declarations and attachments.  *See Neal v. Kelly*, 963 F.2d 453, 456 (D.C. Cir. 1992); Fed. R. Civ. P. 56(e); and Local Civil Rule 7(h).

## III.    Substantive Standards for Employment Discrimination Claims.

Claims alleging race and sex discrimination are analyzed pursuant to the familiar burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  First, a plaintiff has the burden of establishing a *prima facie* case of discrimination by a preponderance of the evidence.  *Id.* at 802; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981). In order to make out a *prima facie* case of discrimination a plaintiff must show that she:

> (i) belongs to a [protected class]; (ii) that [s]he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite h[er] qualifications, [s]he was rejected, and (iv) that after h[er] rejection, the position remained open and the employer continued to seek applicant's from persons of [the plaintiff's] qualifications.

14

411 U.S. at 802.  This Circuit generally follows this same four-part test for the *prima facie* case required by *McDonnell Douglas*.  *See, e.g., Teneyck v. Omni Shoreham Hotel*, 365 F.3d 1139, 1149-50 (D.C. Cir. 2004).

 In situations where the *McDonnell Douglas* formulation for the *prima facie* test does not work, the D.C. Circuit uses a more generalized formulation from *Stella v. Mineta*, 284 F.3d 135 (D.C. Cir. 2002), which requires plaintiff to show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination."  *Id.* at 145 (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).

 If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its actions.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802 (1973).  The employer's burden, however, is merely one of production.  *Burdine*, 450 U.S. at 254-55.  The employer "need not persuade the court that it was actually motivated by the proffered reasons.  It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff."  *Id.*  Once the employer has articulated a legitimate, non-discriminatory reason for its actions, the *prima facie* inference of discrimination drops from the case.  *St. Mary's Honor Center v. Hicks*, 509 U.S. at 507, 510-11 (1993); *Burdine*, 450 U.S. at 255.

 The burden then shifts back to the plaintiff to show that the employer's proffered reason was not the true reason for its actions and was only a pretext for unlawful discrimination.  *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804; *see also St. Mary's Honor*

*Center*, 509 U.S. at 507-08; *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1289 (D.C. Cir.

1998). The burden of persuasion that discrimination motivated the employer's actions remains at

all times with the plaintiff. *St. Mary's Honor Center*, 509 U.S. at 507; *Burdine*, 450 U.S. at 253;

*Aka*, 156 F.3d at 1289. Moreover, the plaintiff must present more than a "scintilla of evidence"

but must come forward with specific facts that would enable a reasonable jury to find in its favor.

*Anderson*, 477 U.S. at 252; *Celotex Corp.*, 477 U.S. at 324. To prove discrimination on the basis

of race and/or sex, the plaintiff must demonstrate that the legitimate, non-discriminatory reasons

articulated by the defendant are pretextual.

## ARGUMENT

**I.    Plaintiff Failed to Meet the Statute of Limitations Regarding Personnel Actions 1, 2, 6, and 7.**

The Court should dismiss Personnel Actions Nos. 1, 2, 6, and 7 of this Complaint

because Plaintiff failed to file his appeals of the respective EEOC OFO decisions within the

statutory time limit required to initiate a civil action.

Title VII sets forth the time limits for the filing of a civil action in Federal Court:

within 90 days of receipt of notice of final action taken by a department, agency, or by the EEOC on appeal, an employee or applicant for employment, if aggrieved by the final disposition in his complaint . . . may file a civil action.

42 U.S.C. § 2000e-16(c). While the Complaint does not state when Plaintiff received each of the

four OFO decisions at issue, the Certificate of Mailing attached to each OFO Decision includes

this statement: "For timeliness purposes, the Commission will presume that this decision was

received within five (5) calendar days after it was mailed."

The Supreme Court has held that while late-filed claims are not jurisdictionally barred,

equitable tolling is allowed only in narrowly tailored circumstances. *Irwin v. Dep't. of Veterans'*

*Affairs*, 498 U.S. 89, 95-96 (1990); *see also Janczewski v. Secretary, Smithsonian Institution*,

767 F. Supp. 1, 13 (D.D.C. 1991)(finding that equitable power to toll statute of limitations shall

be exercised only in extraordinary and carefully circumscribed instances).  In *Irwin*, the Court

held that:

> federal courts have typically extended equitable relief only sparingly.  We have generally
> been much less forgiving in receiving late filings where the claimant failed to exercise
> due diligence in preserving his legal rights.  Because the time limits imposed by Congress
> in a suit against the Government involve a waiver of sovereign immunity, it is evidence
> that no more favorable tolling doctrine may be employed against the Government than is
> employed in suits between private litigants.

*Id.* at 96 (footnotes omitted).  As the Supreme Court observed in *Baldwin Co. Welcome Ctr. v.*

*Brown*, 466 U.S. 147, 152 (1984), "procedural requirements established by Congress for gaining

access to the federal courts are not to be disregarded out of a vague sympathy for particular

litigants" and "[i]n the long run, experience teaches that strict adherence to the procedural

requirements specified by the legislature is the best guarantee of evenhanded administration of

the law." *Baldwin*, 466 U.S. at 152 (citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

Because Plaintiff failed to file a district court complaint about the matters adjudicated in

Personnel Action Nos. 1, 2, 6, and 7 within 95 days from the date the EEOC mailed these

decisions, these four claims should be dismissed.

Concerning Personnel Action No. 1, Complainant's civil action should have been filed

within 95 days of June 22, 2005.  As evidenced by Exhibit A, the EEOC sent Plaintiff this notice

on June 22, 2005.  Accordingly, more than 32 months have passed since he presumptively

received the EEOC's final decision concerning this claim, and it should be dismissed.

17

The claims raised in Personnel Action No. 2 are also untimely.  Plaintiff's request for reconsideration was denied by the EEOC on October 9, 2007.  The EEOC notified Plaintiff of his right to file a civil action within 90 days of receipt of the EEOC's decision.  *See Brookens v. Chao*, EEOC 0520070890, 2007 WL 3051339 (Oct. 9, 2007), attached hereto as Exhibit C.  Thus, Plaintiff should have filed his civil action 95 days later, by January 14, 2008.  Because Plaintiff did not file this case until January 16, 2008, he again was untimely.

The fact that Plaintiff failed to comply with the statute of limitations by two days does not excuse noncompliance.  Numerous decisions of this court have dismissed cases where a similarly small number of days was involved.  *See, e.g., DePippo v. Chertoff*, 453 F. Supp. 2d 30 (D.D.C. 2006) (Urbina, J.) (dismissing Title VII case filed one day too late); *Jackson v. Snow*, No. 05-1266 (CKK), 2006 WL 212136 (D.D.C. Jan. 27, 2006) (Title VII, one day too late); *Simpkins v. WMATA*, 2 F. Supp. 2d 52 (D.D.C. 1998) (one day late).  Although the 90-day filing period is subject to equitable tolling in appropriate cases, Plaintiff has not provided any explanation at all for his late filings and the Court has no basis for finding that the 90-day limit should be equitably tolled.  Accordingly, these claims should be dismissed with prejudice.

As for Personnel Action No. 6, the EEOC issued its decision on September 12, 2007, affirming DOL's final order.  *See* Ex. F hereto.  Including the presumptive five days for delivery to Plaintiff, his civil action should have been filed by December 17, 2007.  Again, he filed this case on January 16, 2008--a month late.

Similarly, in Personnel Action No. 7, the EEOC affirmed the final agency decision (finding no discrimination) on October 10, 2007.  *See Brookens v. Chao*, EEOC 0120073044,

2007 WL 3051365 (Oct. 10, 2007), Ex. E hereto.  Including the presumptive five days, Plaintiff's

deadline was January 14, 2008, and Plaintiff missed this deadline by two days.

Plaintiff is a seasoned EEO practitioner, but his Complaint neither acknowledges the

untimeliness of these claims nor offers any explanation why equitable tolling might apply.  The

Court should dismiss with prejudice the untimely actions described herein as Personnel Actions

Nos. 1, 2, 6, and 7.

## II.    Plaintiff Failed to Exhaust Administrative Remedies Regarding Personnel Actions 5 and 12 Because he Failed to File an EEO Complaint About Them.

In order for the employment claims of a federal employee to survive dismissal, the

employee must properly exhaust his administrative remedies before bringing suit in federal court.

*See Brown v. General Services Administration*, 425 U.S. 820 (1976).  Accordingly, the employee

must timely file all applicable administrative complaints and appeals in order to bring a claim in

federal court. *See Bowden v. United States*, 106 F.3d 433, 437 (D.C. Cir. 1997).

Title VII provides that whenever a complaint is filed, each agency "is required to conduct

an impartial and appropriate investigation of the complaint."  29 C.F.R. § 1614.106(e)(2).  The

investigation shall be conducted by the agency and shall be completed within 180 days from the

filing of the individual's complaint.  29 C.F.R. § 1614.108(a), (e).  After the investigation, the

agency provides the complainant with the report of investigation and advises him that, within

thirty days of its receipt, the complainant may request a hearing and decision from an

administrative judge or request a final agency decision from the agency.  29 C.F.R. 1614.108(f).

A complainant has the right to file a federal district court civil action appealing a

dismissal, final action or decision on claims raised in the administrative process.  29 C.F.R.

19

§ 1614.407.  A complainant must file his civil action within the deadlines set forth by the EEOC

regulations.  For example, a complainant may file a civil action if 180 days have passed since he

filed a formal complaint of discrimination with the agency and no final action has been taken.  29

C.F.R. § 1614.407(b).  The complainant also has the right to file a civil action within 90 days of

receiving the EEOC Office of Federal Operations' final decision on appeal.  29 C.F.R.

§ 1614.407(a).

Here, Plaintiff failed to exhaust his administrative remedies for Personnel Actions Nos. 5

and 12.  In No. 5, Plaintiff alleges that he was denied a desk audit by his supervisor on or about

December 21, 2007, Compl. ¶¶ 34, 50, but as of today, the agency has not decided whether to

accept his one-day-late formal complaint, and 180 days has not passed since his formal

complaint.  *See* Barry-Perez Decl., Ex. D hereto.  Accordingly, Plaintiff has not exhausted his

administrative remedies.

Similarly, regarding Personnel Action No. 12, Plaintiff simply recounts that on December

21, 2007, his supervisor denied him a within-grade increase.  Although Plaintiff raised

discrimination allegations concerning this personnel action in his MSPB appeal, the Board has

not yet issued an initial decision, or a final decision, in that case.  Because the MSPB must reach

a final decision before Plaintiff may file suit, Plaintiff has failed to exhaust his administrative

remedies regarding the denial of his within grade increase.  *See* 5 C.F.R. § 1201.157.

Therefore, because Plaintiff has not exhausted his administrative remedies regarding

Personnel Actions Nos. 5 and 12, the Court should dismiss these claims.

**III.    Numerous Personnel Actions Fail to State a Claim of Employment Discrimination.**

The allegations in the Complaint, construed in the light most favorable to Plaintiff, fail to

allege discrimination on any basis recognized as remediable under Title VII.  There is no

question that the Complaint identifies Plaintiff as a "Black American male, over age 40."

Compl. ¶ 2(A).  There is, however, simply not enough factual substance to his allegations, as

required by *Twombly*, either to raise an inference of discrimination or to suggest that Plaintiff

suffered an adverse action within the meaning of *Brown*, or *Rochon*.

Here, the Complaint falls short on six of the Personnel Action.  In Personnel Action No.

3, the Complaint simply states that Timothy Wedding, an allegedly lesser-qualified individual,

was selected for a Director position in ILAB.  Compl. ¶ 31.  Plaintiff does not indicate whether

he applied for that vacancy, whether DOL determined his eligibility, or any cognizable basis for

the Court to infer that Plaintiff was treated differently than Mr. Wedding on the basis of his race,

age, or prior protected activity.  Defendant is entitled to notice--from the Complaint--of the

nature of the claim against it and Plaintiff's complaint does not provide notice of what forms of

discrimination, if any, are asserted for these Personnel Actions.  Instead, they read as potential

background information.  *Twombly* instructs that the language of the complaint governs, not the

District Court's prediction about which facts Plaintiff might later on be able to establish.  This

claim should be dismissed for failure to state a claim.

Similarly, regarding Personnel Actions Nos. 4 and 5, the Complaint simply asserts that he

was denied two desk audits.  The Complaint fails to identify any basis for the Court to determine

that Plaintiff was adversely affected by the denials of these desk audits.  Moreover, the

21

Complaint fails to provide any other facts about these claims that would raise inferences of discrimination. Thus, dismissal is appropriate under *Twombly*.

The Complaint suffers similar defects in Personnel Actions Nos. 10, 11, and 12. In No. 10, the Complaint merely asserts that Carlos Romero was non-competitively promoted from GS-11 to GS-14 and Plaintiff was denied the same opportunity. Compl. ¶ 45-46. Concerning the retaliation actions set forth in Personnel Action No. 11, the Complaint offers a legal conclusion that Plaintiff's "protected activity" resulted in all of the Personnel Actions in the Complaint. Lastly, regarding Personnel Action No. 12, the Complaint asserts merely that Plaintiff was denied a within-grade increase. In Personnel Action Nos. 10, 11, and 12, the Complaint fails to provide any factual basis on which the Court could properly infer that Plaintiff was adversely affected by these actions or that discriminatory intent motivated the Agency's personnel decisions.

Similar defects exist in each of the twelve Personnel Actions in the complaint in that none of them provide a sufficient factual basis for the Court to infer discrimination or retaliation or adverse action materially affecting Plaintiff's job duties or benefits, or dissuading a reasonable employee from complaining of discrimination. Defendant respectfully requests that the Court dismiss, pursuant to Rule 12(b)(6) as interpreted by *Twombly*.

## IV.    Plaintiff Is Ineligible for the GS-15 and Should Be Barred from Relitigating It.

### A.    No Serious Dispute of Fact.

In Personnel Actions 2, 7 and 9, the Complaint alleges that the Department of Labor failed to consider, interview, or select Plaintiff for several GS-15 positions. These claims fail because Plaintiff is unable to demonstrate that he could have been properly deemed eligible to apply for these positions. This follows simply from application of the government's eligibility

22

standards for positions at the GS-15 level.  As a GS-12, who had not performed work at the GS-

14 level for the requisite 52 weeks (he had never worked at the GS-13 level), Plaintiff was

ineligible for these positions.  *See* Def. Stmt. Material Fact 1 (citing Broderick Decl. and Holmes

Decl.).  There is no dispute of material fact on these claims, and they cannot survive summary

judgment.

> **B.    Collateral Estoppel.**

Moreover, issue preclusion should bar relitigation of these factual issues.  The doctrine of

collateral estoppel, also known as issue preclusion, provides that "once an issue is actually and

necessarily determined by a court of competent jurisdiction, that determination is conclusive in

subsequent suits based on a different cause of action involving a party to the prior litigation."

*Montana v. United States*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439

U.S. 322, 326 n. 5 (1979)).  The Supreme Court explained the purpose of collateral estoppel:

> To preclude parties from contesting matters that they have had a full and fair opportunity
> to litigate protects their adversaries from the expense and vexation attending multiple
> lawsuits, conserves judicial resources, and fosters reliance on judicial action by
> minimizing the possibility of inconsistent decisions.

*Montana*, 440 U.S. at 153-154 (omitting footnote).

A defense of collateral estoppel requires the defendant to "show: (1) the actual litigation

of the issue 'that is, contested by the parties and submitted for determination by the court,' (2) the

determination of the issue by a court of competent jurisdiction, and (3) lack of unfairness in

precluding the issue from the subsequent trial."  *Siwa v. Office of Personnel Management*, 533 F.

Supp. 2d 81 (D.D.C. 2008) (quoting *Otherson v. INS*, 711 F.2d 267, 273 (D.C. Cir. 1983)

(citations omitted).  All three factors are met here.

Concerning Personnel Action No. 2, Plaintiff filed a formal complaint of race, age, and reprisal discrimination with CRC after the Agency failed to either consider or select him for a GS-15 temporary promotion. After discovery, the AJ denied DOL's motion for summary judgment and held a hearing. Plaintiff testified at the hearing and was permitted to offer evidence to support his claim that the Selecting Official should have considered Plaintiff eligible for the GS-15 temporary promotion and subsequently selected him for the higher-graded position. On January 9, 2007, the Administrative Judge issued a bench decision, in which he determined that the Agency established a legitimate non-discriminatory reason for its actions and that Mr. Brookens failed to prove that the Agency's actions were motivated by discriminatory animus. *See* Ex. B. The AJ's bench decision further included a specific finding that, "Complainant, as a GS-12 employee, was not eligible for a GS-15 temporary promotion." *Id.* at p. 17. On July 17, 2007, the OFO affirmed CRC's final agency decision because the evidence substantially supported the AJ's decision. The Plaintiff's Request for Reconsideration was denied on October 9, 2007. *See* Ex. C. Plaintiff was notified by EEOC of his right to file a civil action regarding the EEOC's decision, but Plaintiff failed to file a timely appeal.

First, the issue raised by Plaintiff in EEOC Case No. 570-2006-00121X, and litigated by the parties in that case, was whether the Department of Labor discriminated against him when it failed to consider or select him for a GS-15 temporary promotion. *See* Ex. A at 3. The underlying claim raised by Plaintiff in Personnel Actions Nos. 2, 7 and 9 is whether he should have been considered and/or selected for GS-15 vacancies. Thus, the Agency has established that the issue in the current case was actually litigated in the prior case.

In addition, the Defendant has established the second prong of the collateral estoppel test. The EEOC's final decision should be given collateral estoppel effect because the EEOC was "acting in a judicial capacity and resolv[ing] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Nasem v. Brown* 595 F.2d 801, 806, (D.C. Cir. 1979) (*quoting United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, (1966)). Again, there can be no question that the EEOC is a court of competent jurisdiction when it acted in a judicial capacity to resolve Plaintiff's eligibility and discrimination issues in EEOC Case No. 570-2006-00121X. *See, e.g., id.*

Lastly, Plaintiff has failed to raise any arguments that he was not given sufficient opportunities to litigate the issues in the prior EEOC case. In fact, Plaintiff is an experienced litigant, who has practiced for years before the EEOC, arbitrators, and the District Court. Simply put, Plaintiff has no basis for any credible arguments that the EEOC did not offer him the opportunities to testify, present witnesses, or present evidence at the administrative hearing. There are no special circumstances that should exempt this case from preclusion. Rather, the present case is precisely what the courts envisioned in barring litigants from continually contesting issues that have been previously decided. As plainly demonstrated in this case, each time that Plaintiff applies for a promotion opportunity at the GS-15 grade level and fails to be considered, he has filed a discrimination complaint. Each discrimination investigation by the CRC and the inevitable litigation that follows forces the Defendant to expend extraordinary time and valuable resources interviewing witnesses, preparing reports of investigations and litigating cases. The common element among all of these cases is Plaintiff's already-litigated belief that he is eligible for GS-15 promotions. In the interests of efficient administration of justice and

conserving precious DOL resources, the Defendant requests that the Court apply the doctrine of collateral estoppel and bar Plaintiff from further relitigation of this previously-decided issue.

In summary, the same parties litigated, in EEOC Case No. 570-2006-00121X, the same factual issue that undermines his Personnel Actions Nos. 7 and 9 in this case; Plaintiff had an opportunity, but did not appeal that decision in a timely manner; there is no indication of unfairness in those proceedings; and the EEOC acted in a judicial capacity with the meaning of the standards for collateral estoppel.  The Court is well within its discretion to apply collateral estoppel to bar relitigation of this factual issue.

## **CONCLUSION**

Defendant respectfully requests that the Court enter judgment for the agency.


April 24,2008                               Respectfully submitted,


                                           _____
                                           JEFFREY A. TAYLOR, D.C. Bar # 498610
                                           United States Attorney


                                             /s/
                                           _____
                                           RUDOLPH CONTRERAS, D.C. Bar # 434122
                                           Assistant United States Attorney


                                             /s/
                                           _____
                                           ALAN BURCH, D.C. Bar # 470655
                                           Assistant United States Attorney
                                           555 4th St., N.W.
                                           Washington, D.C. 20530
                                           (202) 514-7204, alan.burch@usdoj.gov


OF COUNSEL:
Rolando Valdez
Office of the Solicitor
U.S. Department of Labor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
BENOIT BROOKENS,                          )
                                          )
              Plaintiff,                   )
                                          )
       v.                                 )        Civil Action No. 08-0086 (ESH)
                                          )
ELAINE L. Chao,                           )
Secretary, Department of Labor            )
                                          )
              Defendant.                   )
_____)

## DEFENDANT'S STATEMENT OF MATERIAL FACT NOT IN GENUINE DISPUTE

Defendant Elaine L. Chao, Secretary, United States Department of Labor, respectfully

files this statement, pursuant to Local Civil Rules 7(m) and 56.1, in support of her alternative

motion for summary judgment regarding Personnel Action Nos. 6 and 7 in this case.

*Pro se* Plaintiff is reminded that failure to respond to these factual allegations, with

evidence supporting Plaintiff's position, means that the Court will find the facts as described by

Defendant.

The following fact is supported by evidence not subject to genuine dispute:

1.     Plaintiff is ineligible to apply for GS-15 positions because he has not had 52 weeks of

       work at the GS-14 level or equivalent. *See* Broderick Decl., attached hereto as Ex. G;

       Holmes Decl., attached hereto as Ex. H.

April 24,2008                              Respectfully submitted,

                                          _____
                                          JEFFREY A. TAYLOR, D.C. Bar # 498610
                                          United States Attorney

      /s/
_____

RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney


      /s/
_____

ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov



OF COUNSEL:
Rolando Valdez
Office of the Solicitor
U.S. Department of Labor

## CERTIFICATE OF SERVICE

I hereby certify that on this 24th day of April 2008, I caused the foregoing Defendant's Motion to Dismiss or in the Alternative for Summary Judgment, supporting Memorandum, Statement of Material Fact, exhibits thereto, and Proposed Order to be served on Plaintiff, *pro se*, via First Class US Mail addressed to:

BENOIT BROOKENS
460 Taylor Street, NE Apt. G-44
Washington, D.C. 20017

and

BENOIT BROOKENS
P.O. Box 2551
Washington, D.C. 20001


_____/s/_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C. 20530



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
**P.O. Box 19848**
**Washington, D.C. 20036**

Benoit Brookens,
Complainant,

v.

Elaine Chao,
Secretary,
Department of Labor,
Agency.

Request No.05A50920

Appeal No. 01A45258
Agency Nos. 01-11-112; 01-11-114
Hearing No. 100-A2-8234X



<u>DENIAL</u>

Benoit Brookens  (complainant) timely requested reconsideration of the decision in *Benoit Brookens v. Department of Labor*, EEOC Appeal No. 01A45258 (April 28, 2005).  EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that: (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency.  *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision, and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 01A45258 remains the Commission's final decision.  There is no further right of administrative appeal on the decision of the Commission on this request.

<u>COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION</u> (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision.  You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title.  Failure to do so may result in the dismissal of your case in court.  "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

CRC# 424326

2                                                          05A50920

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

JUN 2 2 2005
Date

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed. I certify that this decision was mailed to complainant, complainant's representative (if applicable), and the agency on:**

JUN 2 2 2005
Date

Equal Opportunity Assistant

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### WASHINGTON FIELD OFFICE
#### 1801 L Street, N.W., Suite 100
#### Washington, D.C. 20507-1002

| | |
|---|---|
| Benoit Brookens, Complainant, v. Elaine Chao, Secretary, Department of Labor, Agency. | EEOC No.   570-2006-00121X<br><br>Agency No.   CRC 05-11-129<br><br><br><br>Date:       **January 9, 2007** |

### ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Order dated **January 9, 2007**, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached. This office is also enclosing a copy of the hearing record and Report of Investigation for the Agency's EEO office.[1]

It is so **ORDERED.**

For the Commission:

Joel A. Kravetz
Administrative Judge
Telephone:  (202) 419-0723
Facsimile:  (202) 419-0701

Enclosures

---

1 On December 11, 2006, Complainant filed a Motion to Modify Proposed Order and Decision. I **DENY** Complainant's Motion, as I have already issued the Bench Decision based on my assessment of the facts presented at the hearing and credibility of the witnesses. No further submissions are permitted or will be considered.

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing **ORDER** and any attachments within five (5) calendar days after the date they were sent *via* first class mail, or the same day if sent via facsimile or electronic mail.    I certify that on **January 9, 2007**, the foregoing **ORDER** and any attachments were sent *via* facsimile to the following:

Benoit Brookens
460 Taylor Street, NE
Apt. G-44
Washington, D.C.  20017

Rolando Valdez
U.S. Department of Labor
Office of the Solicitor
Division of Management and Administrative Legal Services
200 Constitution Avenue, N.W., Room N-2428
Washington, D.C.  20210

Ms. Annabelle T. Lockhart, Director
U.S. Department of Labor
Civil Rights Center
200 Constitution Avenue, NW
Room N-4123
Washington, DC 20210

Joel A. Kravetz
Administrative Judge

## NOTICE TO THE PARTIES

### *TO THE AGENCY:*

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

### *TO THE COMPLAINANT:*

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision. 29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

*WHERE TO FILE AN APPEAL:*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

BY FACSIMILE:

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

UNITED STATES OF AMERICA

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

WASHINGTON FIELD OFFICE

+++++

BENCH DECISION

+++++

```
------------------------+
In the Matter of:       : Case No.:
                        : EEOC No. 570-2006-00121X
Benoit Brookens,        :
                        : Agency No. CRC 05-11-129
       Complainant,     :
                        :
and                     :
                        :
ELAINE CHAO, Secretary  :
United States           :
Department of Labor,    :
                        :
       Agency.          :
------------------------+
```

EEOC
WASHINGTON FIELD OFFICE
2006 DEC 22  A 11: 25
1801 L ST. NW
WASHINGTON DC 20507

VOLUME 3

Thursday
December 7, 2006
Conference Room 2428
Frances Perkins Building
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210

BEFORE:

JOEL A. KRAVETZ, Administrative Judge

APPEARANCES:

On Behalf of the Complainant:

      BENOIT BROOKENS, PRO SE

On Behalf of the Department of Labor:

      ROLANDO VALDEZ, ESQ.
      Office of the Solicitor
      Frances Perkins Building
      200 Constitution Avenue, N.W.
      Washington, D.C. 20210
      (202) 693-5311


ALSO PRESENT:

Kevin Saman, law clerk

Ronald Carthan (assisting Complainant)

```
 1              P-R-O-C-E-E-D-I-N-G-S

 2                                      (1:25 p.m.)

 3              ADMIN. JUDGE KRAVETZ:   It's 1:25 in the

 4      afternoon, and we're back on the record.   I am

 5      reconvening the hearing in the matter of Benoit

 6      Brookens versus the Department of Labor, EEOC Number

 7      570-2006-00121X, Agency Number CRC 05-11-129, in

 8      order to issue a decision from the bench.

 9      Accordingly, I will now proceed with a bench

10      decision.

11              As noted previously, EEOC procedures

12      provide for the issuance of decisions from the

13      bench.   I note that the record is comprised of the

14      report of investigation, or ROI; five complainant

15      exhibits referred to as C-1, C-2, et cetera; three

16      agency exhibits referred to as A-1, A-2, et cetera;

17      and one administrative judge exhibit referred to as

18      AJ-1.

19              Claim: Whether complainant was

20      discriminated against on the basis of race, Black;

21      age, over 40; and in reprisal for prior EEO

22      activity, when, on June 10, 2005, he expressed

23      interest in a 60-day detail as Acting Director of

24      the Trade Policy Division but was neither considered

25      nor selected for the position.
```

4

1          <u>Findings of fact</u>:  I note that the

2     parties only stipulated to one fact, Exhibit AJ-1.

3               By way of a brief summary, I note that

4     complainant, as a GS-12 international economist

5     working in the Office of International Economic

6     Affairs, or ILAB, reported to Jorge Perez-Lopez --

7     race, White, Hispanic; date of birth, July 27, 1947;

8     with prior EEO activity -- the Director of the

9     Office of International Affairs until Perez-Lopez retired on

10    June 30, 2005.  <u>See</u> AJ-1, report of investigation,

11    or (ROI), tab F2A.

12               Martha Newton -- Caucasian, date of

13    birth, April 19, 1966, with prior EEO activity --

14    was the Acting Deputy Undersecretary for

15    International Labor Affairs during the relevant time

16    in May of 2005, and supervised Perez-Lopez.

17               In ████████████████ or around

18    April of 2005, Betsy White, the Director of the

19    Trade Policy Division, retired.  White incumbered a

20    GS-15 position, and the crux of complainant's claim

21    is that he was discriminatorily neither considered nor

22    selected to act in a detail as the Acting Director

23    of the Trade Policy Division pending the posting and

24    filling of White's position.

25               Other facts as relevant will be

1   discussed in the analysis section in the interest of

2   brevity.

3            Analysis:  In the absence of direct

4   evidence of discrimination, complainant has the

5   initial burden of establishing a prima facie case of

6   discrimination under McDonnell Douglas Corporation

7   v. Green, 411 U.S. 792, (1973).  In this regard, I

8   note that in order to establish a prima facie case

9   of disparate treatment, a complainant must

10  demonstrate that he was treated less favorably than

11  a similarly situated employee outside his protected

12  group.  Furnco Construction Corp. v. Waters, 438

13  U.S. 567, 1978; Payne v. Department of Energy, EEOC

14  Appeal Number 0199-4044, (August 15, 2002).

15           Absent comparative data, complainant may

16  also establish a prima facie case by setting forth

17  sufficient evidence to create an inference of

18  discrimination.  McDonnell Douglas, ~~~~~~~~~411

19  U.S. ~~~~ 802, 803, ~~~~.  To establish a prima

20  facie case of retaliation, complainant must show

21  that: 1) he engaged in a protected activity; 2) that

22  the agency was aware of his protected activity; 3)

23  subsequently he was subjected to adverse treatment

24  by the agency; and 4) a nexus exists between the

25  protected activity and the adverse action.  Zisk v.

1    United States Postal Service, EEOC Appeal Number

2    0199-2995, (May 3, 2002); O'Neal v. Ferguson

3    Construction Corp., 237 F.3d 1248, 1252, (10th

4    Circuit, 2001); Hochstadt v. Worcester Foundation for

5    Experimental Biology, 425 F. Supp. 318, 324,

6    (District Mass), affirmed 545 F.2d 222, (1st Circuit,

7    1976).

8         The McDonnell Douglas framework,

9    although developed in the context of a Title VII case,

10   is equally applicable to cases arising under the

11   ADEA.  See Paquin v. Federal National Mortgage

12   Association, 119 F.3d 23, 26, (D.C. Circuit, 1997).

13        To establish a prima facie case of age

14   discrimination, complainant must offer sufficient

15   evidence to create an inference that age was a

16   determining factor in the sense that but for the

17   employer's motive to discriminate on the basis of

18   age, the agency would not have taken the challenged

19   action.  See Hazen Paper Company v. Biggins, 507

20   U.S. 604, (1993)  Liability in an age discrimination

21   case requires that age, ▬▬▬ "actually played a

22   role in any determinative influence," ▬▬▬, on

23   the challenged employment decision.  Hayman v.

24   National Academy of Sciences, 23 F.3d 535, (D.C.

25   Circuit, 1994); Krodel v. Young, 748 F.2d 701, 706,

1   (D.C. Circuit, 1984) Cuddy v. Carmen, 694 F.2d 853,

2   856, -57, (D.C. Circuit, 1982).  See Paige v. Equal

3   Employment Opportunity Commission, EEOC Appeal

4   Number 0193-2456, (March 31, 1993), request to

5   reconsider denied, EEOC Request Number 0594-0531,

6   (July 21, 1994).

7            In an age case, the comparative need not

8   be outside the protected group -- i.e., under age 40

9   -- but must be substantially younger than

10  complainant.  O'Connor v. Consolidated Coin Caterers

11  Corporation, 517 U.S. 308, 311, (1996).

12            While the agency ~~~~~~~~ demonstrated that

13  complainant failed to establish a prima facie case

14  of age discrimination because the selectee, Ronald

15  Dobson, was older than the complainant and because

16  the evidence reveals that the complainant was not

17  qualified for the position after hearing evidence, I

18  note that the established order of analysis in

19  discrimination cases need not be followed in all

20  cases.

21            Where the agency has articulated a

22  legitimate, non-discriminatory reason for the

23  employment decisions or actions at issue, the

24  factual inquiry can proceed directly to the third

25  step of the McDonnell Douglas analysis.  That is the

1    ultimate issue of whether complainant has shown by a

2    preponderance of the evidence that the agency's

3    actions were motivated by discrimination.  U.S.

4    Postal Service Board of Governors v. Aikens, 460

5    U.S. 711, 713, -14, (1983); Lau v. Department of

6    Justice, EEOC Appeal Number 01A0-2849, (January 3,

7    2005; George v. Environmental Protection Agency, 407

8    F.3d 405, 411, 12, (D.C. Circuit, 2005).  See also

9    Texas Department of Community Affairs v. Burdine,

10   450 U.S. 248, 253, -54, (1983)( discussing legitimate

11   non-discriminatory reason); McDonnell Douglas, 411

12   U.S. at 802, (same).

13            In this regard, a finding of pretext may

14   be based on the elements of the prima facie case and

15   a determination that the employer's explanation is

16   not credible.  Reeves v. Sanderson Plumbing

17   Products, Inc., 530 U.S. 133, 146, -47, (2000); Hicks,

18   509 U.S. at 511.  However, a complainant always

19   retains the ultimate burden of persuading the trier

20   of fact that the agency unlawfully discriminated

21   against him.  Hicks, 509 U.S. at 511; Aikens, 460

22   U.S. at 715.

23            Even assuming arguendo that complainant

24   can establish a prima facie case, I first find that

25   the agency articulated legitimate,

1    non-discriminatory reasons for its actions.

2    Specifically, Perez-Lopez testified that upon

3    White's retirement, he explained that because GS-15 positions

4    do not become vacant that often, he wanted to offer

5    temporary promotions to interested and qualified

6    GS-14 staff and have them rotate into the position

7    until the position was ultimately filled.

8    Perez-Lopez noted that he would be retiring himself

9    soon, and he wanted everyone who was eligible to be

10   able to ~~able~~ on their resume that they had an

11   opportunity, if they wanted, to act in the GS-15 position.

12   Perez-Lopez explained that he did not favor a detail

13   without a temporary promotion because it unfairly

14   asked employees to do additional work and not be

15   compensated.  Perez-Lopez discussed his intent to

16   ~~_____~~ have eligible GS-14

17   staff rotate into the position with Newton, and she

18   concurred with his plan.

19              Perez-Lopez noted that he offered the

20   opportunity as a temporary promotion to a GS-15

21   position to all four of his GS-14 employees in the

22   Trade Policy Division.  Of the four, Jane Richards

23   -- White, date of birth 8/29/52, no EEO activity --

24   and James Shay -- Caucasian, date of birth 9/9/48,

25   no prior EEO activity -- declined the opportunity;

1   whereas Carlos Romero -- Latino, date of birth

2   11/18/69, no EEO activity -- and Howard Ron Dobson

3   -- Caucasian, date of birth 11/11/46, no EEO

4   activity -- indicated that they were interested in

5   being considered for a temporary promotion to the

6   position being vacated by White.

7         Perez-Lopez testified further that he

8   became aware that Romero would not immediately be

9   eligible for a temporary promotion since he would

10  not have a year of service as a GS-14 employee until

11  sometime around July of 2005.  Perez-Lopez testified

12  that instead of "flipping a coin," as he phrased it,

13  to choose between Romero and Dobson, he selected

14  Dobson for the first 60-day temporary promotion.

15  Perez-Lopez noted that Dobson had been in the

16  department the longest and it was therefore logical

17  to pick him for the first opportunity for a

18  temporary promotion.  Perez-Lopez thus stated that

19  he selected Dobson to occupy the first 60-day

20  temporary promotion which commenced on May 15, 2005.

21  See Exhibit A-2.

22         Perez-Lopez testified further that he

23  recalled that complainant expressed an interest in

24  rotating into the position after Dobson, but his

25  understanding was that complainant ~~████████~~

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433          WASHINGTON, D.C. 20005-3701          www.nealrgross.com

1    ~~was~~ *was* a GS-12 employee and thus not

2    eligible for a temporary promotion to a GS-15

3    position.  Perez-Lopez *testified that he* recalled contacting

4    individuals in an administrative office within the

5    agency for guidance regarding complainant's

6    eligibility.

7    *In this regard,* I note that ROI tab F1A contains an

8    e-mail from complainant to Perez-Lopez requesting a

9    detail to White's former position ~~——~~ dated June

10   10, 2005. ~~——~~. This

11   same e-mail ~~——~~ document contains a chain of e-mails, *and*

12   ~~——~~ there is a subsequent e-mail from Perez-Lopez

13   dated June 13, 2005, to two different agency

14   employees seeking guidance on complainant's request.

15       Perez-Lopez denied that age, race, or

16   complainant's prior EEO activity played any role in

17   his decision to rotate GS-14 employees into the

18   position White previously incumbered through 60-day

19   temporary promotions on a rotating basis.

20       Gregory Sheffley -- Caucasian, date of

21   birth October 29, 1944, with no prior EEO activity

22   -- who during the relevant time was the Acting

23   Director of the Office of Economic Affairs,

24   testified that Perez-Lopez asked all GS-14 employees

25   if they would be interested in acting and that

12

1   Dobson was the first person selected.  Sheffley

2   noted that the announcement to fill the position

3   permanently was posted sometime in June and closed at

4   the end of June of 2005.

5          Perez-Lopez had retired on June 30

6   2005, and Dobson's 60-day temporary promotion was

7   going to end in or around mid-July of 2005.

8   Sheffley, who took over for Perez-Lopez, then noted

9   that he decided to extend Dobson's temporary

10  promotion an additional 30 days.  See Exhibit 3.

11         Sheffley explained that because the

12  position had been posted and closed by the end of

13  June, he felt that the selection process could be

14  completed quickly, and that is why he elected to

15  extend Dobson's detail another 30 days effective

16  July 16th, 2005.

17         Sheffley testified that he recalled

18  being provided a hard copy of an e-mail complainant

19  had previously sent to Perez-Lopez inquiring about a

20  detail into White's position.  Sheffley also

21  testified that it was his understanding that

22  Perez-Lopez asked only eligible GS-14 staff because

23  the opportunity involved a temporary promotion to a

24  GS-15 position.  Sheffley noted that because complainant incumbered a

25  GS-12 position, he was not eligible for a temporary

1    promotion, _to a GS-15 position_. Sheffley denied extending Dobson's

2    temporary promotion 30 days because of race, age, or

3    prior EEO activity.

4            Sheffley also explained that complainant

5    did not understand the difference between a detail

6    and a temporary promotion, and ~~told~~ he _informed_

7    complainant that if he felt he was qualified for a

8    temporary promotion to a GS-15 position, he could

9    submit materials to the Personnel Department so they

10   could determine whether or not he was qualified for

11   a temporary promotion to a higher graded _GS-15_ position.

12           Sheffley testified he then told

13   complainant that after Dobson and Romero, if the

14   position had not been filled and Personnel had

15   determined complainant was qualified, _for a GS-15 position,_ he would

16   consider complainant for a temporary promotion.

17   Sheffley denied that race, sex, or prior EEO

18   activity played any role in his decisions or actions

19   vis-a-vis complainant.

20           Joanne Broderick, the Director of the

21   Office of Human Resources, in consulting for the

22   relevant organization where complainant was

23   employed, [ILAB], testified about the difference

24   between a detail and temporary promotion.  Broderick

25   explained that with a temporary promotion, an

1    employee is actually promoted to the next grade

2    level and paid that salary while incumbering the

3    position at issue.  Broderick explained further that

4    in order to receive a temporary promotion, an

5    employee would have to have a minimum of one year of

6    experience in the next lowest grade level.  By

7    contrast, individuals who were detailed in positions

8    are not paid at the grade level into the position

9    they're detailed, and thus there is no time in grade

10   requirement for a detail.

11           Broderick noted that, again, no such time-in-grade

12   requirement existed if one were detailed into a

13   position without having any corresponding increase

14   to salary.  Essentially, that's the difference

15   between a detail and a temporary promotion.

16           As the agency articulated a legitimate,

17   non-discriminatory reason for its actions, it is

18   complainant's burden to establish by a preponderance

19   of the evidence that discrimination or retaliation

20   more likely than not motivated the agency's actions.

21   See supra McDonnell Douglas, Burdine, Hicks, Hazen.

22           For the reasons I will explain below, I

23   conclude that complainant failed to establish the

24   actions of Perez-Lopez and Sheffley were more likely

25   than not motivated by discriminatory animus.

1     In reaching this conclusion, I note that

2 complainant presented no credible evidence other

3 than his unsupported assertions that race, age, or

4 retaliation played any role in the decisions by the

5 agency that led to Dobson receiving a temporary

6 promotion, having it extended 30 days, and not

7 providing complainant an opportunity to be detailed

8 and thus act in the position.

9     Complainant presents no evidence

10 whatsoever that age played any role in the decision

11 by either Perez-Lopez to initially detail Dobson

12 into the position or by Sheffley to extend the

13 detail 30 days.  In this regard, I note that Dobson

14 is approximately 18 months older than complainant.

15 In addition, both Perez-Lopez and Sheffley were

16 slightly older than complainant.  Under these

17 circumstances, there is no evidence, testimonial or

18 documentary, that would lead a factfinder to infer

19 age animus by either Perez-Lopez or Sheffley when

20 Dobson was selected initially for the temporary

21 promotion and ultimately was extended 30 days.

22     Complainant also presents no evidence

23 that race played any role in Dobson's selection or *for a temporary promotion*

24 complainant's lack of consideration for a detail.

25 While Dobson is Caucasian, the mere difference in

1    race is insufficient to establish that the decision

2    was based on Dobson's race.  Rather, Perez-Lopez

3    credibly testified that Dobson was the more senior

4    member of the eligible GS-14 employees who had

5    expressed an interest in the position, and there is

6    no evidence that race played any role in the initial

7    decision by Perez-Lopez to select Dobson.

8           Similarly, Sheffley's decision to extend

9    the detail 30 days is logical given that he believed

10   the position was about to be filled because the

11   position had been posted and closed.

12          Finally, complainant presents no

13   evidence other than pure speculation on his part

14   that the agency did not act on his request to be

15   detailed because of his race or age or prior EEO

16   activity.  To the contrary, the evidence established

17   that Perez-Lopez immediately inquired of two agency

18   staff on June 13th, 2005, whether or not complainant

19   could serve in the position.  See ROI Exhibit F1A.

20          It became clear from the testimony of

21   both Perez-Lopez and complainant that there was

22   confusion in complainant's mind between details,

23   which do not require additional compensation or time-

24   in-grade requirements, and temporary promotions, in

25   which the incumbent fills the position at the higher

1    grade level, is paid at that higher grade level, and

2    therefore must have at least one year of service at

3    the prior grade level -- in this case, a GS-14 -- in

4    order to be eligible to be considered for a

5    temporary promotion.  Complainant, as a GS-12

6    employee, was not eligible for a temporary

7    promotion, and Perez-Lopez believed this to be the

8    case at the relevant time.

9            The e-mail in ROI tab F1A specifically

10   states:  "See the attached e-mail from me to Benoit

11   Brookens.  Benoit argues that he should be

12   considered for a detail as the Acting Director of

13   the Trade Policy Division.  As that position is

14   rated as a GS-15, the advice I received earlier was

15   that only GS-14 employees with a year in grade were

16   eligible for the detail, and therefore Benoit was

17   not eligible for the detail.  Please provide me with

18   guidance on how to proceed.  Many thanks.  Jorge."

19            Clearly, at that relevant time,

20   Perez-Lopez did not consider complainant because of

21   his grade level and not because of other protected

22   characteristics such as age, race, or EEO activity.

23            Newton again corroborated Perez-Lopez and ~~his plan to~~
     ~~temporarily promote eligible GS-14's into the position on a rotating basis.  Newton also~~

24   ~~~~ explained how, as she was moving from the

25   position of Associate Deputy Undersecretary to

1    Acting Deputy Undersecretary for ILAB, toward the

2    end of April and the beginning of May, that there

3    was lots of work in that division at that time.

4    ~~~~~~~~~~~~ Newton, ᵃˡˢᵒ explained the importance of the

5    work in ILAB at that time, the need for leadership,

6    and her desire to have the position permanently

7    filled as quickly as possible.

8              In this regard, I recognize that an

9    agency generally has broad discretion to set policies

10   and carry out personnel decisions and that such

11   decisions will not be second-guessed by the

12   reviewing authority absent evidence of unlawful

13   motivation.  Hovey v. Department of Housing and

14   Urban Development, EEOC Appeal Number 0197-3965,

15   (August 31, 2000); Burdine, 450 U.S. at 259.

16             Complainant attempted to show pretext

17   through the testimony of the EEO counselor Margaret

18   Terry.  Specifically, complainant attempted to show

19   that Terry learned that there was no time-in-grade

20   requirement for the position when Terry contacted

21   the HR specialist, Terry Copeland, about the

22   position.  According to Terry's --[and when I say

23   "Terry," I refer to Margaret Terry, the EEO

24   counselor, and not Terry Copeland]-- ~~~~~~~~~~~~

25   ~~~~~~~~ EEO counselor's notes, she ~~~~~~~~~~~~

1    ~~confronted~~ confronted Perez-Lopez with the

2    fact that a detail did not require time-in-grade,

3    ~~and~~ According to Terry, Perez-Lopez indicated that

4    he had no problem allowing complainant to be

5    detailed though he was about to retire at the time.

6    See Exhibit C-2.

7         However, I do not find that such

8    evidence demonstrates pretext based on age, race, or

9    retaliation.  At best, such evidence suggests that

10   the parties were confused about the difference

11   between a detail and a temporary promotion.

12   Moreover, I find Perez-Lopez and Sheffley to be

13   credible witnesses, and I do not find complainant or

14   Margaret Terry, the EEO counselor, to be credible.

15        Terry was not credible for several

16   reasons.  First and most importantly, ~~she~~ Terry could not

17   recall much of what occurred at the relevant time

18   when she was testifying.  Terry testified that she

19   did not recall preparing the counselor's report even

20   though her signature appeared on the counselor's

21   report.  Terry was somewhat evasive answering

22   questions and often claimed she could not recall

23   events or conversations.

24        While on the stand, Terry shifted around

25   a lot and didn't make a lot of eye contact.  ~~I~~ Based on Terry's demeanor and the substance of her responses, I

1  did not get the sense she was being completely

2  credible when she was testifying with respect to her

3  actions as an EEO counselor regarding this specific

4  case.

5          While the agency attempted to show bias

6  by Terry given that the counselor's report left out

7  certain details that were in her own notes, and that

8  Terry had attempted to secure a financial settlement for Complainant

9  in order to resolve the case, I do not find that the

10  bias is the real crux of ~~this~~. Terry's lack of credibility,

11  I cannot infer bias by Terry ~~is not credible because~~ her

12  conversation with Copeland about a detail is based

13  really in generic terms only.  In other words, while

14  Terry learned from Copeland that details may not

15  require a promotion and a year at the next lowest

16  grade, the fact remained that Perez-Lopez took

17  action to fill the position as a temporary promotion

18  because he credibly explained that employees at the

19  next lowest grade level, or GS-14 level, could be

20  rotated into the position through a temporary

21  promotion so that they are adequately compensated

22  for their work.

23          There is no real credible evidence that

24  Margaret Terry, as the EEO counselor, was biased. Rather, Terry

25  ~~she~~ simply wasn't credible because she couldn't

1   recall the details of what occurred, ~~Moreover~~ the

2   distinction between a detail and a temporary

3   promotion was a distinction ~~████~~ she gleaned from her conversation with

4   ~~████~~ an HR person; whereas, during the relevant    Copelands

5   time, Perez-Lopez indicated his understanding in the

6   e-mail that is noted in the ROI at tab F1A. Copelands statements to Terry

7   Complainant produces no evidence that    are of little relevance since

8   Perez-Lopez intentionally and discriminatorily    different understanding

9   proceeded to fill the relevant position as a    at the relevant time

10  temporary promotion instead of a detail in order to    GS-14 staff who

11  specifically preclude complainant because of his    were to be detailed

12  age, race, or EEO activity.

13         As I noted before, Perez-Lopez was

14  credible when he testified.  Perez-Lopez explained

15  his actions, he was forthright and direct while he

16  testified, ① and he was not cross-examined in any

17  meaningful manner so as to show bias, animus, or any

18  inconsistency in his testimony or reasons for his

19  actions.

20         ~~Moreover,~~ several aspects of

21  Perez-Lopez's testimony were corroborated by other

22  witnesses.  For example, Perez-Lopez testified that

23  he spoke with each of the four eligible GS-14

24  employees, ~~████~~ that ~~████████~~ Richards told

25  him that she wasn't interested in a temporary

① Perez-Lopez did not stutter, stammer or hesitate when answering questions, or otherwise avert eye contact.

1  promotion and that Romero was interested but may not

2  have the time in grade since he had only recently been promoted

3  ~~to a~~ GS-14.

4          Richards corroborated Perez-Lopez when

5  she explained that she had an informal discussion

6  with Perez-Lopez, but she told him that she wasn't

7  interested in temporary promotions. Likewise, Romero testified about his

8  conversation with Perez-Lopez about a temporary

9  promotion, and he explained to Perez-Lopez that

10 he was interested but that he may not have the time-

11 in-grade requirement since he had been promoted by

12 accretion of duties to a GS-14 in

13 2004.  Finally, both Dobson and Shay also

14 testified to similar conversations they both had with

15 Perez-Lopez about a temporary promotion.

16          All four employees stated that they have

17 no reason to believe that Perez-Lopez harbored

18 animus based on age, race, or EEO activity regarding

19 his actions to temporarily promote eligible and

20 willing staff.

21          Sheffley was similarly credible, as I

22 found him to be very direct and forthright in

23 his testimony. Similarly, complainant did not

24 expose any bias or any inconsistencies that would

25 suggest to me that Sheffley was not credible or that

② Sheffley was similarly confident while testifying, and he did not stutter, stammer, hesitate or avert eye contact.

1    he harbored animus based on age, race, or EEO

2    activity.

3              By contrast, complainant was not

4    credible when he testified.  Complainant only

5    offered vague allegations that older or

6    African-American employees were not offered details,

7    and I already explained that Dobson is older than

8    complainant and that Perez-Lopez credibly testified

9    about the offer of temporary promotions, not

10   details, to eligible GS-14 staff, which precluded

11   complainant, a GS-12 employee, from consideration.

12             Complainant also continues to maintain

13   and argue, as he did during closing, that White left

14   in mid-April of 2005 and that no detail was formally

15   established until mid-May of 2005.  Complainant seems to be

16   suggesting that he could have and should have been

17   considered for a detail for that 30-day period from

18   approximately mid-April to mid-May of 2005.

19             There are three fundamental problems

20   with complainant's argument.

21             First, there's no evidence that the

22   position was vacant for that 30-day period.

23   White apparently retired on April 30th, and complainant

24   produced no evidence as to whether or not White was

25   actually working during the period April 15 to April

1    30 other than his own testimony *suggesting that Whik was not in the office.*

2         Number two, there's credible evidence

3    from Newton and Perez-Lopez of ████ changes that were

4    occurring within ILAB as a whole *as a result of* several

5    different individuals retiring. ████████ *Therefore, as Newton was being promoted herself,* it

6    naturally took time to get organized, for Newton to

7    assume her new role and for Perez-Lopez to assume

8    his role. ████████████████ *In summary, there is no evidence beyond Complainant's unsupported conjecture,*

9    ████████████████ *that anyone could have been, but was not detailed into Whik's position, between ████-April and Mid-May of 2005.*

10        Number three, complainant never even

11   expressed an interest in being detailed into the

12   position until he sent an e-mail to Perez-Lopez on

13   June 10████ 2005.  So any actions that may have

14   occurred between April 15 and May 15 are not

15   relevant since complainant could not show that

16   Perez-Lopez *was even aware* ████ that complainant was

17   ████ interested *in a detail* during that time period. ████

18   ████████████

19        Complainant also argued that he never

20   learned from Perez-Lopez that he was not qualified

21   for the position *because he was a 6S-12 employee.* ████ Even assuming Perez-Lopez

22   didn't "close the loop," as was the term used during

23   the hearing, and didn't follow through and *inform* ████

24   complainant about his conversations with Personnel,

25   I note that during the relevant time, Perez-Lopez

1    was retiring. ~~and~~ given my findings regarding

2    Perez-Lopez's credibility, ~~so~~ that ~~he~~ was  his testimony

3    corroborated by several other witnesses, and I found  that

4    his testimony to be forthright and direct, I infer

5    no animus based on race, age, or prior EEO activity

6    even if Perez-Lopez ultimately never spoke to

7    complainant about his qualifications and whether or

8    not he was qualified for ~~the~~ position.  a detail or temporary promotion to the

9                 Interestingly, complainant testified

10   about a contentious relationship he had with

11   Perez-Lopez over the years.  Complainant noted how

12   he had represented employees in the union process

13   and would address employee concerns and/or meet with

14   management officials such as Perez-Lopez during the

15   step 1 or step 2 grievance process.  Complainant

16   also explained that Perez-Lopez unlawfully

17   terminated him in 2000 or 2001, and an arbitrator

18   overturned his termination decision and complainant

19   was reinstated.  This, apparently, is the basis for  part of

20   complainant's prior EEO activity.

21   Since this evidence came out at the hearing, ~~████~~ I expected

22   complainant's representative to explore the

23   potential animosity between complainant and

24   Perez-Lopez when cross-examining Perez-Lopez, in

25   part to undermine Perez-Lopez's credibility and in

1   part to show retaliatory animus.

2           The difficult challenge complainant

3   would have had under those circumstances would be to

4   segregate retaliatory animus for his EEO activity from

5   animus in engaging in union activity.  However,

6   complainant did not even cross examine Perez-Lopez at all

7   regarding their overall work relationship and their

8   work history.  Complainant's testimony is thus

9   unsupported, and without any negative credibility

10  determinations, vis-a-vis Perez-Lopez, it is thus wholly insufficient to

11  establish pretext for retaliation in light of

12  Perez-Lopez's and Sheffley's overall credible

13  testimony that is corroborated by all of the GS-14

14  international economists and by Newton.

15          In the end, while complainant may be

16  correct in that he and Perez-Lopez had an

17  acrimonious relationship, there is simply no

18  credible evidence that the decision to temporarily

19  promote GS-14 employees and not authorize a detail

20  for complainant without a temporary promotion was at

21  all motivated by discriminatory or retaliatory

22  animus.

23          Conclusion:  Based on a careful analysis

24  of the record and after hearing and assessing the

25  credibility of the witnesses at the hearing, I

1    conclude that complainant failed to demonstrate that

2    more likely than not, discriminatory or retaliatory

3    animus motivated the agency's actions.   Accordingly,

4    judgment in favor of the agency is appropriate.

5              End of bench decision.   Closing

6    instructions:

7                   I informed the court reporter previously

8    and I want to amend my instructions now with respect

9    to the transcripts, just to make sure that she

10   conveys to the transcriber and that the transcriber

11   can see these instructions themself, that we now

12   need a total of three transcripts -- that's not

13   four.   The reason why we only need three sets of

14   transcripts is that the complainant has withdrew his

15   representatives; therefore, we need one original set

16   and two copies.   The court reporting service should

17   make sure that all three sets include copies of the

18   exhibits.

19                   Volume 1 of the transcripts should be

20   all the testimony and exhibits that took place on

21   November 17, 2006.   Volume 2 of the hearing

22   transcripts should be all the testimony and exhibits

23   that were taken today; that is, December 7th.

24   Volume 3 of the transcript should be the bench

25   decision.   That way, the bench decision is its own

1    separate volume and is easier to edit as

2    appropriate.  Therefore, Volume 1 is everything on

3    November 17th, including exhibits, and Volume 2 is

4    everything on December 7th, including exhibits.  The

5    court reporting service should make sure that the

6    exhibits are copied so that there's three total sets

7    of all the materials.

8                    Finally, the court reporting service

9    should ensure that all three of these sets are sent

10   to me, the original plus the two copies are all sent

11   to me.  I will make appropriate edits to Volume 3,

12   the bench decision, and I will distribute the

13   transcripts to the parties as appropriate once I

14   complete the decision along with appropriate orders

15   and appeal rights and other appropriate

16   documentation.

17                   Having heard the testimony of all the

18   witnesses and the arguments of the parties, I thank

19   the parties for their cooperation, and at 2:00, I

20   declare this hearing closed.

21                   (Whereupon, at 2:00 p.m., the hearing

22   adjourned.)

23

24

25

29

## CERTIFICATE

    This is to certify that the foregoing transcript

in the matter of:    Benoit Brookens and Elaine Chao
                   Bench Decision

Before:          The Honorable Joel A. Kravetz

Date:            December 7, 2006

Place:          Frances Perkins Building
                   Washington, D.C.

represents the full and complete proceedings of the

aforementioned matter, as reported and reduced to

typewriting.

_____
Charisse Wheby





**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C.  20036**

Benoit Brookens,
Complainant,

v.

Elaine Chao,
Secretary,
Department of Labor,
Agency.

Request No. 0520070890

Appeal No. 0120071829

Agency No. 05-11-129

Hearing No. 570-2006-00121X



## DENIAL

Complainant timely requested reconsideration of the decision in *Benoit Brookens v. Department of Labor,* EEOC Appeal No. 0120071829 (July 17, 2007).  EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that:  (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency.  *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 0120071829 remains the Commission's final decision.  There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision.  You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the

2                                                    0520070890

person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and, if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

_____
Carlton M. Hadden, Director
Office of Federal Operations

OCT 0 9 2007
_____
Date

3                                          0520070890

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed**. I certify that this decision was mailed to the following recipients on the date below:

Benoit Brookens
460 Taylor St NE #G-44
Washington, DC 20017

Mary Todd
P.O. Box 960
Washington, D.C. 20044

Annabelle T. Lockhart, Director
Office of Civil Rights
Department of Labor
200 Constitution Ave., NW #N4123
Washington, DC 20210

OCT 0 9 2007
_____
Date

_____
Equal Opportunity Assistant

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

BENOIT BROOKENS,        )
                              )
        **Plaintiff,**        )
                              )
**v.**                        )
                              )     **Civil Action No. 08cv00086 (ESH)**
**ELAINE L. CHAO,**      )
**Secretary, Department of Labor,**  )
                              )
        **Defendant.**     )

## DECLARATION OF NAOMI BARRY-PEREZ

I, Naomi Barry-Perez, do hereby declare and state under the penalty of perjury:

1.    I am presently employed as Chief of the Internal Enforcement Unit of the Civil Rights Center (CRC) at the U.S. Department of Labor in Washington, D.C. I have served in this position since January 2005.

2.    A primary purpose of the CRC is to conduct independent investigations into allegations of discrimination and retaliation filed by DOL employees and applicants against the Agency.

3.    I have reviewed a CRC database containing the dates and descriptions of the formal complaints of discrimination filed by Benoit O. Brookens, II.

4.    The Department of Labor's records show that on or about January 22, 2008, Mr. Brookens filed an Informal Complaint of Discrimination in order to initiate contact with a Department of Labor EEO Counselor concerning the denial of his desk

audit request and the denial of a within grade increase by his immediate supervisor, Timothy Wedding, in December 2007.

5.      CRC's records indicate that on March 12, 2008, Mr. Brookens was hand-delivered a copy of a Notice to File a formal complaint of discrimination.  This letter advised Mr. Brookens that he had 15 calendar days (by March 27, 2008) to file a formal complaint of discrimination concerning the denial of his desk audit request and the denial of his within grade increase.

5.      CRC's records indicate that Mr. Brookens filed his formal complaint of discrimination concerning the denial of his desk audit request and the denial of a within grade increase on March 28, 2008.

6.      Pursuant to the EEO regulations, the CRC shall now assess whether to accept Mr. Brookens' complaint for investigation or dismiss all or some of the claims raised.  If Mr. Brookens' complaint is deemed untimely filed, it shall be dismissed.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on _April 24th, 2008_

Naomi Barry-Perez
Chief, Internal Enforcement Unit
Civil Rights Center
U.S. Department of Labor



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
**Washington, D.C. 20036**

Benoit Brookens,
Complainant,

v.

Elaine L. Chao,
Secretary,
Department of Labor,
Agency.

Appeal No. 0120073044
Hearing No. 570-2007-00108X
Agency No. 06-11-086

DECISION

Complainant filed an appeal from the agency's May 18, 2007 final decision concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. §2000e *et seq.* and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq.*   For the following reasons, the Commission AFFIRMS the agency's final decision.

At the time of events giving rise to this complaint, complainant worked as an International Economist at the agency's Bureau of International Labor Affairs facility in Washington, D.C. On June 8, 2006, complainant filed an EEO complaint alleging that he was discriminated against on the bases of race (African-American), age (48), and in retaliation for prior protected activity when:

1.   On March 30, 2006, the agency cancelled Vacancy Announcement Number F01079 for the position of Policy Adviser, Grade/Series GS-301-15.

2.   On April 6, 2006, the agency cancelled Vacancy Announcement Number ILAP-06-084M for the position of Policy Adviser, Grade/Series GS-301-15.

At the conclusion of the investigation, complainant was provided with a copy of the report of investigation and notice of his right to request a hearing before an EEOC Administrative Judge (AJ).   Complainant requested a hearing.

2                                                    0120073044

On January 12, 2007, the AJ issued an Acknowledgment and Order, in which he set forth the orders regarding discovery, motions and other pre-hearing procedures to be followed by the parties. The Order provided that failure to follow the AJ's order or the Commission's regulations may result in sanctions pursuant to 29 C.F.R. § 1614.109(f)(3).

On February 2, 2007, the agency requested that complainant complete interrogatories and requests for document production within 30 days. The record shows that by letter dated February 16, 2007, the agency supplied complainant with an additional copy of its discovery requests after complainant had notified the agency that his briefcase had been taken and some documents lost. The agency declined to grant complainant's request for additional time to respond to the discovery requests. On March 16, 2007, the agency submitted a Motion to Compel Discovery to the AJ. The agency's Motion was served on complainant by mail. Also on March 16, 2007, complainant served his responses to the agency's discovery requests by mail and upon the AJ by facsimile transmission. Additionally, on March 16, 2007, the AJ issued an Order to Show Cause, also serving complainant by mail, and ordering complainant to show cause, if he had any, on or before March 21, 2007, why sanctions should not be imposed for his failure to cooperate in the processing of his complaint. On March 21, 2007, complainant responded to the AJ's Order, explaining that he had responded to the agency's discovery requests on March 16, 2007, and requesting that the Order to Show Cause be vacated. On March 22, 2007, the AJ dismissed complainant's request for a hearing, stating that complainant failed to provide an adequate explanation for his failure to comply with the Order. The AJ remanded the case to the agency for issuance of a final decision.

On May 18, 2007, the agency issued a final decision pursuant to 29 C.F.R. § 1614.110(b) concluding that complainant failed to prove that he was subjected to discrimination as alleged. It is from this decision that complainant now appeals, requesting reversal of the final decision and a hearing.

In its decision, the agency observed that complainant applied for the position of Policy Adviser, GS-301-15 when the position was first advertised. On March 30, 2006, complainant was notified that the agency was canceling the vacancy announcement because the position had been advertised with the number "F01079" rather than a standard International Labor Affairs Position number. The position was re-advertised under vacancy announcement number ILAP-06-084M and complainant again applied for the position. On April 6, 2006, complainant was again contacted and notified that the vacancy announcement, ILAP-06-084M was canceled. The agency found that the Associate Deputy Undersecretary for International Affairs requested that the second vacancy announcement be canceled because the department was being reorganized. The Deputy stated that he was not aware of who had applied for the position prior to his decision to cancel it.

On appeal, complainant contends that the AJ abused his discretion when he dismissed his hearing request on the grounds that he failed to respond fully and in a timely manner to the

AJ's Order. On appeal, the agency requests that the Commission affirm its final decision finding no discrimination.

## ANALYSIS AND FINDINGS

<u>Sanctions</u>

Preliminarily, we consider whether the AJ erred in sanctioning complainant for failure to comply with the AJ's discovery Order in good faith. AJs have broad authority including the power to conduct a hearing and develop the administrative record, which includes overseeing discovery; ordering supplemental investigations; and holding hearings. *See* 29 C.F.R. §1614.109 *et seq.*; MD-110, Chapter 7, Section III(D)(10) and (13); *Waller v. Department of Transportation*, EEOC Appeal No. 0720030069 (May 25, 2007). The parties are required to abide by the orders and requests of the AJ to provide the investigative file, documents, records, comparative data, statistics, affidavits, and attendance of witnesses. MD-110, Chapter 7, Section III. Noncompliance, without good cause shown, can result in sanctions against the non-complying party. 29 C.F.R. § 1614.109(f)(3). Where a party refuses to comply, an AJ may: (1) draw an adverse inference in favor of the non-complying party; (2) consider the missing information to be favorable to the non-complying party; (3) exclude other evidence offered by the offending party; (4) provide a summary disposition in favor of the non-complying party on some or all of the issues without a hearing; and (5) take other action deemed appropriate, *e.g.*, order payment of attorney's fees and costs and expenses by the non-complying party. *Id.*

We find that the AJ did not abuse his discretion when he dismissed complainant's request for a hearing for complainant's failure to provide an adequate explanation for his lack of compliance with the AJ's Orders. *See Kammermeyer v. United States Postal Service*, EEOC Appeal No. 01A61330 (July 12, 2006). We note that the AJ found that "[c]omplainant's 'response' has not sufficiently answered the Order to Show Cause at all. In fact, no plausible explanation is provided by [c]omplainant to explain why he plainly flaunted this tribunal's requirements."

<u>Disparate Treatment</u>

To prevail in a disparate treatment claim such as this, complainant must satisfy the three-part evidentiary scheme fashioned by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Complainant must initially establish a *prima facie* case by demonstrating that he or she was subjected to an adverse employment action under circumstances that would support an inference of discrimination. *Furnco Construction Co. v. Waters*, 438 U.S. 567, 576 (1978). Proof of a *prima facie* case will vary depending on the facts of the particular case. *McDonnell Douglas*, 411 U.S. at 804 n. 14. The burden then shifts to the agency to articulate a legitimate, nondiscriminatory reason for its actions. *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981). To ultimately prevail, complainant must prove, by a preponderance of the evidence, that the agency's explanation is pretextual. *Reeves v.*

4                                                     0120073044

*Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 120 S.Ct. 2097 (2000); *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 519 (1993).

Complainant can establish a *prima facie* case of reprisal discrimination by presenting facts that, if unexplained, reasonably give rise to an inference of discrimination. *Shapiro v. Social Security Admin.*, EEOC Request No. 05960403 (Dec. 6, 1996) (*citing McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). Specifically, in a reprisal claim, and in accordance with the burdens set forth in *McDonnell Douglas*, *Hochstadt v. Worcester Foundation for Experimental Biology*, 425 F. Supp. 318, 324 (D. Mass.), *aff'd*, 545 F.2d 222 (1st Cir. 1976), and *Coffman v. Department of Veteran Affairs*, EEOC Request No. 05960473 (November 20, 1997), a complainant may establish a *prima facie* case of reprisal by showing that: (1) he or she engaged in a protected activity; (2) the agency was aware of the protected activity; (3) subsequently, he or she was subjected to adverse treatment by the agency; and (4) a nexus exists between the protected activity and the adverse treatment. *Whitmire v. Department of the Air Force*, EEOC Appeal No. 01A00340 (September 25, 2000).

We find that complainant has not shown that the agency was motivated by complainant's race or age when it canceled either vacancy announcement. Nor has complainant shown that the agency canceled either announcement in reprisal for complainant's prior EEO activity.

We therefore AFFIRM the agency's final decision finding no discrimination.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.  The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.  The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity

5                                        0120073044

Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your

6                                    0120073044

time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

*Carlton M. Hadden*

Carlton M. Hadden, Director
Office of Federal Operations

OCT 1 0 2007

Date

7                                          0120073044

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed**.  I certify that this decision was mailed to the following recipients on the date below:

Benoit Brookens
460 Taylor St  NE  #G-44
Washington, DC  20017

Annabelle T. Lockhart, Director
Office of Civil Rights
Department of Labor
200 Constitution Ave., NW  #N4123
Washington, DC  20210

OCT 1 0 2007
_____
Date


_____
Equal Opportunity Assistant



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Office of Federal Operations**
**P. O. Box 19848**
Washington, D.C. 20036

Benoit Brookens,
Complainant,

v.

Elaine L. Chao,
Secretary,
Department of Labor,
Agency.

Appeal No. 0120072770

Hearing No. 100200500901X

Agency No. CRC0400141    0411-141

## DECISION

On May 25, 2007, complainant filed an appeal from the agency's April 17, 2007, final order concerning his equal employment opportunity (EEO) complaint alleging employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (Title VII), as amended, 42 U.S.C. § 2000e *et seq.*, and the Age Discrimination in Employment Act of 1967 (ADEA), as amended, 29 U.S.C. § 621 *et seq.* The appeal is deemed timely and is accepted pursuant to 29 C.F.R. § 1614.405(a). For the following reasons, the Commission AFFIRMS the agency's final order.

At the time of events giving rise to this complaint, complainant worked as a International Economist at the agency's Bureau of International Affairs, Department of Labor facility in Washington, D.C. On September 27, 2004, complainant filed an EEO complaint alleging that he was discriminated against on the bases of race (African-American) and age (D.O.B. 06/24/48) when in May 2006, the position of DAS-POLICY (Regulatory Economics and Economic Policy Analysis), Series/Grade ES/0110-00, advertised under Vacancy Announcement No. DOL-SES-ASP-04-04 was canceled.

At the conclusion of the investigation, complainant was provided with a copy of the report of investigation and notice of his right to request a hearing before an EEOC Administrative Judge (AJ). Complainant timely requested a hearing. Over the complainant's objections, the AJ assigned to the case granted the agency's February 6, 2007 motion for a decision without a hearing and issued a decision without a hearing on March 27, 2007. The agency subsequently issued a final order adopting the AJ's finding that complainant failed to prove that he was subjected to discrimination as alleged.

2                                          0120072770

The record reflects that, even construing the facts in the light most favorable to complainant, he failed to establish that a genuine issue of material fact existed such that a hearing was warranted. The agency offered a legitimate reason for cancelling the Vacancy Announcement, *i.e.*, the position description, as written, was too narrow to attract the broad group of candidates that the agency was seeking. The agency also indicated, and complainant did not establish otherwise, that the responsible management official did not see any of the applications before deciding to cancel the Vacancy Announcement. We find that complainant failed to present any evidence to show that a genuine issue of fact exists. Additionally, complainant failed to present persuasive evidence to rebut the agency's proffered reason or offer any other evidence to support an inference that he was discriminated against as he alleged.

After a review of the record in its entirety, including consideration of all statements submitted on appeal, it is the decision of the Commission to affirm the agency's final order. We find that the AJ appropriately issued a decision without a hearing and the preponderance of the evidence in the record does not establish that complainant was discriminated against as he alleged.

## STATEMENT OF RIGHTS - ON APPEAL

### RECONSIDERATION (M0701)

The Commission may, in its discretion, reconsider the decision in this case if the complainant or the agency submits a written request containing arguments or evidence which tend to establish that:

1.  The appellate decision involved a clearly erroneous interpretation of material fact or law; or

2.  The appellate decision will have a substantial impact on the policies, practices, or operations of the agency.

Requests to reconsider, with supporting statement or brief, must be filed with the Office of Federal Operations (OFO) within thirty (30) calendar days of receipt of this decision or within twenty (20) calendar days of receipt of another party's timely request for reconsideration. *See* 29 C.F.R. § 1614.405; Equal Employment Opportunity Management Directive for 29 C.F.R. Part 1614 (EEO MD-110), 9-18 (November 9, 1999). All requests and arguments must be submitted to the Director, Office of Federal Operations, Equal Employment Opportunity Commission, P.O. Box 19848, Washington, D.C. 20036. In the absence of a legible postmark, the request to reconsider shall be deemed timely filed if it is received by mail within five days of the expiration of the applicable filing period. *See* 29 C.F.R. § 1614.604. The request or opposition must also include proof of service on the other party.

Failure to file within the time period will result in dismissal of your request for reconsideration as untimely, unless extenuating circumstances prevented the timely filing of the request. Any

3                                              0120072770

supporting documentation must be submitted with your request for reconsideration. The Commission will consider requests for reconsideration filed after the deadline only in very limited circumstances. *See* 29 C.F.R. § 1614.604(c).

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (S0900)

You have the right to file a civil action in an appropriate United States District Court within ninety (90) calendar days from the date that you receive this decision. If you file a civil action, you must name as the defendant in the complaint the person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work. If you file a request to reconsider and also file a civil action, filing a civil action will terminate the administrative processing of your complaint.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). The grant or denial of the request is within the sole discretion of the Court. Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File A Civil Action").

FOR THE COMMISSION:

_Carlton M. Hadden_
Carlton M. Hadden, Director
Office of Federal Operations

SEP 1 2 2007
Date

4                                    0120072770

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed.** I certify that this decision was mailed to the following recipients on the date below:

Benoit Brookens
460 Taylor St NE #G-44
Washington, DC 20017

Annabelle T. Lockhart, Director
Office of Civil Rights
Department of Labor
200 Constitution Ave., NW #N4123
Washington, DC 20210

SEP 1 2 2007
_____
Date

_____
Equal Opportunity Assistant

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **BENOIT BROOKENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 08cv00086 (ESH)** |
| **ELAINE L. CHAO,** | ) | |
| **Secretary, Department of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |

## DECLARATION OF JOANNE T. BRODERICK

I, Joanne Broderick, do hereby declare and state under the penalty of perjury:

1.    I am presently employed as the Director of the Office of Human Resources Consulting and Operations, which is part of the Human Resources Center, in the Office of the Assistant Secretary for Administration and Management (OASAM), at the U.S. Department of Labor (DOL) in Washington, D.C.

2.    OASAM is the agency that provides administrative support to the Office of Administration and certain other client agencies. OASAM provides personnel advice and services to the Bureau of International Labor Affairs (ILAB).

3.    I have served in this position since May 2006.

4.    In this position, my responsibilities include advising management and supervising on Federal personnel matters and supervising staff performing human resources services, including staffing, classification, and position management, processing and payroll.

1

5.    Prior to commencing this position with the U.S. Department of Labor, I worked as the Director of Staffing, Recruitment, and Training Policy for the Department of Justice in Washington, D.C.  I possess 26 years of federal employment personnel experience advising Federal managers, supervisors, and employees about the Federal personnel rules and regulations.

5.    I provided oral testimony on behalf of the Department of Labor in *Brookens v. Chao*, EEOC Case No. 570-2006-00121X.  In that administrative hearing, my testimony primarily concerned the time-in-grade (eligibility) requirements for promotions under the Federal regulations.

6.    The term "eligibility" as it relates to merit staffing promotions generally refers to the area of consideration stated in the vacancy announcement.  For example, where a vacancy announcement states "Department of Labor only," then only current Department of Labor employees are eligible to apply for consideration to that position.

6.    The term "eligibility" also refers to time-in-grade restrictions.  In the competitive service, for positions at grades GS-12 or higher, a candidate must have served one year (52 weeks) at the next lower grade level in order to be eligible for a promotion, through merit promotion, to the next higher grade.  *See* 5 C.F.R. § 300.604(a).

7.    In order to be eligible for a GS-15 vacancy, a GS-14 candidate must have served for 52 weeks as a GS-14 employee.

8.    In order to be eligible for a GS-14 vacancy a GS-13 candidate must have served for 52 weeks as a GS-13 employee.

8.    The exclusions to time-in-grade requirements are listed at 5 C.F.R. §
300.603(b).  Examples of exclusions to time-in-grade requirements include where a
candidate is eligible for a special appointment or the position was announced under
delegated examining authority for non-federal status candidates or the candidate was
eligible for an appointment as a disabled veteran.

9.    I have reviewed the personnel records of Benoit O. Brookens, II.

10.    Mr. Brookens has been employed as an International Economist in DOL's
Bureau of International Labor Affairs (ILAB) since 1990.

11.    My review of Mr. Brookens' personnel file shows that during his Federal
service career, he has not held any GS-13 positions.

12.    My review of Mr. Brookens' personnel file shows that during his Federal
service career, he has not held any GS-14 positions.

13.    My review of the records in Mr. Brookens' personnel file shows that he has
been employed as a GS-12 International Economist in ILAB since he was hired in 1990.

14.    Based on my review of the records in Mr. Brookens' personnel file, he is
not eligible for a promotion to GS-14 positions that are advertised under merit staffing
procedures for DOL employees because Mr. Brookens does not possess the required 52
weeks in a GS-13 position.

15.    Based on my review of the records in Mr. Brookens' personnel file, he is
not eligible for a promotion to GS-15 positions that are advertised under merit staffing
procedures for DOL employees because Mr. Brookens does not possess the required 52
weeks in a GS-14 position.

16.    Based on my review of Mr. Brookens' personnel file, there are no records to indicate that he is eligible for an exclusion from the time-in-grade requirements. *See* 5 C.F.R. § 300.604(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on __4/18_____, 2008        _Joanne T. Broderick_

                                          By:  Joanne Broderick

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **BENOIT BROOKENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 08cv00086 (ESH)** |
| **ELAINE L. CHAO,** | ) | |
| **Secretary, Department of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**DECLARATION OF DALIAH N. HOLMES**

I, Daliah Holmes, do hereby declare and state under the penalty of perjury:

1.      I am presently employed as Human Resources Specialist in the Office of the Inspector General at the U.S. Department of Labor.  I began this position on February 4, 2008.

2.      From October 6, 2002 through February 3, 2008, I was employed as a Human Resources Specialist in the Office of Executive Resources and Personnel Security (OERPS), which is part of the Human Resources Center, in the Office of the Assistant Secretary for Administration and Management (OASAM), at the U.S. Department of Labor (DOL) in Washington, D.C.

3.      From February 27, 2000 through October 5, 2002, I was employed as a Human Resources Specialist in the Mine Safety and Health Administration, U.S. Department of Labor.

4.      OASAM is a DOL agency that provides administrative support, including staffing services for vacancy announcements to the Office of Administration and certain DOL client agencies.

1

5.     I was the OASAM Human Resources Specialist responsible for staffing vacancy announcement DOL-SES-ILAB-06, which was a Senior Executive Service (SES) position in DOL's Bureau of International Labor Affairs (ILAB).

6.     In providing staffing services for vacancy announcement DOL-SES-ILAB-06-21, I was responsible for reviewing the application packages and conducting the qualifications examination.  I was also responsible for notifying each applicant about whether he/she advanced in the process or did not pass certain stages of the application process.

7.     During my eight years as a Human Resources Specialist at the Department of Labor, I have staffed approximately 40 SES positions.

8.     The Department of Labor's process for reviewing and selecting SES positions is as follows:

a.     The basic qualifications are determined by a Human Resources Specialist;

b.     Qualified applicants are referred to a ranking panel;

c.     The ranking panel determines candidates who will be referred to the Selecting Official;

d.     The Selecting Official makes a tentative selection;

e.     The Secretary of Labor approves or disapproves the selection;

f.     A Qualifications Review Board appointed by the Office of Personnel Management approves or disapproves the qualifications of the tentative selectee;

g.     A final offer of employment can be made.

h.     The DOL process is consistent with the Federal personnel regulations at 5 C.F.R. § 317 Part D and 5 C.F.R. § 317.502,

9.      I have reviewed my responses to the witness questionnaire that I provided during DOL's investigation of Mr. Brookens' formal complaint of discrimination in Case No. 07-11-027. *See* Exhibit F-2, attached.

10.     I have also reviewed the on-line application package submitted by Mr. Brookens for the DOL-SES-ILAB-06-21 vacancy. *See* Exhibit F-3, attached.

11.     The vacancy announcement for DOL-SES-ILAB-06-21 required applicants to provide responses to these three Mandatory Technical Qualifications:

(1)     Knowledge of U.S. labor, economic and trade laws and policies and their impact on U.S. employment;

(2)     Ability to identify and resolve successfully complex legal and policy issues related to trade and labor issues;

(3)     Ability and experience overseeing international technical assistance and cooperation programs.

*See* Exhibit F-4, p. 3, attached.

12.     The vacancy announcement for DOL-SES-ILAB-06-21 required applicants to address these five Mandatory Executive Core Qualifications: (1) Leading Change; (2) Leading People; (3) Results Driven; (4) Business Acumen; and (5) Building Coalitions/Communications. *See* Exhibit F-4, pp. 3-4.

13.     The vacancy announcement for DOL-SES-ILAB-06-21 stated that "Candidates must possess a broad experience that involves novel and complex issues related to labor, economic, and trade issues. This experience must have been at a major management level (normally equivalent to the GS-15 level in the Federal service)." *See* Exhibit F-4, p. 4.

14.     The vacancy announcement for DOL-SES-ILAB-06-21 stated that "Candidates will be evaluated upon their qualifications.  In addition applications will be evaluated upon their responses to any Mandatory Technical Qualifications and the Executive Core Qualifications." *See* Exhibit F-4, p. 4.

15.     In evaluating the application package of Mr. Brookens, I determined that he was not minimally qualified for this SES position.  Because Mr. Brookens had been a GS-12 employee since 1990, he had not achieved the executive experience needed for this SES position. *See* Exhibit F-2, p. 9.

16.     On October 16, 2006, I sent Mr. Brookens an e-mail message notifying him that he would not be further considered for this position because he did not possess significant senior level management experience.  *See* Exhibit F-3, p. 1.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on *April 18*_____, 2008                    *Daliah N. Holmes*
                                                      _____
                                                      Daliah N. Holmes

**WITNESS AFFIDAVIT**

I, (name) _Daliah Holmes_

am an ✓ employee of ____ applicant to ____ former employee of the U.S. Department of Labor's:

(Agency) _OASAM_

(Office) _Executive Resources and Personnel Security_

(Division) _____

(Branch) _____

Located in (city and state) _Washington, DC_

In the capacity of (show both your organization title and the classification of your job, if different):
_Human Resources Specialist_

Grade _13_ between (date) _10/19/03_ and (date) _present_

My telephone number during working hours is: _202-693-7704_

**I HAVE BEEN ADVISED OF THE FOLLOWING:**

I am required by Federal regulations and Department of Labor policy to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation into a complaint of discrimination against the Department of Labor. I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully discloses all of my firsthand knowledge having a bearing on the merits of the complaint.  My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor.  This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond.  In addition, the Complainant and the appropriate Department of Labor officials involved in the EEO complaint process will receive the entire investigative report.  I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate.  I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process (so long as my choice does not result in a conflict of interest).  I have ____ have not ✓ chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the EEO complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly ✓ swear or ____ affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and concerns raised by the investigator.

CRC Form 10
Rev. 3/03)

Exhibit _F2_
Page _1_ of _14_ Pages

Page _1_ of _6_ Pages

Initials _DH_

Witness Questionnaire
Witness: **Daliah Holmes**
EEO Complaint of Benoit Brookens Case No. 07-11-027

Please respond to the following request for information relative to this formal complaint of discrimination, using the enclosed affidavit form. Number and initial each page and initial any corrections made to any items in your affidavit. Prepare your response in narrative form to best relate what occurred in this complaint. As you describe circumstances and facts in a time sensitive chronology, give specific and detailed information so that someone who is not familiar with the situation can understand what it is you are trying to explain/demonstrate. In other words, your affidavit should paint a picture for the person who will make the decision relative to the issue raised in this complaint.

Please provide your response to the following:

1. Please state for the record your name, race, EEO activity (if any), position and location within the Department of Labor.

   **My name is Daliah Holmes, my race is African American. I have no EEO activity. Currently my position is Human Resources Specialist.**

2. Please describe your role/responsibilities pertaining to the allegations under investigation.

   **My role pertaining to the allegations under investigation is Human Resources Specialist in charge of staffing the position.**

3. Were you aware of Mr. Brookens' race?

   **No, I was not aware of Mr. Brookens' race.**

4. Were you aware of the Complainant's previous EEO complaints or past opposition to activities prohibited under the EEO regulations (e.g. allegations of discrimination)? If so, when/how did you become aware?

   **I am aware of only one EEO complaint that Mr. Brookens filled. This was an EEO complaint against another SES position in which I was the Human Resources Specialist who staffed the position. Outside of that case I am unaware of any other previous EEO complaints.**

Exhibit **F2**
Page **2** of **14** Pages



5. The Complainant testified that on October 17, 2006, you told him that he lacked "significant senior level managerial experience." Please respond in detail. Please submit any documentary evidence (policies or procedures) available to support your response.

**On October 17, 2006 I forwarded the complainant an email communication regarding the status of his application. I have never spoken with the complainant in regard to this position or any other position.**

**The vacancy announcement states the following:**

**Candidates must possess a broad experience that involves novel and complex issues related labor, economic, and trade issues. This experience must have been gained at a major management level (normally equivalent to the GS-15 grade level in the federal service).**

**As a result of the above criteria Mr. Brookens received the email communication forwarded to him.**

6. To the best of your knowledge, why was Mr. Brookens denied certification? If the DOL Online Opportunities Recruitment System (DOORS) process impacted this decision, please explain how DOORS works? Your response here must be sufficiently specific to permit the Complainant to mount an evidentiary challenge to any of the explanations offered by the agency for its actions.

**Mr. Brookens was not denied certification. The certification process occurs when the applications found minimally qualified are reviewed by an evaluation panel. The panel must then indicate who will be certified (referred to the selecting official for further consideration)**

**Mr. Brookens application was not found minimally qualified based on my review and was not presented for the panels review.**

**The DOORS process had no impact on the decision of Mr. Brookens application. Our office only uses DOORS to receive the resume and essay responses. We do not use the DOORS system to qualify candidates. All applications are manually reviewed and a determination is made regarding the applicants qualification for the position.**



Exhibit F2
Page 3 of 14 Pages



7.  Please provide name(s), race, and EEO activity (if any) of the candidates certified and not certified for the position of Director, Office of Trade and Labor Affairs, advertised under Vacancy Announcement DOL-SES-ILAB-06-21.

> **\* Individuals Certified by the Panel**
>
> **Patrick Coleman**
> **Linda Droker**
> **Gregory Schoepfle**
>
>
> **\* Individuals Not Certified by the Panel**
>
> **Jeffrey Goode**
>
> **\* I am unaware of the EEO activity of any of the above individuals. In regard to the race of the above applicants I have generated a report from the DOORS system. Below outlines the Demographics of the applicants who responded to demographic questions when they applied. Of the 7 applicants who applied only 6 provided responses.**
>
> **Demographics: 1 Hispanic Male, 3 White Males, 1 White Female and 1 African American.**
>
> **Please note that I do not retrieve this information for any purpose during the application review process.**

8.  Please provide any other relevant information that you wish to add.

> **I am always available and responsive to candidates who have questions during the recruitment process. After the October 17 communication was forwarded to Mr. Brookens I was never contacted by him expressing any issues surrounding the qualification determination I had made.**
>
> **There were no issues raised by Mr. Brookens nor were there any requests from him to elevate his application submission to a higher level for additional review.**



Exhibit  F 2
Page  4  of  14  Pages



9. Have you received any assistance in preparing this statement and/or has your statement been reviewed by anyone other than an attorney from the Office of the Solicitor or a private legal representative?  If yes, please provide the name, title, and contact information for any such individual(s).

   **No, I have not received any assistance in preparing this statement.**



Exhibit F2
Page 5 of 14 Pages

Affidavit of: _Daliah Holmes_____

I have reviewed this statement, which consists of **6** __6b__ pages, and hereby solemnly ____ swear ____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_Daliah Holmes_____     _5/29/07_____
(Signature of Affiant)                              (Date)

Signed before/received by me at (Street and City) _200 Constitution Ave, NW Washington DC 20210_

on this ____ day of _May 29th_____, 20 _07_

_Roderick Sanchez_____
(Signature of Investigator/Witness)

Exhibit __F2___
Page __6__ of __14__ Pages

CRC Form 10
(Rev. 3/03)

Page __6__ of __6__ Pages

Initials _DH_

This page used to separate documents.

Exhibit _F2_

Page _7 14_ Pages

**WITNESS AFFIDAVIT**

I, (name) _Daliah Holmes_

am an ✓ employee of ____ applicant to ____ former employee of the U.S. Department of Labor's:

(Agency _OASAM_

(Office) _Office of Executive Resources and Personnel Security_

(Division)_____

(Branch)_____

Located in (city and state) _Washington DC_

In the capacity of (show both your organization title and the classification of your job, if different):

_Human Resources Specialist_

Grade _13_ between (date) _10/19/03_ and (date) _present_

My telephone number during working hours is: _202-693-7704_

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Labor policy to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation into a complaint of discrimination against the Department of Labor. I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. In addition, the Complainant and the appropriate Department of Labor officials involved in the EEO complaint process will receive the entire investigative report. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process (so long as my choice does not result in a conflict of interest). I have ____ have not ✓ chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the EEO complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly ✓ swear or ____ affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and concerns raised by the investigator.

CRC Form 10
(Rev. 3/03)

Exhibit _F2_

Page _8_ of _14_ Pages

Page _1_ of _3_ Pages

Initials _DH_

Affidavit of: _Daliah Holmes_____

In reviewing the applicants who were found qualified below outlines the caliber of experience possessed; which Mr. Benoit lacked.

Of the 7 applicants who applied 4 were GS-15's, 1 was a former SES member, and one was not qualified due to being outside the area of consideration, 1 (Mr. Benoit) who was found to lack significant senior level managerial experience. All applicants who are GS-15 employees have been at that level since 2002 at the latest. At the GS-15 level these applicants have held positions of significant responsibility within their organizations. All of the applicants held Director Positions within their organizations and the scope of the responsibility were of a wide impact.

Mr. Benoit's application reflects that he is a GS-12 and has been such since 1990. At that grade level it is not possible for him to possess the level of experience needed for this position.

CRC Form 10
(Rev. 3/03)

Exhibit _F2_

Page _9_ of _14_ Pages

Page _2_ of _3_ Pages

Initials _DH_

Affidavit of: _Daliah Holmes_

I have reviewed this statement, which consists of _2_ pages, and hereby solemnly _✓_ swear _____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_Daliah Holmes_                                                    _7/16/07_
(Signature of Affiant)                                              (Date)

Signed before/received by me at (Street and City) _200 Constitution Ave. NW W.D.C._

on this _16_ day of _July_ , 20 _07_

_Naomi Barry-Perez for Roderick Faulkner_
(Signature of Investigator/Witness)

CRC Form 10
(Rev. 3/03)

Exhibit _F2_
Page _10_ of _14_ Pages

Page _3_ of _3_ Pages
Initials _DH_

**Holmes, Daliah - OASAM**

| | |
|---|---|
| From: | holmes.daliah@dol.gov |
| | Tuesday, October 17, 2006 8:20 AM |
| | Brookens, Benoit - ILAB |
| | Holmes, Daliah - OASAM |
| **Subject:** | Important information regarding your application |

Dear BENOIT BROOKENS, II:

Your application for vacancy announcement number DOL-SES-ILAB-06-21 Director, Office of Trade and Labor Affairs, ES-0110-99 in Washington DC  has been reviewed.

It has been determined that you do not possess significant senior level managerial experience, and therefore will not be considered further for this position.

We appreciate your interest in Bureau of International Labor Affairs OERPS and hope that you will consider us again in the future.

Sincerely,
Daliah Holmes
U.S. Department of Labor

Exhibit _F3_

Page _1_ of _15_ Pages

# U.S. Department of Labor
# All Applicant Data Report

Announcement Number: DOL-SES-ILAB-06-21

**Position Title:** Director, Office of Trade and Labor Affairs

Name: BENOIT  BROOKENS, II
SSN:
Address1: 460 TAYLOR STREET, NE
Address2: APT. G-44
City: WASHINGTON,
State: DC
Post Code: 20017
Plus4:
Phone: 202/693-4868
Email: brookens-benoit@dol.gov
United States Citizen: Y
Date of Birth: Jan 1, 1900
**Veteran Preference:** NV
**Start of Service:**
**End of Service:**

**Assessment Questions**
What locations do you wish to apply to?
Washington DC

What Grades do you wish to apply to?
99

**All Grades**

**1.** Knowledge of U.S. labor, economic and trade laws and policies and their impact on
U.S. employment
**Answer:** My legal background, (JD Columbia University School of Law and a Master of Law,
(LLM) George Washington University School of Law) and economic assignments as a
financial economist at the Department of State, Assistant Commercial Attaché, U.S.
Embassy, The Netherlands, and ten years in private law practice provide me with
extensive technical and managerial experience in international trade, economics, and
trade laws.

As an economist, my assignments on interagency committees and international trade
delegations as well as my position as Assistant Commercial Attaché U.S. Embassy The
Hague, Netherlands-- also provided me with experience and publication expertise in the

Exhibit F3
Page 2 of 15 Pages

## U.S. Department of Labor
## All Applicant Data Report

**Announcement Number:** DOL-SES-ILAB-06-21
**Position Title:** Director, Office of Trade and Labor Affairs
international trade area. My U.S. embassy position provided first level supervisory
responsibilities for the Dutch professional staff in the Embassy Commercial Section and
gave me second level supervisory duties for the 20 staff members of the Visit US
Information Service in Amsterdam. In my U.S. Embassy position in The Hague,
Netherlands, I  also served as Chairman of the U.S.-Netherlands Chamber of Commerce for
the travel industry, a major European trade association, which included the regional
vice-presidents for the Dutch and American travel industry  American Express, Wagon-Lits
Cook and representatives from the travel agencies, airlines, rail, and bus carriers.

As a current member of the Interagency Generalized System of Preferences (GSP) Products
Subcommittee, I have a global perspective on US international trade policy and its
impact on domestic U.S. employment. My publications on  Diplomatic Protection of Foreign
Economic Interests  and  Labor aspects of the North American Free Trade Agreement (NAFTA)
are indicia of my interest and expertise.

**2.** Ability to identify and resolve successfully complex legal and policy issues related
to trade and labor issues
**Answer:**Resolving Complex Legal and Policy Issues.

As a member of the GSP Subcommittee which includes both a worker rights and products
component and previously having served with the State Department s International
Organizations  Bureau for the United Nations Economic and Social Council (UNESCO), I
have a global perspective on identifying and resolving complex policy issues related to
trade and labor issues for US manufacturer and employees. I am currently involved in
U.S. preparations for trade preference legislation renewal and policy formulation and
interagency discussions on GSP product linkages.  This includes both product and
country graduation issues for which 700 comments have been received from the 13
affected countries and industries.  During my tenure in the U.S. Department of Labor, I
acquired an understanding of the policy debate and U.S. efforts to link ILO labor
standards to trade sanctions n the World Trade Organization (WTO).  My prior work as a
State Department member on the Inter-Agency Expropriation Committee provides me insight
into U.S. investment policy and U.S. strategic economic interests.  My teaching
assignments at the University of Virginia-Falls Church and while assigned to the U.S.
Embassy The Hague, Netherlands provided me with a prospective on U.S. programs and those
of other governments in trade, investment, and finance.  Working with the GSP program
for products this year provided me experience in working with a mixed worker-
rights/products case intertwining worker rights violations and adverse impact
implications for products.  Reflecting my knowledge of the programs and their foreign
policy implications, I have been invited to make presentations to professional
organizations which include topics on  International Trade Sanctions and Worker Rights
Violations  to the D.C. and Philadelphia Bar Associations.  This melding of program
information would be useful in working with upcoming strategic alliances, for
of unions and industry challenging China currency and labor policies in the World Trade

Exhibit $\beta$
Page 3 of 15 Pages

## U.S. Department of Labor
## All Applicant Data Report

**Announcement Number:** DOL-SES-ILAB-06-21
**Position Title:** Director, Office of Trade and Labor Affairs
Organization.

When evaluating the bottom line, I have had the ability to achieve results.  I took a leadership role in negotiating the U.S.-British Virgin Islands and U.S.-Cuban Fishing Agreements.  My creativity contributed to the successful exchange of U.S. and multinational food resources techncial assistance for land locked African nation and their support of the U.S. proposal for deep seabed mining in the Law of the Seas Negotiation.

**3.** Ability and experience overseeing international technical assistance and cooperation programs.
**Answer:** Overseeing Technical Cooperation.

My ability to oversee technical assistance and cooperative programs is reflected in my overseeing of the State Department Labor Attache program at the U.S. Department of State, service an a Commercial Officer at the U.S. Embassy, The Hague, Netherlands--to provide export assistance and guidance for U.S. manufacturers--and in my leadership in the GSP program to extend outreach to countries in the Middle East and Africa. My ability to get the job done in an environment of intergovernmental advocacy is reflected in Interagency support for my Department of Labor position achieving consensus in a recent GSP policy decision.  My agency initially was the only advocate for a position on 100 of 120 product petitions. However, upon conclusion of the review, all agencies, unanimously adopted the position of the Labor Department.

During my assignment to the Office of Oceans and Fisheries, U.S. Department of State, I was able to utilize my expertise in foreign policy formulation to reach agreement in seven months for the U.S. British Virgin Island Reciprocal Fishing Agreement.  Prior to my involvement, the direct discussions, between Washington and London, had been stalled for seven years.

**4.** Executive Core Qualification: Leading Change
**Answer:** Results Driven.

My formal education a Masters degree in Business Administration and work experience in both business and government for more than two decades has provided me with the ability to be results oriented and to watch the bottom line for efficiency and effectiveness. As General Counsel for the African Business and Economics Review (ABER), I had, for example, helped plan and oversee the publishing and distribution contracts for cooperative publishing arrangements in Africa and correspondents in Europe. This was to assure that the legal aspects of the business were properly monitored and effective.

For the first time since 1986, the U.S. initiated a procedure to graduate countries from the GSP program to make the program for beneficial to less industrialized

EXHIBIT _F3_

Page _4_ of _15_ Pages

# U.S. Department of Labor
## All Applicant Data Report

**Announcement Number:** DOL-SES-ILAB-06-21
**Position Title:** Director, Office of Trade and Labor Affairs

countries.  Not only was my ability to lead change and positively focus this long overdue exercise, I was able to help shape the involvement of the leadership of my own agency to meld a comprehensive policy for what is clearly a historic global economic initiative.

**5.** Executive Core Qualification: Leading People
**Answer:** Leading People.

My supervisory positions in the U.S. Embassy, the Hague, service as Director, Finance and Accounting Group of M.B.A. Associates, and leadership role for the international and economic regulatory sections while in private law practice, equipped me with the ability to design and implement organizational missions and strategic visions. My service on the board of directors of credit unions, religious, and civic organizations provide me with oversight and management responsibilities for strategic leadership and planning. My work with employees and supervisors in both the government and private sector has provided me with insight into the needs and objectives for effective equal employment, labor, and personnel management abilities.

**6.** Executive Core Qualification: Results Driven
**Answer:** Results Driven.

My formal education a Masters degree in Business Administration and work experience in both business and government for more than two decades has provided me with the ability to be results oriented and to watch the bottom line for efficiency and effectiveness. In oversight for the US GSP program for the Labor Department, I have to assure U.S. workers and industry that their interests are being protected--no greater that six percent (6%) adverse impact on employment and profits, while shaping the programs operation to meet the U.S. global commitment to assist developing nations in the United Nations Conference on Trade and Development (UNCTAD) and the World Trade Organization (WTO) duty-free, quota-free initiative. In the private sector, as General Counsel for the African Business and Economics Review (ABER), overseeing distribution and publishing contracts for cooperative publishing arrangements in Africa and correspondents in Europe was required. I have a track record of effectiveness, for example, at the U.S. Embassy in The Netherlands, to assure increased business and trade promotion benefits for U.S. firms.

**7.** Executive Core Qualification: Business Acumen
**Answer:** Business Acumen.

My business acumen is reflected in my over ten (10) years in the private sector, heading the finance and accounting section of a New York City consulting business, and serving as a director of two credit unions, and on the board of civic and religious groups, provide me with business skills and abilities to enhance organizational

Exhibit F3

Page 5 of 15 Pages

## U.S. Department of Labor
### All Applicant Data Report

**Announcement Number:** DOL-SES-ILAB-06-21

**Position Title:** Director, Office of Trade and Labor Affairs

strategic planning and operations. Managing business private organizations requires financial management skills and talent to oversee a profitable economic entity. My teaching and practical skills in business finance and accounting contribute to my ability to be both an effective manager and an efficient business leader.

**8.** Executive Core Qualification: Building Coalitions/Communication

**Answer:**Building Coalitions/Communications.

My ability to serve as an advocate and negotiator with individuals and organizations, in the international context, is reflected in my successful negotiation of a fishing agreement for the U.S. and British Virgin Islands. Working in the U.S. Embassy in Holland I build industry coalitions to establish export priorities reflecting the needs of the Department of Commerce and U.S. industry while maintaining the diplomatic objectives of the U.S. Embassy in The Netherlands for good relations with the host government while maintaining market-share expanding export opportunities for U.S. business and workers. My service on interagency committees all of my professional career has provided me expertise and subject matter experience in building coalitions to achieve objectives from different agency perspectives, reflecting and respecting their different constituencies and political pressures, while not losing sight that the ultimate beneficiary, for whom we all work, is the American people.

**9.** Have you completed at least 21 semester hours in economics AND 3 semester hours in statistics, accounting, or calculus at a college or university?

**Answer:**

1. Yes

**10.** Where did you learn about this Department of Labor job opportunity? (check all that apply)

**Answer:**

3. DOL Employee (former or current)

Exhibit _F3_

Page _6_ of _15_ Pages

<u>Certification of Course</u>

I certify that a transcript of my courses of the required 21 semester hours in economics, and three semester hours in statistics, accounting, or calculus at a college or university is on file in my offical personnel folder.

Benoit Brookens
September 22, 2006

Exhibit __F3__

Page __7__ of __15__ Pages



**Join The Team**
**U.S. Department of Labor**

**Department:** Department Of Labor
**Agency:** Bureau of International Labor Affairs
**Sub Agency:** U.S. Department of Labor

**Job Announcement Number:**
**DOL-SES-ILAB-06-21**

Overview                                              

# Director, Office of Trade and Labor Affairs

**Salary Range:** 109,808.00 - 165,200.00 USD per year

**Open Period:** Wednesday, September 06, 2006
to Tuesday, September 26, 2006

**Series & Grade:** ES-0110-99/99

**Position Information:** Full Time Permanent

**Promotion Potential:** 99

**Duty Locations:** 1 vacancy - Washington DC

**Who May Be Considered:**
Open to all Qualified Federal Employees

IF NECESSARY, PERMANENT CHANGE OF DUTY STATION (PCS) WILL BE PAID BY
DEPARTMENT OF LABOR, BUREAU OF INTERNATIONAL LABOR AFFAIRS FOR THE
SELECTED CANDIDATE.

**Job Summary:**
**Join the team!** Begin a challenging career
with the U.S. Department of Labor (DOL), and you
will help shape the workforce of tomorrow.  DOL
offers rewarding opportunities to contribute to
a noble mission; to serve and protect American
workers, prepare them for new and better jobs,
and to ensure the safety and fairness of
American workplaces.

U. S. Department of Labor
Bureau of International Labor Affairs
Washington, DC

**Key Requirements:**
- Subject to a full field security investigation
- Must complete 1 year SES probationary period if not previously completed.
- Subject to Federal financial disclosure requirements

Exhibit _F4_

Page _1_ of _7_ Pages

### Duties

**Major Duties:**

Incumbent of this position serves as Director of the Office of Trade and Labor Affairs (OTLA) in the Bureau of International Labor Affairs (ILAB) with primary responsibility for providing advice on international economic policy, conducting research, negotiating and administrating the labor provisions of free trade agreements, and overseeing technical cooperation activities. The incumbent serves as an expert and advisor on trade and international economic policy and foreign economic research matters arising under the trade agreements program and related bilateral, regional, or multilateral trade issues; administers the program of the Labor Advisory Committee for Trade Policy and Trade Negotiations; and directs and supervises the staff of OTLA. Incumbent is responsible for initiating, developing, and carrying out polices and programs designed to secure the most effective participation of the Department in economic programs of certain international organizations, particularly the WTO, the ILO, the OECD, and other international organizations concerned with international economic policy matters. Incumbent participates in conferences and meetings with the Secretary, Deputy Secretary, Deputy Undersecretary, Assistant Secretaries, and other top officials of the Department, with officials of other Federal agencies, particularly the Office of the United States Trade Representative (USTR) and the State Department, with officials of foreign countries, and with representatives of labor organizations and industry regarding international economic matters.

As Director, incumbent directs and coordinates the activities of the three program groups within the Office of Trade and Labor Affairs: the Division of Trade Policy and Negotiations, which is engaged in the development of Departmental positions on international trade and investment policy matters and in assuring the adequate reflection of Department interests in U.S. participation in international trade and investment negotiations and other fora; the Division of Economic and Labor Research, which conducts analytical research on the U.S. employment impact and income effects of international trade and investment flows and policy initiatives and labor rights reports for free trade agreements; and Division of Trade Agreement Administration and Technical Cooperation, which serves as the point of contact for submissions under labor provisions contained in trade agreements and develops and implements cooperative activities programs under those agreements.

The executive furthers the President's Management Agenda (PMA) to improve management and performance through the execution of Initiatives contained in the PMA.

For detailed information on the PMA and these Initiatives, click on the following link:
http://www.whitehouse.gov/omb/budget/fy2002/mgmt.pdf

### Qualifications and Evaluation

Exhibit _F4_

Page _2_ of _1_ Pages

**Qualifications:**

All applicants MUST separately address the mandatory technical qualifications (MTQs) and Executive Core Qualifications (ECQs). Applicants will be required to address the MTQs and ECQs when applying on line.

Responses to ECQs must not exceed 10 pages.  For additional guidance, applicants may visit the Office of Personnel Management's Guide to Senior Executive Qualifications located at: http://www.opm.gov/ses/handbook.html.  Applicants are encouraged to follow the Challenge, Context, Action, and Result model outlined in the guide.

Current/Former Career SES or SES Candidate Development graduates who have been certified by OPM must address the MTQs, but need not address the ECQs. In order to successfully complete the online application process you must input the term, "noncompetitive eligible" in the text boxes for each of the ECQs. You must submit a Standard Form 50 that documents your SES Career appointment or a copy of your OPM Candidate Development certification.

MANDATORY TECHNICAL QUALIFICATIONS (MTQ's):

1.  Knowledge of U.S. labor, economic and trade laws and policies and their impact on U.S. employment.

2.  Ability to identify and resolve successfully complex legal and policy issues related to trade and labor issues.

3.  Ability and experience overseeing international technical assistance and cooperation programs.

MANDATORY EXECUTIVE CORE QUALIFICATIONS (ECQs):

1. Leading Change:  This factor involves the ability to ensure that key national and organizational goals, priorities and values are considered in making program decisions and exercising leadership to implement and to ensure that the organization's mission and strategic vision are reflected in the management of its people.

2. Leading People: This factor involves the ability to design human resource strategies to meet the organization's mission, strategic vision, and goals to achieve maximum potential of all employees in an equitable manner.

3. Results Driven: This factor involves the ability to establish program and/or policy goals and the structure and processes necessary to implement the organization's mission and strategic vision.  It includes ensuring that programs and policies are being implemented and adjusted as necessary, that appropriate results are achieved, and that a process for continually examining the quality of program activities is in place.

Exhibit ___F4___

Page _3_ of _7_ Pages

4. **Business Acumen:** This factor involves the ability to acquire and administer financial, material, and information resources as well as to accomplish the organization's mission. This includes managing the budgetary process; overseeing procurement and contracting procedures and processes; integrating and coordinating logistical operations; overseeing the allocation of financial resources; establishing and assuring use of internal financial systems controls; and ensuring the development and utilization of management information systems and other technological resources to meet the organization's needs.

5. **Building Coalitions/Communication:** This factor involves the ability to explain, advocate and negotiate with individuals and groups internally and externally as well as to develop an expansive professional network with other organizations and organizational units.

The Department of Labor does not recognize academic degrees from schools that are not accredited by an accrediting institution recognized by the Department of Education. Any applicant falsely claiming an academic degree from an accredited school will be subject to actions ranging from disqualification from federal employment to removal from federal service.

Candidates must possess a broad experience that involves novel and complex issues related to labor, economic, and trade issues. This experience must have been at a major management level (normally equivalent to the GS-15 level in the Federal service).

In addition, candidates must possess a Bachelor's degree in economics that included at least 21 semester hours in economics and 3 semester hours in statistics, accounting, or calculus. Appropriate professional experience, combined with education that included the specified course work, may be substituted for the Bachelor's degree.

**How You Will Be Evaluated:**
Candidates will be evaluated based upon their qualifications. In addition applicants will be evaluated based upon their responses to any Mandatory Technical Qualifications and the Executive Core Qualifications.

To preview questions please click here.

| Benefits and Other Information |
| --- |

**Benefits:**

The Department of Labor offers a variety of benefits and workplace enhancements.

For details click: BENEFITS

Exhibit __F4__

Page __4__ of __1__ Pages

Members of the Senior Executive Service accrue eight (8) hours of annual leave and four (4)hours of sick leave per pay period.

**Other Information:**

How to Apply

**How To Apply:**

Paper applications submitted without prior approval from the agency point of contact will be handled as incomplete applications and will not be considered.

If you require assistance, contact the agency point of contact identified within the vacancy announcement.

*STEP ONE - (Online Resume – USAJOBS)*

You must create a user account and at least one Federal resume at USAJOBS. Information you provide in USAJOBS is general information completed by all applicants. The information you provide and your Federal resume will become part of your application and will automatically be transferred to the DOORS system when you apply on-line.  You may edit your resume up until midnight EST of the announcement close date.

*STEP TWO - (Vacancy Specific Questions – DOORS)*

In DOORS, you will answer vacancy specific questions necessary to evaluate your qualifications for the specific job to which you are applying. When completed, the information you provided at USAJOBS and the answers to the DOORS questions will become your application. You may edit your answers up until midnight EST of the announcement close date.  After the vacancy closes the HR office will evaluate your application package.
*STEP THREE - (Supporting Documentation)*

All required supplemental information, as specified under the required documents section of this vacancy announcement must be received by midnight Eastern Standard Time (EST) on the closing date of the vacancy announcement. Documentation forwarded to the DOORS Help Desk will not meet the submission requirements for this position.

Exhibit ___F4___

Page ___5___ of ___7___ Pages

Your application will be considered incomplete
and YOU WILL BE FOUND INELIGIBLE, if you fail to
submit the required documentation, as specified
under the required documents section by midnight
Eastern Standard Time (EST) on the closing date
of the vacancy announcement.

DOORS is compatible with the following Internet
Web Browsers: Netscape; IE versions 5.x and
above; and Safari 1.0 and above on Mac.

## Required Documents:
DOCUMENTS SHOULD BE FAXED TO 202-693-7705 Attn: Daliah Holmes

_ SF - 50 Documentation of career SES appointment (if applicable)
_ Certificate of completion of OPM certified SES candidate
program. (if applicable)
_ Copy of most recent performance appraisal (optional)
- Copy of SF- 50 documenting federal status (mandatory)
- documentation of required course work (mandatory)

## Contact Information:
Daliah Holmes
Phone: 202-693-7704
Fax: 202-693-7705
TDD: 202-693-7758
Email: holmes-daliah@dol.gov

Or write:
U.S. Department of Labor
200 Constitution Ave., NW
C-5508
Washington, DC 20210
Fax: 202-693-7705

## What To Expect Next:
Applicants who are current or former career SES or have completed an
OPM approved SES candidate development program will be referred to
the selecting official noncompetitively. All other applicants will
be evaluated by an Agency rating panel, and the most highly
qualified candidates will be referred to selecting official.

### EEO Policy Statement

The United States Government does not discriminate in employment on the basis
of race, color, religion, sex, national origin, political affiliation, sexual orientation,
marital status, disability, age, membership in an employee organization, or other
non-merit factor.

Exhibit _F 4_

Page _6_ of _7_ Pages

## Reasonable Accommodation Policy Statement

Federal agencies must provide reasonable accommodation to applicants with disabilities where appropriate. Applicants requiring reasonable accommodation for any part of the application and hiring process should contact the hiring agency directly. Determinations on requests for reasonable accommodation will be made on a case-by-case basis.





**Send Mail to:**
U.S. Department of Labor
200 Constitution Ave., NW
C-5508
Washington, DC 20210
Fax: 202-693-7705

**(?) Questions?**

**For questions about this job:**
Daliah Holmes
Phone: 202-693-7704
Fax: 202-693-7705
TDD: 202-693-7758
Email: holmes-daliah@dol.gov

**USAJOBS Control Number:** 733066

PRINT

Exhibit  F4

Page  7  of  7  Pages

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENOIT BROOKENS, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ELAINE L. CHAO, )<br>Secretary, Department of Labor )<br>)<br>Defendant. )<br>) | Civil Action No. 08-0086 (ESH) |

## **FINAL JUDGMENT**

UPON CONSIDERATION of Defendant's motion to dismiss, or in the alternative, for

summary judgment, any opposition thereto, and the entire record herein, it is hereby

ORDERED that the motion is GRANTED, and it is further

ORDERED that this case is dismissed for the reasons set forth in Defendant's supporting

memorandum.

So ordered this _____ day of _____ 2008.

This is a final and appealable order.

_____
ELLEN S. HUVELLE
United States District Judge