UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ ) | |
| BENOIT BROOKENS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. 08-0086 (ESH) |
| ) | |
| ELAINE L. CHAO, ) | |
| Secretary, Department of Labor ) | |
| ) | |
| Defendant. ) | |
| _____) | |

**DEFENDANT'S MOTION TO DISMISS AMENDED COMPLAINT
OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Defendant Elaine L. Chao, Secretary, United States Department of Labor ("DOL"),

respectfully moves to dismiss the Amended Complaint in its entirety, or in the alternative, for

summary judgment on certain claims, in this case involving allegations of employment

discrimination.  First, Plaintiff was untimely in filing one of his claims.  Second, Plaintiff's

Amended Complaint fails to provide sufficient factual basis to support his claims of employment

discrimination.  Third, any claims based on 42 U.S.C. § 1981 fail to state a claim against a

federal agency, such as DOL.  Finally, his employment claims fail because the undisputed facts

demonstrate that Plaintiff was ineligible for the positions he sought.  For the reasons set forth in

the accompanying memorandum, DOL asks this Court to dismiss the Plaintiff's Amended

Complaint or in the alternative, grant Defendant's motion for summary judgment.

Attached hereto are: a supporting memorandum, a statement of material fact, supporting exhibits, and a proposed order.

July 25, 2008                              Respectfully submitted,

                                           _____
                                           JEFFREY A. TAYLOR, D.C. Bar # 498610
                                           United States Attorney

                                             /s/
                                           _____
                                           RUDOLPH CONTRERAS, D.C. Bar # 434122
                                           Assistant United States Attorney

                                             /s/
                                           _____
                                           ALAN BURCH, D.C. Bar # 470655
                                           Assistant United States Attorney
                                           555 4th St., N.W.
                                           Washington, D.C. 20530
                                           (202) 514-7204
                                           alan.burch@usdoj.gov


OF COUNSEL:
Rolando N. Valdez
Office of the Solicitor
U.S. Department of Labor

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
BENOIT BROOKENS,                                    )
                                                    )
            Plaintiff,                              )
                                                    )
        v.                                          )        Civil Action No. 08-0086 (ESH)
                                                    )
ELAINE L. CHAO,                                     )
Secretary, Department of Labor                      )
                                                    )
            Defendant.                              )
_____)

**DEFENDANT'S MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
AMENDED COMPLAINT OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

        Defendant Elaine L. Chao, Secretary of the United States Department of Labor ("DOL"),

by her undersigned counsel, provides this memorandum in support of DOL's motion to dismiss

the case in its entirety, or in the alternative, for summary judgment as to certain claims.  This

litigation arises out of Plaintiff Benoit Brookens' employment with DOL, in its Bureau of

International Labor Affairs ("ILAB"), as a GS-12 International Economist.  On July 8, 2008,

Plaintiff filed a First Amended Complaint for Damages ("Amd. Compl."), alleging

discrimination based on three instances of non-selection for GS-14 and higher positions,

retaliation, and violation of 42 U.S.C. § 1981.

        Dismissal is appropriate for several reasons.  First, one of the non-selection cases,

including the accompanying retaliation claim is untimely because Plaintiff filed this civil action

more than 90 days after he received a decision on his appeal from the EEOC Office of Federal

Operations (EEOC).  Second, DOL's motion to dismiss should also be granted because all three

of his non-selection claims and the related retaliation claims fail to set forth sufficient factual

bases to support any inferences by the Court that DOL's actions were taken on the basis of Plaintiff's race, age, or prior EEO activity or that any were materially adverse to Plaintiff.

Finally, and in the alternative, summary judgment is appropriate because it is not open to dispute that Plaintiff, as a GS-12 employee, was simply not eligible for the GS-15 temporary promotion or the GS-14/15 Deputy Director, for which he applied and was not considered. Moreover, the facts of his GS-12 status and resulting ineligibility are sufficiently well established from a prior administrative proceeding to trigger issue preclusion on this point, further confirming the appropriateness of summary judgment. Lastly, concerning his application to a Senior Executive Service ("SES") position, it is undisputed that Plaintiff, who has been a GS-12 since 1990, did not possess the managerial experience necessary to be considered qualified to apply for the SES position at issue. Because the record evidence plainly establishes that Plaintiff was neither eligible for GS-14/15 promotions nor minimally qualified to be considered for SES positions, there are no genuine issues of material facts. Therefore, Defendant is entitled to summary judgment as a matter of law.

## BACKGROUND

Plaintiff brings this civil action pursuant to Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act of 1967. Amd. Complaint ¶ 1. Plaintiff first filed this action on January 16, 2008. He amended his complaint after Defendant filed a motion to dismiss or in the alternative for summary judgment. *See* docket nos. [5] and [10].

Plaintiff has been employed as an International Economist in DOL's ILAB division at grade GS-12 since 1990, and he identifies himself as a "black African-American male . . . over forty (40) years of age." *Id.* ¶ 7. The Amended Complaint asserts that Plaintiff filed

administrative complaints of discrimination [and retaliation] for each of the three non-selections at issue. *Id.* ¶¶ 22, 27, and 33. While the Amended Complaint identifies three different personnel actions for which Plaintiff was neither considered nor selected, Plaintiff fails to explain how these actions adversely affected him. To facilitate the analysis of these claims, Defendant's memorandum refers to them as identified below:

**Personnel Action No. 1** – **Temporary Promotion**

In paragraphs 18 through 22, the Amended Complaint describes the Agency's decision not to consider Plaintiff nor select him for a GS-15 temporary promotion as the Acting Director of the Trade Policy Division in ILAB, ("temporary promotion") after he expressed interest in this position in June 2005.[1] Two months later, in August 2005, Plaintiff filed an administrative complaint of discrimination because he was not considered or selected for this managerial temporary promotion opportunity. Amd. Compl. ¶ 22. Following an investigation by DOL's Civil Rights Center ("CRC"), the Plaintiff requested a hearing before an EEOC AJ. At the conclusion of the discovery process, the AJ held an administrative hearing. The issue in the hearing was whether Plaintiff, a GS-12 International Economist, was discriminated against based on his race, age, or prior EEO activity when he was neither considered nor selected for the GS-15 temporary promotion. Ex. A, at 2. The Agency argued that Plaintiff could not properly be

---

[1] Plaintiff's characterization of this employment opportunity as a "detail" is erroneous and such a description may also be confusing to the Court. The fundamental difference between a "detail" and a "temporary promotion" is that a temporary promotion involves an increase in pay for the additional duties assumed by the selected individual, whereas a detail does not provide for any additional pay. *See* Ex. A at 13-14 (AJ's Bench Decision). Another important distinction between a temporary promotion and a detail is that a temporary promotion has a time-in-grade eligibility requirement, meaning that an eligible employee must possess 52 weeks of experience at the next lower grade level. *Id.* at 14. On the other hand, because details do not offer any additional pay, there are no time-in-grade eligibility requirements for details. *Id.*

considered for the temporary promotion because he did not possess the one-year time-in-grade at

the next lower grade-level, GS-14.  *Id.* at 7.  Following a hearing, the AJ issued a bench decision

in favor of the Agency, finding no discrimination.  *See* Ex. A at 17.  In his decision, the AJ

specifically found that Plaintiff was not eligible for the GS-15 temporary promotion because he

did not meet the one-year time-in-grade eligibility requirement.   Plaintiff filed a timely appeal

with the EEOC OFO.  On July 17, 2007, the OFO affirmed the AJ's findings.  *See Brookens v.*

*Chao*, EEOC Doc. 0120071829, 2007 WL 2161734 (July 17, 2007).  Plaintiff's request for

reconsideration was denied on October 9, 2007, and the EEOC notified Plaintiff of his right to

file a civil action within 90 days of receipt of the EEOC's decision.  *See Brookens v. Chao*,

EEOC Appeal No. 0520070890, 2007 WL 3051339 (Oct. 9, 2007), attached hereto as Ex. B.  As

noted above, he filed his original complaint in this action on January 16, 2008.

**Personnel Action No. 2 – SES Position**

        In paragraphs 23-28, the Amended Complaint states that Plaintiff submitted an

application in response to the vacancy announcement that DOL posted for the Director, Office of

Trade and Labor Affairs in ILAB (SES Position), which was advertised under vacancy

announcement DOL-SES-06-21 in September 2006.  Amd. Compl. ¶ 24.  Plaintiff received a

response from a Human Resources Specialist indicating that Plaintiff would not be considered

for the SES Position because he lacked "significant senior level managerial experience."  *Id.*

¶ 26.

        On January 5, 2007, Plaintiff filed a formal complaint of discrimination with the CRC

alleging race and reprisal discrimination.  *Id.* ¶ 27.  The parties litigated these issues in EEOC

Case No. 570-2007-00778X.  DOL filed a motion to dismiss the administrative case because

4

Plaintiff elected, through filing the instant case, to pursue civil action relief on these discrimination claims and, on March 14, 2008, the AJ dismissed this administrative complaint with prejudice because Plaintiff sought relief in this civil action. *See* Ex. C.

**Personnel Action No. 3** – **Deputy Director**

In paragraphs 29-34, the Amended Complaint describes Plaintiff's non-selection for a Deputy Director position in ILAB's Office of International Relations (Deputy Director). DOL posted this vacancy announcement in October 2006 and Plaintiff applied. Amd. Compl. ¶¶ 30-31. On March 1, 2007, Plaintiff, who applied at both the GS-14 and GS-15 grade levels was notified that he was not certified for the Deputy Director position at either grade level because he lacked the time-in-grade requirements. *Id.* at ¶ 32; *see also* Ex. D, (Witness Questionnaire of Ericka Witt in EEO Complaint 07-11-051, Tab F-2, at 3, 5).

Plaintiff filed a formal complaint of discrimination with CRC. *Id.* ¶ 33. Following CRC's investigation, Plaintiff requested a hearing on this issue in EEOC Case No. 570-2008-00278X. This EEOC case was assigned to the same AJ who was also considering Plaintiff's EEO case described in Personnel Action No. 2, *supra*. In March 2008, the Agency moved to dismiss the Deputy Director complaint because Plaintiff had already brought this civil action in District Court. *See* Ex. C. On March 14, 2008, the AJ dismissed this administrative complaint with prejudice because Plaintiff sought relief in this civil action. *Id.*

<u>**LEGAL STANDARDS**</u>

I.    **Motion to Dismiss.**

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Rule 12(b)(6), the Court will dismiss a claim if plaintiff's complaint fails to plead

"enough facts to state a claim for relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955, 1974 (2007) (clarifying the standard from *Conley v. Gibson*, 355 U.S. 41, 47 (1957)); *see also In re Sealed Case*, 494 F.3d 139, 145 (D.C. Cir. 2007) (citing *Twombly*). Hence, the focus is on the language in the complaint, and whether that language sets forth sufficient factual allegations to support plaintiff's claims for relief.

The court must construe the factual allegations in the complaint in the light most favorable to Plaintiff and must grant Plaintiff the benefit of all inferences that can be derived from the facts as they are alleged in the complaint. *Barr v. Clinton*, 370 F.3d 1196, 1199 (D.C. Cir. 2004) (citing *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)). However, the Court need not accept any inferences or conclusory allegations that are unsupported by the facts pleaded in the complaint. *Kowal*, 16 F.3d at 1276. Moreover, the Court need not "accept legal conclusions cast in the form of factual allegations." *Id.* Even under a liberal construction, therefore, it does not suffice for a complaint to rely on conclusory allegations or to raise only a "suspicion" of wrongdoing. *Twombly*, 127 S. Ct. at 1965. The complaint must give notice of the factual basis for the relief sought.

As a general matter, the Court is not to consider matters outside the pleading, per Rule 12(b), without converting defendant's motion to a motion for summary judgment. In interpreting the scope of this limitation, however, the D.C. Circuit has instructed that the Court may also consider "any documents either attached to or incorporated in the complaint and matters of which we may take judicial notice." *EEOC v. St. Francis Xavier Parochial School*, 117 F.3d 621, 624 (D.C. Cir. 1997). For example, the D.C. Circuit recently instructed that court papers filed elsewhere by the plaintiff may be relied upon by the Court in deciding a motion to dismiss. *See*

6

*Jankovic v. Internat'l Crisis Group*, 494 F.3d 1080, 1088 (D.C. Cir. 2007) (citing *Marshall County Health Care Auth. v. Shalala*, 988 F.2d 1221, 1222-23 (D.C. Cir. 1993)); *accord Covad Commun. Co. v. Bell Atlantic Corp.*, 407 F.3d 1220, 1222 (D.C. Cir. 2005) (judicial notice of other court decisions and party's failure to respond to argument regarding them). Similarly, the D.C. Circuit approved judicial notice of public records on file at a government agency in *Kaempe v. Myers*, 367 F.3d 958, 965 (D.C. Cir. 2004) (patent assignment records on file with the Patent Trademark Office).

At the same time, factual allegations raised in a plaintiff's subsequent filings such as briefs or memoranda of law may not be considered by the Court in deciding a Rule 12(b)(6) motion, particularly when the facts they contain contradict those alleged in the complaint. *Henthorn v. Dep't of Navy*, 29 F.3d 682, 688 (D.C. Cir.1994); *McManus v. District of Columbia*, 530 F. Supp. 2d 46, 64 (D.D.C. Dec. 31, 2007).

These standards apply equally in employment cases. *See, e.g., Kassner v. Second Ave. Delicatessen, Inc.*, 496 F.3d 229, 240 (2d Cir. 2007); *EEOC v. Concentra Health Servs., Inc.*, 496 F.3d 773 (7th Cir. 2007); *Ofori-Tenkorang v. American Internat'l Group, Inc.*, 460 F.3d 296, 307 (2d Cir. 2006). Although plaintiff need not specifically plead the facts supporting a *prima facie* case, *see Swierkiewicz v. Sorema, N.A.*, 534 U.S. 506 (2002), the Court is to rely on the factual allegations in the complaint as pleaded and, along with reasonable inferences therefrom, draw appropriate legal conclusions from those facts. Therefore, it does not appear that simply asserting discrimination in a pleading, per *Sparrow v. United Air Lines, Inc.*, 216 F.3d 1111, 1113 (D.C. Cir. 2000), suffices to survive a motion to dismiss a complaint of employment discrimination. *See Kassem v. Washington Hosp. Ctr.*, 513 F.3d 251, 253-54 (D.C. Cir. 2008)

7

(citing *Sparrow* only for standard of appellate review and citing *Twombly* for standard on motion to dismiss).

## II.    Motion for Summary Judgment.

Summary judgment is appropriate when the record shows that no genuine issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Tao v. Freeh*, 27 F.3d 635, 638 (D.C. Cir. 1994). In determining whether a genuine issue of material fact exists, the trier of fact must view all facts, and reasonable inferences drawn therefrom, in the light most favorable to the non-moving party. *Matsushita*, 475 U.S. at 587. The mere existence of a factual dispute, however, will not defeat summary judgment. The non-moving party must show that the dispute is genuine and material to the case. That is, the factual dispute must be capable of affecting the substantive outcome of the case and supported by sufficiently admissible evidence that a reasonable trier of fact could find for the non-moving party. *Anderson*, 477 U.S. at 247-48; *Laningham v. U.S. Navy*, 813 F.2d 1236, 1242-43 (D.C. Cir. 1987). If the evidence favoring the non-moving party is "merely colorable, or is not significantly probative, summary judgment may be granted." *Id*. (citing *Anderson*, 477 U.S. at 249-50). "[A] complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial[,] [and] [t]he moving party is 'entitled to judgment as a matter of law.'" *Celotex Corp.*, 477 U.S. at 323 (citations omitted).

Similarly, mere conclusory allegations are not enough to survive a motion for summary judgment. *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993); *Thrash v. Library of Congress*,

2006 U.S. Dist. LEXIS 9988 at *20 (D.D.C. Feb. 24, 2006); *Rowland v. Riley*, 5 F. Supp. 2d 1,3

(D.D.C. 1998); *Benn v. Unisys Corp.*, 176 F.R.D. 2 (D.D.C. 1997). Likewise, an affidavit which

merely recites conclusory allegations will not defeat summary judgment. *See Lujan v. National*

*Wildlife Federation*, 497 U.S. 871, 888-89 (1990) ("The object of [Rule 56] is not to replace

conclusory allegations of the complaint or answer with conclusory allegations of an affidavit").

As the Supreme Court has instructed: "the plain language of Rule 56(c) mandates the entry of

summary judgment . . . against a party who fails to make a showing sufficient to establish the

existence of an element essential to the party's case, and on which that party will bear the burden

of proof at trial." *Celotex*, 477 U.S. at 322.

## III.   Substantive Standards for Employment Discrimination Claims.

Claims alleging race and sex discrimination are analyzed pursuant to the familiar burden-

shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). First, a

plaintiff has the burden of establishing a *prima facie* case of discrimination by a preponderance

of the evidence. *Id*. at 802; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 252-53 (1981).

In order to make out a *prima facie* case of discrimination a plaintiff must show that he:

> (i) belongs to a [protected class]; (ii) that he applied and was qualified for a job for which
> the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected,
> and (iv) that after his rejection, the position remained open and the employer continued to
> seek applicant's from persons of [the plaintiff's] qualifications.

*McDonnell Douglas*, 411 U.S. at 802. This Circuit generally follows this same four-part test for

the *prima facie* case required by *McDonnell Douglas*. *See, e.g., Teneyck v. Omni Shoreham*

*Hotel*, 365 F.3d 1139, 1149-50 (D.C. Cir. 2004).

In situations where the *McDonnell Douglas* formulation for the *prima facie* test does not

fit the factual context, the D.C. Circuit uses a more generalized formulation from *Stella v. Mineta*, 284 F.3d 135 (D.C. Cir. 2002), which requires plaintiff to show that "(1) she is a member of a protected class; (2) she suffered an adverse employment action; and (3) the unfavorable action gives rise to an inference of discrimination." *Id.* at 145 (quoting *Brown v. Brody*, 199 F.3d 446, 452 (D.C. Cir. 1999)).

If the plaintiff establishes a *prima facie* case, the burden then shifts to the defendant employer to articulate a legitimate, non-discriminatory reason for its actions. *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. at 802 (1973). The employer's burden, however, is merely one of production. *Burdine*, 450 U.S. at 254-55. The employer "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Id*. Once the employer has articulated a legitimate, non-discriminatory reason for its actions, the *prima facie* inference of discrimination drops from the case. *St. Mary's Honor Center v. Hicks*, 509 U.S. at 507, 510-11 (1993); *Burdine*, 450 U.S. at 255; *Brady v. Sargeant at Arms*, 520 F.3d 490, 493-94 (D.C. Cir. 2008).

The burden then shifts back to the plaintiff to show that the employer's proffered reason was not the true reason for its actions and was only a pretext for unlawful discrimination. *Burdine*, 450 U.S. at 253; *McDonnell Douglas*, 411 U.S. at 804; *see also St. Mary's Honor Center*, 509 U.S. at 507-08; *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1289 (D.C. Cir. 1998). The burden of persuasion that discrimination motivated the employer's actions remains at all times with the plaintiff. *St. Mary's Honor Center*, 509 U.S. at 507; *Burdine*, 450 U.S. at 253; *Aka*, 156 F.3d at 1289. Moreover, the plaintiff must present more than a "scintilla of evidence"

10

but must come forward with specific facts that would enable a reasonable jury to find in its favor.

*Anderson*, 477 U.S. at 252; *Celotex Corp.*, 477 U.S. at 324.  To prove discrimination on the basis

of race and/or sex, the plaintiff must demonstrate that the legitimate, non-discriminatory reasons

articulated by the defendant are pretextual.

## ARGUMENT

**I.    Plaintiff Missed the Statute of Limitations For Personnel Action No. 1 -- Temporary Promotion.**

The Court should dismiss Personnel Action No. 1 because Plaintiff failed to file his

appeal from the EEOC OFO decision within the 90-day statutory time limit required to initiate a

civil action.  Title VII sets forth the time limits for the filing of a civil action in Federal Court:

> within 90 days of receipt of notice of final action taken by a department, agency, or by the EEOC on appeal, an employee or applicant for employment, if aggrieved by the final disposition in his complaint . . . may file a civil action.

42 U.S.C. § 2000e-16(c).

Concerning Personnel Action No. 1, Plaintiff's request for reconsideration was denied by

the EEOC on October 9, 2007.  *See Brookens v. Chao*, EEOC 0520070890, 2007 WL 3051339

(Oct. 9, 2007), Ex. B.  While the Amended Complaint does not state when Plaintiff received the

OFO's October 9, 2007 denial of his request for reconsideration, the Certificate of Mailing

attached to the OFO decision includes this statement:  "For timeliness purposes, the Commission

will presume that this decision was received within five (5) calendar days after it was mailed."

*Id.* at 4.  The EEOC's decision also clearly informed Plaintiff, in bold print, of his right to file a

civil action within 90 days of receipt of the EEOC's decision.  *Id.* at 1.  Thus, suit was required to

be filed 95 days after October 9, 2007, which means on or before January 14, 2008.  Plaintiff

failed to meet his timeliness requirements because he did not file his civil action until January 16, 2008. Because Plaintiff failed to file a district court complaint about the temporary promotion within 95 days from the date the EEOC was mailed, his civil action complaint concerning the temporary promotion is untimely.

The Supreme Court has held that while late-filed claims are not jurisdictionally barred, equitable tolling is allowed only in narrowly tailored circumstances. *Irwin v. Dep't. of Veterans' Affairs*, 498 U.S. 89, 95-96 (1990); *see also Janczewski v. Secretary, Smithsonian Institution*, 767 F. Supp. 1, 13 (D.D.C. 1991) (finding that equitable power to toll statute of limitations shall be exercised only in extraordinary and carefully circumscribed instances). In *Irwin*, the Court held that:

> federal courts have typically extended equitable relief only sparingly. We have generally been much less forgiving in receiving late filings where the claimant failed to exercise due diligence in preserving his legal rights. Because the time limits imposed by Congress in a suit against the Government involve a waiver of sovereign immunity, it is evident that no more favorable tolling doctrine may be employed against the Government than is employed in suits between private litigants.

*Id.* at 96 (footnotes omitted). As the Supreme Court observed in *Baldwin Co. Welcome Ctr. v. Brown*, 466 U.S. 147, 152 (1984), "procedural requirements established by Congress for gaining access to the federal courts are not to be disregarded out of a vague sympathy for particular litigants" and "[i]n the long run, experience teaches that strict adherence to the procedural requirements specified by the legislature is the best guarantee of evenhanded administration of the law." *Baldwin*, 466 U.S. at 152 (citing *Mohasco Corp. v. Silver*, 447 U.S. 807, 826 (1980)).

The fact that Plaintiff failed to comply with the statute of limitations by two days does not excuse noncompliance. Numerous decisions of this court have dismissed cases where a similarly

small number of days was involved.  *See, e.g., DePippo v. Chertoff*, 453 F. Supp. 2d 30 (D.D.C. 2006) (Urbina, J.) (dismissing Title VII case filed one day too late); *Jackson v. Snow*, No. 05-1266 (CKK), 2006 WL 212136 (D.D.C. Jan. 27, 2006) (Title VII, one day too late); *Simpkins v. WMATA*, 2 F. Supp. 2d 52 (D.D.C. 1998) (one day late).  Although the 90-day filing period is subject to equitable tolling in appropriate cases, Plaintiff has not provided any explanation at all for his late filing or provided any explanation why equitable tolling should apply.  Accordingly, the Court has no basis for finding that the 90-day limit should be equitably tolled and this untimely claim should be dismissed with prejudice.

**II.    All Three Personnel Actions Fail to State a Claim of Employment Discrimination.**

The allegations in the Amended Complaint, construed in the light most favorable to Plaintiff, fail to allege discrimination on any basis recognized as remediable under Title VII or the ADEA.  There is no question that the Amended Complaint identifies Plaintiff as a "black African-American male. . . .over forty (40) years of age."  Amd. Compl. ¶ 7.  The Amended Complaint, however, lacks enough factual substance to Plaintiff's allegations, as required by *Twombly*, either to raise an inference of discrimination or to suggest that Plaintiff suffered an adverse action within the meaning of *Brown*.

The Complaint falls short on all three of the Personnel Actions.  In Personnel Action No. 1, the Amended Complaint states that Plaintiff expressed interest in a temporary promotion and alleges without specifics that the position was awarded to alleged lesser-qualified employees who do not belong to Plaintiff's protected class(es).  Amd. Compl. ¶¶ 19-20.  Regarding Personnel Action No. 2, the Amended Complaint simply states that Plaintiff filed a race and reprisal discrimination complaint after his application for this SES Position was rejected from

13

consideration based on his lack of "significant senior-level management experience."  Amd.

Compl. ¶¶ 26-27.  Concerning Personnel Action No. 3, Plaintiff asserts discrimination because

DOL informed him that he was not considered for the Deputy Director position because he

lacked the necessary time-in-grade to be eligible for that vacancy.  *Id.* at ¶¶ 32-33.

Defendant is entitled to notice of the nature of the claims being alleged.  The Amended

Complaint, however, fails to provide any description of the forms of discrimination Plaintiff is

alleging.  For example, although Plaintiff readily admits that a human resources officer notified

him that he was not considered based on his lack of managerial experience, Plaintiff fails to

allege facts that would suggest DOL's actions were taken based on Plaintiff's race or prior EEO

activity.  *Id.* at ¶¶ 26-27.  Similarly, in Personnel Action No. 3, Plaintiff does not actually provide

the Court with any facts that connect DOL's eligibility determination to his protected classes.

Instead, Plaintiff merely asserts that he "strenuously disputes that he is not qualified for the

position."  Amd. Compl. ¶ 33.

Concerning the temporary promotion, Personnel Action No. 1, Plaintiff does not explain

how the temporary promotion was offered, the candidates to whom the temporary promotion was

offered, how the successful candidates were lesser-qualified than Plaintiff, how Plaintiff was

treated less favorably, and any information about the protected classes of the other candidates.[2/]

*Id.* at ¶¶ 19-22.  Plaintiff also fails to cite any facts that would raise inferences of discrimination

concerning DOL's determination that Plaintiff was not qualified for Personnel Action No. 2, the

---

[2] The GS-15 temporary promotion was awarded to Howard R. Dobson, who was approximately 18 months older than Plaintiff.  This was one fact used by the Administrative Judge to infer that Plaintiff failed to proffer any evidence of discriminatory animus by DOL.  *See* Ex. A at 15.

14

SES Position.

Thus, Plaintiff's Amended Complaint fails to inform DOL about the bases for his allegations that discrimination occurred. Now that Plaintiff has availed himself of the opportunity to file an amended complaint--after DOL filed its first motion to dismiss in which it raised these same defects--the holes in the Amended Complaint should not glossed over. Indeed, *Twombly* instructs that the language of the operative complaint governs, not speculation about facts Plaintiff might later on be able to establish. Here, the Amended Complaint fails to provide facts that suggest that Plaintiff has been treated less favorably than any other candidate based on a protected factor. In light of the failure to give notice as to the type of discrimination, dismissal is appropriate.

Concerning the allegations of retaliation in Count IV, ¶¶ 35-38, the Amended Complaint also fails to set forth any facts that put Defendant on notice about the basis for Plaintiff's retaliation claims. The Amended Complaint does not identify any facts describing a protected activity, any adverse action that he might have suffered, or any causal connection between the protected activity and alleged adverse action. Rather, the Amended Complaint simply lists the legal standard for retaliation and then alleges that "the acts and things done by the Defendant . . . and the retaliation for engaging in statutorily protected activity were done willfully, maliciously, outrageously, deliberately, and purposely." *Id*. ¶¶ 37-38. There is no factual basis for the Court to infer retaliation or any adverse action materially affecting Plaintiff's job duties or benefits, or dissuading a reasonable employee from complaining of discrimination. Defendant respectfully requests that the Court dismiss all of Plaintiff's discrimination and retaliation claims pursuant to Rule 12(b)(6).

15

III.   **Plaintiff Is Ineligible for Positions at the GS-14 and GS-15 Grade Levels and Should Be Barred from Relitigating This Issue.**

  A.   **No Genuine Dispute of Fact.**

In Personnel Actions 1 and 3, the Plaintiff alleges that DOL failed to assign Plaintiff to a GS-15 temporary promotion and failed to certify him for a GS-14/15 position. *See* Ex. A & D. These two claims must fail because Plaintiff is unable to demonstrate that he could have been properly deemed eligible to apply for these positions. This follows directly from application of the government's eligibility standards for positions at the GS-15 level. As a GS-12, who had not performed work at either the GS-13 level or the GS-14 level for the requisite 52 weeks, Plaintiff was ineligible for these positions. *See* Def. Stmt. Material Fact 1 (citing Ex. D and Ex. E, Broderick Decl.). There is no dispute of material fact on these claims, and they cannot survive summary judgment.

Additionally, in Personnel Action No. 2, Plaintiff asserts his belief that he should have been considered for the SES Position. However, the human resources specialist who reviewed Plaintiff's application determined that he did not meet minimum qualifications for this position because he lacked the necessary executive experience and had only been a GS-12 since 1990. *See* Def. Stmt. Material Fact 2 (citing Ex. E, Holmes Decl.). Here again, in spite of Plaintiff's speculation and conclusory belief that he should have been considered, there is no genuine dispute of material fact about Plaintiff's qualifications for this SES Position. Defendant highlighted these same defects in its first motion to dismiss the original complaint, no. [5], and now, despite amending his complaint, Plaintiff has not and cannot cure this fatal factual defect in his claims. Defendant's motion for summary judgment should be granted.

16

**B.     Collateral Estoppel.**

Moreover, issue preclusion should bar relitigation of these factual issues.  The doctrine of collateral estoppel, also known as issue preclusion, provides that "once an issue is actually and necessarily determined by a court of competent jurisdiction, that determination is conclusive in subsequent suits based on a different cause of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153 (1979) (citing *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n. 5 (1979)).  The Supreme Court explained the purpose of collateral estoppel:

> To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions.

*Montana*, 440 U.S. at 153-154 (omitting footnote).

A defense of collateral estoppel requires the defendant to "show: (1) the actual litigation of the issue 'that is, contested by the parties and submitted for determination by the court,' (2) the determination of the issue by a court of competent jurisdiction, and (3) lack of unfairness in precluding the issue from the subsequent trial."  *Siwa v. Office of Personnel Management*, 533 F. Supp. 2d 81 (D.D.C. 2008) (quoting *Otherson v. INS*, 711 F.2d 267, 273 (D.C. Cir. 1983) (citations omitted).  All three factors are met here.

The first factor is satisfied because Plaintiff filed a formal complaint of race, age, and reprisal discrimination with DOL's Civil Rights Center after the ILAB failed to either consider or select him for the temporary promotion.  Following discovery in the administrative action, the AJ denied DOL's motion for summary judgment and held a hearing in EEOC Case No. 570-2006-00121X.  DOL and Plaintiff litigated the issue of whether the Agency discriminated

17

against Plaintiff based on his race or age or in reprisal for prior EEO activity when it failed to consider or select him for the GS-15 temporary promotion opportunity. *See* Ex. A at 3. During the administrative hearing, Plaintiff testified and was permitted to offer evidence to support his claim that he was eligible or should have been considered eligible for the GS-15 temporary promotion. *See generally id.*

On January 9, 2007, the Administrative Judge issued a bench decision, in which he determined that the Agency established a legitimate non-discriminatory reason for its actions and that Mr. Brookens failed to prove that the Agency's actions were motivated by discriminatory animus. *See* Ex. A. The AJ's bench decision further included a specific finding that, "Complainant, as a GS-12 employee, was not eligible for a GS-15 temporary promotion." *Id.* at 17. On July 17, 2007, the OFO affirmed CRC's final agency decision because the evidence substantially supported the AJ's decision. The Plaintiff's Request for Reconsideration was denied on October 9, 2007. *See* Ex. B. Plaintiff was notified by EEOC of his right to file a civil action with 90 days of receipt of the EEOC's decision, but Plaintiff failed to file a timely appeal. Based on the foregoing, there is no question that the issue of Plaintiff's eligibility for promotion to positions that are two or more grade-levels higher than his current GS-12 position were fully contested by the parties, actually litigated before the EEOC, submitted to an Administrative Judge for a decision, and affirmed by the OFO.

Defendant has also established the second prong of the *Siwa v. Office of Personnel Management* collateral estoppel test. The EEOC's final decision should be given collateral estoppel effect because the EEOC was "acting in a judicial capacity and resolv[ing] disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate."

18

*Nasem v. Brown* 595 F.2d 801, 806, (D.C. Cir. 1979) (*quoting United States v. Utah Construction & Mining Co.*, 384 U.S. 394, 422, (1966)).  The EEOC acted as a court of competent jurisdiction when it acted in a judicial capacity to resolve Plaintiff's eligibility and discrimination issues in EEOC Case No. 570-2006-00121X.  *See e.g.,* Ex. A.

Lastly, there can be no question that Plaintiff was given sufficient opportunities to litigate his eligibility issues in the prior administrative hearing in the temporary promotion case. Plaintiff, who is an experienced EEO litigant, was represented by both counsel and a personal representative before the EEOC and he has no credible basis for arguing that he was not offered the opportunities to testify, present witnesses, or present evidence at the administrative hearing. In addition, there are no special circumstances that should exempt this case from preclusion. Rather, the present case is precisely what the courts envisioned in barring litigants from continually contesting issues that have been previously decided.  As plainly demonstrated in this case, each time Plaintiff applied for a promotion opportunity at either the GS-14 or GS-15 grade levels and failed to be considered, he filed a discrimination complaint.  Each discrimination complaint filed by Plaintiff was investigated by DOL and litigated at significant expense, and the consistent results from all of these cases were repeated findings that Plaintiff is ineligible for positions to either the GS-14 or GS-15 grade levels because he does not possess the necessary time-in-grade experience at either the GS-13 or GS-14 grade levels.  *See* Def. Stmt. Material Fact 1 (citing Broderick Decl.).  In the interests of efficient administration of justice and conserving valuable resources, DOL requests that the Court apply the doctrine of collateral estoppel and bar Plaintiff from further relitigating the issue of his eligibility for GS-14 and GS-15 positions.

In summary, DOL and Plaintiff litigated the same factual issue that forms the basis for Personnel Action Nos. 1 and 3 in this case. *See* EEOC Case No. 570-2006-00121X. Plaintiff had an opportunity to appeal that decision in a timely manner but did not. The EEOC acted in a judicial capacity within the meaning of the standards for collateral estoppel. Finally, there is no indication of unfairness in those proceedings. The Court is well within its discretion to apply collateral estoppel to bar relitigation of this factual issue.

### IV.    All Claims Based on Section 1981 Must be Dismissed.

Plaintiff's Amended Complaint, filed by counsel, lists section 1981 as a basis for this suit. *See* Amd. Compl. ¶¶ 1, 2, and Count V (¶¶ 39-41). Section 1981 waives sovereign immunity for state government entities, including the District of Columbia (referenced in ¶ 41 of Amended Complaint), but it does not apply to the federal government. *See* 42 U.S.C. § 1981; *see also Hohri v. United States*, 782 F.2d 227, 245 (D.C. Cir. 1986) (sections 1981, 1983, 1985 and 1986 "by their terms, do not apply to actions against the United States"), *rev'd on other grounds*, 482 U.S. 64 (1987); *see also Brown v. United States*, 271 F. Supp. 2d 225, 229 (D.D.C. 2003), *sum. aff'd*, No. 03-5245, 2004 WL 344411 (D.C. Cir. Feb. 20, 2004); *Graves v. United States*, 961 F. Supp. 314, 322 (D.D.C. 1997). Accordingly, Count V of the Amended Complaint must be dismissed.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court grant summary

judgment with respect to all of Plaintiff's Amended Complaint claims and dismiss this action.

July 25, 2008                                    Respectfully submitted,

 

_____
JEFFREY A. TAYLOR, D.C. Bar # 498610
United States Attorney

  /s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

  /s/
_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204, alan.burch@usdoj.gov

OF COUNSEL:
Rolando Valdez
Office of the Solicitor
U.S. Department of Labor

21

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENOIT BROOKENS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 08-0086 (ESH) |
| | ) |
| ELAINE L. Chao, | ) |
| Secretary, Department of Labor | ) |
| | ) |
| Defendant. | ) |
| | ) |

## DEFENDANT'S STATEMENT OF MATERIAL FACTS NOT IN GENUINE DISPUTE

Defendant Elaine L. Chao, Secretary, United States Department of Labor, respectfully files this statement, pursuant to Local Civil Rules 7(m) and 56.1, in support of her alternative motion for summary judgment regarding Personnel Action Nos. 1 and 3 in this case.

The following fact is supported by evidence not subject to genuine dispute:

1.    Plaintiff is ineligible to apply for GS-15 positions because he has not had 52 weeks of work at the GS-14 level or equivalent.  *See* Ex. D; and Broderick Decl., attached hereto as Ex. E.

2.    Plaintiff was determined unqualified for the Senior Executive Service position advertised under vacancy announcement DOL-SES-06-021 because he did not possess significant senior level management experience.  *See* Holmes Decl., attached hereto as Ex. F.

July 25, 2008                                    Respectfully submitted,

                                                  _____
                                                  JEFFREY A. TAYLOR, D.C. Bar # 498610
                                                  United States Attorney

/s/
_____
RUDOLPH CONTRERAS, D.C. Bar # 434122
Assistant United States Attorney

/s/
_____
ALAN BURCH, D.C. Bar # 470655
Assistant United States Attorney
555 4th St., N.W.
Washington, D.C. 20530
(202) 514-7204
alan.burch@usdoj.gov

OF COUNSEL:
Rolando Valdez
Office of the Solicitor
U.S. Department of Labor

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### WASHINGTON FIELD OFFICE
#### 1801 L Street, N.W., Suite 100
#### Washington, D.C. 20507-1002

| | | |
|---|---|---|
| Benoit Brookens, | ) | EEOC No.   570-2006-00121X |
|     Complainant, | ) | |
| | ) | |
| v. | ) | Agency No.   CRC 05-11-129 |
| | ) | |
| Elaine Chao, | ) | |
| Secretary, | ) | |
| Department of Labor, | ) | |
|     Agency. | ) | Date:    **January 9, 2007** |
| | ) | |

### ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Order dated **January 9, 2007**, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached. This office is also enclosing a copy of the hearing record and Report of Investigation for the Agency's EEO office.[1]

It is so **ORDERED.**

For the Commission:

Joel A. Kravetz
Administrative Judge
Telephone:  (202) 419-0723
Facsimile:  (202) 419-0701

Enclosures

RECEIVED
JAN 11 2007
by kc
# 476840

---

1 On December 11, 2006, Complainant filed a Motion to Modify Proposed Order and Decision. I **DENY** Complainant's Motion, as I have already issued the Bench Decision based on my assessment of the facts presented at the hearing and credibility of the witnesses. No further submissions are permitted or will be considered.

## CERTIFICATE OF SERVICE

For timeliness purposes, it shall be presumed that the parties received the foregoing **ORDER** and any attachments within five (5) calendar days after the date they were sent *via* first class mail, or the same day if sent via facsimile or electronic mail.    I certify that on **January 9, 2007**, the foregoing **ORDER** and any attachments were sent *via* facsimile to the following:

Benoit Brookens
460 Taylor Street, NE
Apt. G-44
Washington, D.C.  20017

Rolando Valdez
U.S. Department of Labor
Office of the Solicitor
Division of Management and Administrative Legal Services
200 Constitution Avenue, N.W., Room N-2428
Washington, D.C.  20210

Ms. Annabelle T. Lockhart, Director
U.S. Department of Labor
Civil Rights Center
200 Constitution Avenue, NW
Room N-4123
Washington, DC 20210


Joel A. Kravetz
Administrative Judge

## NOTICE TO THE PARTIES

### *TO THE AGENCY:*

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

### *TO THE COMPLAINANT:*

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision. 29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

*WHERE TO FILE AN APPEAL:*

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

BY FACSIMILE:

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

UNITED STATES OF AMERICA

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

WASHINGTON FIELD OFFICE

+++++

BENCH DECISION

+++++

```
------------------------+
In the Matter of:       : Case No.:
                        : EEOC No. 570-2006-00121X
Benoit Brookens,        :
                        : Agency No. CRC 05-11-129
        Complainant,    :
                        :
and                     :
                        :
ELAINE CHAO, Secretary  :
United States           :
Department of Labor,    :
                        :
        Agency.         :
------------------------+
```

VOLUME 3

Thursday
December 7, 2006
Conference Room 2428
Frances Perkins Building
U.S. Department of Labor
200 Constitution Avenue, N.W.
Washington, D.C. 20210

BEFORE:

    JOEL A. KRAVETZ, Administrative Judge

2

APPEARANCES:

On Behalf of the Complainant:

      BENOIT BROOKENS, PRO SE

On Behalf of the Department of Labor:

      ROLANDO VALDEZ, ESQ.
      Office of the Solicitor
      Frances Perkins Building
      200 Constitution Avenue, N.W.
      Washington, D.C. 20210
      (202) 693-5311


ALSO PRESENT:

Kevin Saman, law clerk

Ronald Carthan (assisting Complainant)

```
 1                P-R-O-C-E-E-D-I-N-G-S

 2                                    (1:25 p.m.)

 3            ADMIN. JUDGE KRAVETZ:   It's 1:25 in the

 4     afternoon, and we're back on the record.   I am

 5     reconvening the hearing in the matter of Benoit

 6     Brookens versus the Department of Labor, EEOC Number

 7     570-2006-00121X, Agency Number CRC 05-11-129, in

 8     order to issue a decision from the bench.

 9     Accordingly, I will now proceed with a bench

10     decision.

11            As noted previously, EEOC procedures

12     provide for the issuance of decisions from the

13     bench.   I note that the record is comprised of the

14     report of investigation, or ROI; five complainant

15     exhibits referred to as C-1, C-2, et cetera; three

16     agency exhibits referred to as A-1, A-2, et cetera;

17     and one administrative judge exhibit referred to as

18     AJ-1.

19            Claim:  Whether complainant was

20     discriminated against on the basis of race, Black;

21     age, over 40; and in reprisal for prior EEO

22     activity, when, on June 10, 2005, he expressed

23     interest in a 60-day detail as Acting Director of

24     the Trade Policy Division but was neither considered

25     nor selected for the position.
```

1           <u>Findings of fact</u>:  I note that the

2    parties only stipulated to one fact, Exhibit AJ-1.

3           By way of a brief summary, I note that

4    complainant, as a GS-12 international economist

5    working in the Office of International Economic

6    Affairs, or ILAB, reported to Jorge Perez-Lopez --

7    race, White, Hispanic; date of birth, July 27, 1947;

8    with prior EEO activity -- the Director of the

9    Office of International Affairs until Perez-Lopez retired on

10   June 30, 2005.  <u>See</u> AJ-1, report of investigation,

11   or (ROI), tab F2A.

12           Martha Newton -- Caucasian, date of

13   birth, April 19, 1966, with prior EEO activity --

14   was the Acting Deputy Undersecretary for

15   International Labor Affairs during the relevant time

16   in May of 2005, and supervised Perez-Lopez.

17           In                    or around

18   April of 2005, Betsy White, the Director of the

19   Trade Policy Division, retired.  White incumbered a

20   GS-15 position, and the crux of complainant's claim

21   is that he was discriminatorily neither considered nor

22   selected to act in a detail as the Acting Director

23   of the Trade Policy Division pending the posting and

24   filling of White's position.

25           Other facts as relevant will be

5

1    discussed in the analysis section in the interest of

2    brevity.

3              Analysis:  In the absence of direct

4    evidence of discrimination, complainant has the

5    initial burden of establishing a prima facie case of

6    discrimination under McDonnell Douglas Corporation

7    v. Green, 411 U.S. 792, (1973).  In this regard, I

8    note that in order to establish a prima facie case

9    of disparate treatment, a complainant must

10   demonstrate that he was treated less favorably than

11   a similarly situated employee outside his protected

12   group.  Furnco Construction Corp. v. Waters, 438

13   U.S. 567, 1978; Payne v. Department of Energy, EEOC

14   Appeal Number 0199-4044, (August 15, 2002).

15             Absent comparative data, complainant may

16   also establish a prima facie case by setting forth

17   sufficient evidence to create an inference of

18   discrimination.  McDonnell Douglas, 411

19   U.S. at 802, 803,  To establish a prima

20   facie case of retaliation, complainant must show

21   that: 1) he engaged in a protected activity; 2) that

22   the agency was aware of his protected activity; 3)

23   subsequently he was subjected to adverse treatment

24   by the agency; and 4) a nexus exists between the

25   protected activity and the adverse action.  Zisk v.

1    United States Postal Service, EEOC Appeal Number

2    0199-2995, (May 3�0, 2002); O'Neal v. Ferguson

3    Construction Corp., 237 F.3d 1248, 1252, (10th

4    Circuit, 2001); Hochstadt v. Worcester Foundation for

5    Experimental Biology, 425 F. Supp. 318, 324,

6    (District Mass), affirmed, 545 F.2d 222, (1st Circuit,

7    1976).

8            The McDonnell Douglas framework,

9    although developed in the context of a Title VII case,

10   is equally applicable to cases arising under the

11   ADEA.   See Paquin v. Federal National Mortgage

12   Association, 119 F.3d 23, 26, (D.C. Circuit, 1997).

13            To establish a prima facie case of age

14   discrimination, complainant must offer sufficient

15   evidence to create an inference that age was a

16   determining factor in the sense that but for the

17   employer's motive to discriminate on the basis of

18   age, the agency would not have taken the challenged

19   action.   See Hazen Paper Company v. Biggins, 507

20   U.S. 604, (1993)  Liability in an age discrimination

21   case requires that age, ━━━ "actually played a

22   role in any determinative influence," ━━━, on

23   the challenged employment decision.   Hayman v.

24   National Academy of Sciences, 23 F.3d 535, (D.C.

25   Circuit, 1994); Krodel v. Young, 748 F.2d 701, 706,

7

1  (D.C. Circuit, 1984) Cuddy v. Carmen, 694 F.2d 853,

2  856, -57, (D.C. Circuit, 1982).  See Paige v. Equal

3  Employment Opportunity Commission, EEOC Appeal

4  Number 0193-2456, (March 31, 1993), request to

5  reconsider denied, EEOC Request Number 0594-0531,

6  (July 21, 1994).

7           In an age case, the comparative need not

8  be outside the protected group -- i.e., under age 40

9  -- but must be substantially younger than

10  complainant.  O'Connor v. Consolidated Coin Caterers

11  Corporation, 517 U.S. 308, 311, (1996).

12           While the agency ~~~~~~~~~~ demonstrated that

13  complainant failed to establish a prima facie case

14  of age discrimination because the selectee, Ronald

15  Dobson, was older than the complainant and because

16  the evidence reveals that the complainant was not

17  qualified for the position after hearing evidence, I

18  note that the established order of analysis in

19  discrimination cases need not be followed in all

20  cases.

21           Where the agency has articulated a

22  legitimate, non-discriminatory reason for the

23  employment decisions or actions at issue, the

24  factual inquiry can proceed directly to the third

25  step of the McDonnell Douglas analysis.  That is the

8

1  ultimate issue of whether complainant has shown by a

2  preponderance of the evidence that the agency's

3  actions were motivated by discrimination. U.S.

4  Postal Service Board of Governors v. Aikens, 460

5  U.S. 711, 713, -14, (1983); Lau v. Department of

6  Justice, EEOC Appeal Number 01A0-2849, (January 3▰,

7  2005); George v. Environmental Protection Agency, 407

8  F.3d 405, 411, 12, (D.C. Circuit, 2005). See also

9  Texas Department of Community Affairs v. Burdine,

10  450 U.S. 248, 253, -54, (1983)( discussing legitimate

11  non-discriminatory reason); McDonnell Douglas, 411

12  U.S. at 802, (▰▰ same).

13          In this regard, a finding of pretext may

14  be based on the elements of the prima facie case and

15  a determination that the employer's explanation is

16  not credible. Reeves v. Sanderson Plumbing

17  Products, Inc., 530 U.S. 133, 146, -47, (2000) Hicks,

18  509 U.S. at 511. However, a complainant always

19  retains the ultimate burden of persuading the trier

20  of fact that the agency unlawfully discriminated

21  against him. Hicks, 509 U.S. at 511; Aikens, 460

22  U.S. at 715.

23          Even assuming arguendo that complainant

24  can establish a prima facie case, I first find that

25  the agency articulated legitimate,

1    non-discriminatory reasons for its actions.

2    Specifically, Perez-Lopez testified that upon

3    White's retirement, he explained that because GS-15 positions

4    do not become vacant that often, he wanted to offer

5    temporary promotions to interested and qualified

6    GS-14 staff and have them rotate into the position

7    until the position was ultimately filled.

8    Perez-Lopez noted that he would be retiring himself

9    soon, and he wanted everyone who was eligible to be

10   able to state on their resume that they had an

11   opportunity, if they wanted, to act in the GS-15 position.

12   Perez-Lopez explained that he did not favor a detail

13   without a temporary promotion because it unfairly

14   asked employees to do additional work and not be

15   compensated.  Perez-Lopez discussed his intent to

16   ~~_____~~ have eligible GS-14

17   staff rotate into the position with Newton, and she

18   concurred with his plan.

19        Perez-Lopez noted that he offered the

20   opportunity as a temporary promotion to a GS-15

21   position to all four of his GS-14 employees in the

22   Trade Policy Division.  Of the four, Jane Richards

23   -- White, date of birth 8/29/52, no EEO activity --

24   and James Shay -- Caucasian, date of birth 9/9/48,

25   no prior EEO activity -- declined the opportunity;

1    whereas Carlos Romero -- Latino, date of birth

2    11/18/69, no EEO activity -- and Howard Ron Dobson

3    -- Caucasian, date of birth 11/11/46, no EEO

4    activity -- indicated that they were interested in

5    being considered for a temporary promotion to the

6    position being vacated by White.

7            Perez-Lopez testified further that he

8    became aware that Romero would not immediately be

9    eligible for a temporary promotion since he would

10   not have a year of service as a GS-14 employee until

11   sometime around July of 2005.  Perez-Lopez testified

12   that instead of "flipping a coin," as he phrased it,

13   to choose between Romero and Dobson, he selected

14   Dobson for the first 60-day temporary promotion.

15   Perez-Lopez noted that Dobson had been in the

16   department the longest and it was therefore logical

17   to pick him for the first opportunity for a

18   temporary promotion.  Perez-Lopez thus stated that

19   he selected Dobson to occupy the first 60-day

20   temporary promotion which commenced on May 15, 2005.

21   See Exhibit A-2.

22           Perez-Lopez testified further that he

23   recalled that complainant expressed an interest in

24   rotating into the position after Dobson, but his

25   understanding was that complainant

1    ~~Sexton White~~ *was* a GS-12 employee and thus *was* not

2    eligible for a temporary promotion to a GS-15

3    position.  Perez-Lopez *testified that he* recalled contacting

4    individuals in an administrative office within the

5    agency for guidance regarding complainant's

6    eligibility.

7    *In this regard,* I note that ROI tab F1A contains an

8    e-mail from complainant to Perez-Lopez requesting a

9    detail to White's former position ~~████~~ dated June

10   10, 2005. ~~████████████████████~~. This

11   same e-mail ~~██~~ document contains a chain of e-mails, *and*

12   ~~████~~ there is a subsequent e-mail from Perez-Lopez

13   dated June 13, 2005, to two different agency

14   employees seeking guidance on complainant's request.

15          Perez-Lopez denied that age, race, or

16   complainant's prior EEO activity played any role in

17   his decision to rotate GS-14 employees into the

18   position White previously incumbered through 60-day

19   temporary promotions on a rotating basis.

20          Gregory Sheffley -- Caucasian, date of

21   birth October 29, 1944, with no prior EEO activity

22   -- who during the relevant time was the Acting

23   Director of the Office of Economic Affairs,

24   testified that Perez-Lopez asked all GS-14 employees

25   if they would be interested in acting and that

1   Dobson was the first person selected.  Sheffley

2   noted that the ~~announcement~~ announcement to fill the position ~~was~~

3   permanently ~~posted~~ was posted sometime in June and closed at

4   the end of June of 2005.

5           Perez-Lopez had retired on June 30 ~~███~~

6   2005, and Dobson's 60-day temporary promotion was

7   going to end in or around mid-July of 2005.

8   Sheffley, who took over for Perez-Lopez, then noted

9   that he decided to extend Dobson's temporary

10  promotion an additional 30 days.  <u>See</u> Exhibit 3.

11          Sheffley explained that because the

12  position had been posted and closed by the end of

13  June, he felt that the selection process could be

14  completed quickly, and that is why he elected to

15  extend Dobson's detail another 30 days effective

16  July 16th, 2005.

17          Sheffley testified that he recalled

18  being provided a hard copy of an e-mail complainant

19  had previously sent to Perez-Lopez inquiring about a

20  detail into White's position.  Sheffley also

21  testified that it was his understanding that

22  Perez-Lopez asked only eligible GS-14 staff because

23  the opportunity involved a temporary promotion to a

24  GS-15 position, Sheffley noted that ~~███~~ because complainant incumbered a

25  GS-12 position, he was not eligible for a temporary

13

1    promotion, <sup>to a GS-15 position</sup> Sheffley denied extending Dobson's

2    temporary promotion 30 days because of race, age, or

3    prior EEO activity.

4            Sheffley also explained that complainant

5    did not understand the difference between a detail

6    and a temporary promotion, and ~~then~~ he informed

7    complainant that if he felt he was qualified for a

8    temporary promotion to a GS-15 position, he could

9    submit materials to the Personnel Department so they

10   could determine whether or not he was qualified for

11   a temporary promotion to a higher graded GS-15 position.

12           Sheffley testified he then told

13   complainant that after Dobson and Romero, if the

14   position had not been filled and Personnel had

15   determined complainant was qualified for a GS-15 position, he would

16   consider complainant for a temporary promotion.

17   Sheffley denied that race, sex, or prior EEO

18   activity played any role in his decisions or actions

19   vis-a-vis complainant.

20           Joanne Broderick, the Director of the

21   Office of Human Resources, in consulting for the

22   relevant organization where complainant was

23   employed, [ILAB], testified about the difference

24   between a detail and temporary promotion.  Broderick

25   explained that with a temporary promotion, an

1    employee is actually promoted to the next grade

2    level and paid that salary while incumbering the

3    position at issue.  Broderick explained further that

4    in order to receive a temporary promotion, an

5    employee would have to have a minimum of one year of

6    experience in the next lowest grade level.  By

7    contrast, individuals who were detailed in positions

8    are not paid at the grade level into the position

9    they're detailed, and thus there is no time in grade

10   requirement for a detail.

11           Broderick noted that, again, no such time-in-grade

12   requirement existed if one were detailed into a

13   position without having any corresponding increase

14   to salary.  Essentially, that's the difference

15   between a detail and a temporary promotion.

16           As the agency articulated a legitimate,

17   non-discriminatory reason for its actions, it is

18   complainant's burden to establish by a preponderance

19   of the evidence that discrimination or retaliation

20   more likely than not motivated the agency's actions.

21   See supra McDonnell Douglas, Burdine, Hicks, Hazen.

22           For the reasons I will explain below, I

23   conclude that complainant failed to establish the

24   actions of Perez-Lopez and Sheffley were more likely

25   than not motivated by discriminatory animus.

1        In reaching this conclusion, I note that

2    complainant presented no credible evidence other

3    than his unsupported assertions that race, age, or

4    retaliation played any role in the decisions by the

5    agency that led to Dobson receiving a temporary

6    promotion, having it extended 30 days, and not

7    providing complainant an opportunity to be detailed

8    and thus act in the position.

9        Complainant presents no evidence

10    whatsoever that age played any role in the decision

11    by either Perez-Lopez to initially detail Dobson

12    into the position or by Sheffley to extend the

13    detail 30 days.  In this regard, I note that Dobson

14    is approximately 18 months older than complainant.

15    In addition, both Perez-Lopez and Sheffley were

16    slightly older than complainant.  Under these

17    circumstances, there is no evidence, testimonial or

18    documentary, that would lead a factfinder to infer

19    age animus by either Perez-Lopez or Sheffley when

20    Dobson was selected initially for the temporary

21    promotion and ultimately was extended 30 days.

22        Complainant also presents no evidence

23    that race played any role in Dobson's selection for a temporary promotion or

24    complainant's lack of consideration for a detail.

25    While Dobson is Caucasian, the mere difference in

1    race is insufficient to establish that the decision

2    was based on Dobson's race.  Rather, Perez-Lopez

3    credibly testified that Dobson was the more senior

4    member of the eligible GS-14 employees who had

5    expressed an interest in the position, and there is

6    no evidence that race played any role in the initial

7    decision by Perez-Lopez to select Dobson.

8            Similarly, Sheffley's decision to extend

9    the detail 30 days is logical given that he believed

10   the position was about to be filled because the

11   position had been posted and closed.

12           Finally, complainant presents no

13   evidence other than pure speculation on his part

14   that the agency did not act on his request to be

15   detailed because of his race or age or prior EEO

16   activity.  To the contrary, the evidence established

17   that Perez-Lopez immediately inquired of two agency

18   staff on June 13th, 2005, whether or not complainant

19   could serve in the position.  See ROI Exhibit F1A.

20           It became clear from the testimony of

21   both Perez-Lopez and complainant that there was

22   confusion in complainant's mind between details,

23   which do not require additional compensation or time-

24   in-grade requirements, and temporary promotions, in

25   which the incumbent fills the position at the higher

1  grade level, is paid at that higher grade level, and

2  therefore must have at least one year of service at

3  the prior grade level -- in this case, a GS-14 -- in

4  order to be eligible to be considered for a

5  temporary promotion.  Complainant, as a GS-12

6  employee, was not eligible for a temporary

7  promotion, and Perez-Lopez believed this to be the

8  case at the relevant time.

9          The e-mail in ROI tab F1A specifically

10  states:  "See the attached e-mail from me to Benoit

11  Brookens.  Benoit argues that he should be

12  considered for a detail as the Acting Director of

13  the Trade Policy Division.  As that position is

14  rated as a GS-15, the advice I received earlier was

15  that only GS-14 employees with a year in grade were

16  eligible for the detail, and therefore Benoit was

17  not eligible for the detail.  Please provide me with

18  guidance on how to proceed.  Many thanks.  Jorge."

19          Clearly, at that relevant time,

20  Perez-Lopez did not consider complainant because of

21  his grade level and not because of other protected

22  characteristics such as age, race, or EEO activity.

23          Newton again corroborated Perez-Lopez and ~~his plan to~~
    ~~temporarily promote eligible GS-14's into the position on a rotating basis.~~  Newton also

24  ~~~~explained how, as she was moving from the

25  position of Associate Deputy Undersecretary to

**NEAL R. GROSS**
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        www.nealrgross.com

18

1   Acting Deputy Undersecretary for ILAB, toward the

2   end of April and the beginning of May, that there

3   was lots of work in that division at that time.

4   ~~Assistant~~ Newton also explained the importance of the

5   work in ILAB at that time, the need for leadership,

6   and her desire to have the position permanently

7   filled as quickly as possible.

8        In this regard, I recognize that an

9   agency generally has broad discretion to set policies

10  and carry out personnel decisions and that such

11  decisions will not be second-guessed by the

12  reviewing authority absent evidence of unlawful

13  motivation.  Hovey v. Department of Housing and

14  Urban Development, EEOC Appeal Number 0197-3965,

15  (August 31, 2000); Burdine, 450 U.S. at 259.

16        Complainant attempted to show pretext

17  through the testimony of the EEO counselor Margaret

18  Terry.  Specifically, complainant attempted to show

19  that Terry learned that there was no time-in-grade

20  requirement for the position when Terry contacted

21  the HR specialist, Terry Copeland, about the

22  position.  According to Terry's -- [and when I say

23  "Terry," I refer to Margaret Terry, the EEO

24  counselor, and not Terry Copeland] -- ~~the~~

25  ~~the~~ EEO counselor's notes, she ~~contacted her~~

1  ~~confronted~~ confronted Perez-Lopez with the

2  fact that a detail did not require time-in-grade.

3  ~~and~~ According to Terry, Perez-Lopez indicated that

4  he had no problem allowing complainant to be

5  detailed though he was about to retire at the time.

6  <u>See</u> Exhibit C-2.

7        However, I do not find that such

8  evidence demonstrates pretext based on age, race, or

9  retaliation.  At best, such evidence suggests that

10  the parties were confused about the difference

11  between a detail and a temporary promotion.

12  Moreover, I find Perez-Lopez and Sheffley to be

13  credible witnesses, and I do not find complainant or

14  Margaret Terry, the EEO counselor, to be credible.

15        Terry was not credible for several

16  reasons.  First and most importantly, ~~she~~ Terry could not

17  recall much of what occurred at the relevant time

18  when she was testifying.  Terry testified that she

19  did not recall preparing the counselor's report even

20  though her signature appeared on the counselor's

21  report.  Terry was somewhat evasive answering

22  questions and often claimed she could not recall

23  events or conversations.

24        While on the stand, Terry shifted around

25  a lot and didn't make a lot of eye contact. ~~~~ Based on Terry's demeanor and the substance of her responses, I

1    did not get the sense she was being completely

2    credible when she was testifying with respect to her

3    actions as an EEO counselor regarding this specific

4    case.

5        While the agency attempted to show bias

6    by Terry given that the counselor's report left out

7    certain details that were in her own notes, and that

8    Terry had attempted to secure a financial settlement for Complainant

9    in order to resolve the case, I do not find that the

10   bias is the real crux of ~~the problem~~ Terry's lack of credibility,

11   I cannot infer bias by Terry ~~because~~ because ~~she~~ her

12   conversation with Copeland about a detail is based

13   really in generic terms only.  In other words, while

14   Terry learned from Copeland that details may not

15   require a promotion and a year at the next lowest

16   grade, the fact remained that Perez-Lopez took

17   action to fill the position as a temporary promotion

18   because he credibly explained that employees at the

19   next lowest grade level, or GS-14 level, could be

20   rotated into the position through a temporary

21   promotion so that they are adequately compensated

22   for their work.

23        There is no real credible evidence that

24   Margaret Terry, as the EEO counselor, was biased. Rather, Terry

25   ~~she~~ simply wasn't credible because she couldn't

1   recall the details of what occurred. ~~Moreover~~ the

2   distinction between a detail and a temporary

3   promotion was a distinction ~~████~~ she gleaned from her conversation with

4   ~~████~~ an HR person; whereas, during the relevant Copelands

5   time, Perez-Lopez indicated his understanding in the

6   e-mail that is noted in the ROI at tab F1A. Copeland's statements to Terry

7   Complainant produces no evidence that are of little relevance since Perez-Lopez had a

8   Perez-Lopez intentionally and discriminatorily different understanding at the relevant time

9   proceeded to fill the relevant position as a and credibly testified of his desire to secure

10  temporary promotion instead of a detail in order to temporary promotions for GS-14 staff who

11  specifically preclude complainant because of his were to be detailed into the position.

12  age, race, or EEO activity.

13          As I noted before, Perez-Lopez was

14  credible when he testified.  Perez-Lopez explained

15  his actions, he was forthright and direct while he

16  testified, ① and he was not cross-examined in any

17  meaningful manner so as to show bias, animus, or any

18  inconsistency in his testimony or reasons for his

19  actions.

20          Moreover, ~~████~~ several aspects of

21  Perez-Lopez's testimony were corroborated by other

22  witnesses.  For example, Perez-Lopez testified that

23  he spoke with each of the four eligible GS-14

24  employees, ~~████~~ that ~~████~~ Richards told

25  him that she wasn't interested in a temporary

① Perez-Lopez did not stutter, stammer or hesitate when answering questions, or otherwise avert eye contact.

NEAL R. GROSS
COURT REPORTERS AND TRANSCRIBERS
1323 RHODE ISLAND AVE., N.W.
(202) 234-4433        WASHINGTON, D.C. 20005-3701        www.nealrgross.com

1    promotion and that Romero was interested but may not

2    have the time in grade since he had only recently been promoted

3    ~~to a~~ GS-14. ~~to a~~

4              Richards corroborated Perez-Lopez when

5    she explained that she had an informal discussion

6    with Perez-Lopez, but she told him that she wasn't

7    interested in temporary promotions. Likewise, Romero testified about his

8    conversation with Perez-Lopez about a temporary

9    promotion, and ~~and~~ he explained to Perez-Lopez that

10   he was interested but that he may not have the time-

11   in-grade requirement since he had been promoted by

12   accretion of duties to a GS-14 in ~~redacted~~

13   ~~redacted~~ 2004.  Finally, both Dobson and Shay also

14   testified to similar conversations they both had with

15   Perez-Lopez about a temporary promotion.

16              All four employees stated that they have

17   no reason to believe that Perez-Lopez harbored

18   animus based on age, race, or EEO activity regarding

19   his actions to temporarily promote eligible and

20   willing staff.

21              Sheffley was similarly credible, as I

22   found him to be very direct and ~~and~~ forthright in

23   his testimony. (3) Similarly, complainant did not

24   expose any bias or any inconsistencies that would

25   suggest to me that Sheffley was not credible or that

(3) Sheffley was similarly confident while testifying, and he did not stutter, stammer, hesitate or avert eye contact.

1  he harbored animus based on age, race, or EEO

2  activity.

3      By contrast, complainant was not

4  credible when he testified.  Complainant only

5  offered vague allegations that older or

6  African-American employees were not offered details,

7  and I already explained that Dobson is older than

8  complainant and that Perez-Lopez credibly testified

9  about the offer of temporary promotions, not

10 details, to eligible GS-14 staff, which precluded

11 complainant, a GS-12 employee, from consideration.

12     Complainant also continues to maintain

13 and argue, as he did during closing, that White left

14 in mid-April of 2005 and that no detail was formally

15 established until mid-May of 2005.  Complainant seems to be

16 suggesting that he could have and should have been

17 considered for a detail for that 30-day period from

18 approximately mid-April to mid-May of 2005.

19     There are three fundamental problems

20 with complainant's argument.

21     First, there's no evidence that the

22 position was vacant for that 30-day period.

23 White apparently retired on April 30th, and complainant

24 produced no evidence as to whether or not White was

25 actually working during the period April 15 to April

1    30 other than his own testimony suggesting that Whik was not in the office.

2         Number two, there's credible evidence

3    from Newton and Perez-Lopez of ~~the~~ changes that were

4    occurring within ILAB as a whole ~~and~~ as a result of several

5    different individuals retiring. ~~~~ Therefore, as Newton was being promoted herself, it

6    naturally took time to get organized, for Newton to

7    assume her new role and for Perez-Lopez to assume

8    his role. ~~~~ In summary, there is no evidence beyond Complainant's unsupported conjecture,

9    ~~~~ that anyone could have been, but was not detailed into Whik's position, between mid-April and mid-May of 2005.

10        Number three, complainant never even

11   expressed an interest in being detailed into the

12   position until he sent an e-mail to Perez-Lopez on

13   June 10~~~~ 2005.  So any actions that may have

14   occurred between April 15 and May 15 are not

15   relevant since complainant could not show that

16   Perez-Lopez ~~~~ was even aware that complainant was

17   ~~~~ interested in a detail during the ~~e~~ time period. ~~~~

18   ~~~~

19        Complainant also argued that he never

20   learned from Perez-Lopez that he was not qualified

21   for the position, because he was a GS-12 employee. ~~~~ Even assuming Perez-Lopez

22   didn't "close the loop," as was the term used during

23   the hearing, and didn't follow through and ~~~~ inform

24   complainant about his conversations with Personnel,

25   I note that during the relevant time, Perez-Lopez

1    was retiring. ~~And~~ given my findings regarding

2    Perez-Lopez's credibility, ~~and~~ that ~~he~~ was *his testimony*

3    corroborated by several other witnesses, and *that* I found

4    his testimony to be forthright and direct, I infer

5    no animus based on race, age, or prior EEO activity

6    even if Perez-Lopez ultimately never spoke to

7    complainant about his qualifications and whether or

8    not he was qualified for ~~the~~ *a detail or temporary promotion to the* position.

9             Interestingly, complainant testified

10   about a contentious relationship he had with

11   Perez-Lopez over the years.  Complainant noted how

12   he had represented employees in the union process

13   and would address employee concerns and/or meet with

14   management officials such as Perez-Lopez during the

15   step 1 or step 2 grievance process.  Complainant

16   also explained that Perez-Lopez unlawfully

17   terminated him in 2000 or 2001, and an arbitrator

18   overturned his termination decision and complainant

19   was reinstated.  This, apparently, is *part of* the basis for

20   complainant's prior EEO activity.

21   *Since this evidence came out at the hearing,* ~~I expected~~ I expected

22   complainant's representative to explore the

23   potential animosity between complainant and

24   Perez-Lopez when cross-examining Perez-Lopez, in

25   part to undermine Perez-Lopez's credibility and in

1   part to show retaliatory animus.

2            The difficult challenge complainant

3   would have had under those circumstances would be to

4   segregate retaliatory animus for~~,~~ his EEO activity from

5   animus in engaging in union activity.  However,

6   complainant did not even cross examine Perez-Lopez at all

7   regarding their overall work relationship and their

8   work history. Complainant's testimony is thus

9   unsupported, and without any negative credibility

10  determinations, vis-a-vis Perez-Lopez, it is thus wholly insufficient to

11  establish pretext for retaliation in light of

12  Perez-Lopez's and Sheffley's overall credible

13  testimony that is corroborated by all of the GS-14

14  international economists and by Newton.

15           In the end, while complainant may be

16  correct in that he and Perez-Lopez had an

17  acrimonious relationship, there is simply no

18  credible evidence that the decision to temporarily

19  promote GS-14 employees and not authorize a detail

20  for complainant without a temporary promotion was at

21  all motivated by discriminatory or retaliatory

22  animus.

23           Conclusion:  Based on a careful analysis

24  of the record and after hearing and assessing the

25  credibility of the witnesses at the hearing, I

1    conclude that complainant failed to demonstrate that

2    more likely than not, discriminatory or retaliatory

3    animus motivated the agency's actions.   Accordingly,

4    judgment in favor of the agency is appropriate.

5              End of bench decision.   Closing

6    instructions:

7                   I informed the court reporter previously

8    and I want to amend my instructions now with respect

9    to the transcripts, just to make sure that she

10   conveys to the transcriber and that the transcriber

11   can see these instructions themself, that we now

12   need a total of three transcripts -- that's not

13   four.   The reason why we only need three sets of

14   transcripts is that the complainant has withdrew his

15   representatives; therefore, we need one original set

16   and two copies.   The court reporting service should

17   make sure that all three sets include copies of the

18   exhibits.

19                   Volume 1 of the transcripts should be

20   all the testimony and exhibits that took place on

21   November 17, 2006.  Volume 2 of the hearing

22   transcripts should be all the testimony and exhibits

23   that were taken today; that is, December 7th.

24   Volume 3 of the transcript should be the bench

25   decision.   That way, the bench decision is its own

1    separate volume and is easier to edit as

2    appropriate.  Therefore, Volume 1 is everything on

3    November 17th, including exhibits, and Volume 2 is

4    everything on December 7th, including exhibits.  The

5    court reporting service should make sure that the

6    exhibits are copied so that there's three total sets

7    of all the materials.

8                Finally, the court reporting service

9    should ensure that all three of these sets are sent

10   to me, the original plus the two copies are all sent

11   to me.  I will make appropriate edits to Volume 3,

12   the bench decision, and I will distribute the

13   transcripts to the parties as appropriate once I

14   complete the decision along with appropriate orders

15   and appeal rights and other appropriate

16   documentation.

17                Having heard the testimony of all the

18   witnesses and the arguments of the parties, I thank

19   the parties for their cooperation, and at 2:00, I

20   declare this hearing closed.

21                (Whereupon, at 2:00 p.m., the hearing

22   adjourned.)

23

24

25

29

## CERTIFICATE

     This is to certify that the foregoing transcript

in the matter of:   Benoit Brookens and Elaine Chao
                  Bench Decision

Before:          The Honorable Joel A. Kravetz

Date:           December 7, 2006

Place:          Frances Perkins Building
                  Washington, D.C.

represents the full and complete proceedings of the

aforementioned matter, as reported and reduced to

typewriting.

                             _____
                               Charisse Nheby



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
Office of Federal Operations
P. O. Box 19848
Washington, D.C.  20036

Benoit Brookens,
Complainant,

v.

Elaine Chao,
Secretary,
Department of Labor,
Agency.

Request No. 0520070890

Appeal No. 0120071829

Agency No. 05-11-129

Hearing No. 570-2006-00121X



## DENIAL

Complainant timely requested reconsideration of the decision in *Benoit Brookens v. Department of Labor*, EEOC Appeal No. 0120071829 (July 17, 2007).  EEOC Regulations provide that the Commission may, in its discretion, grant a request to reconsider any previous Commission decision where the requesting party demonstrates that:  (1) the appellate decision involved a clearly erroneous interpretation of material fact or law; or (2) the appellate decision will have a substantial impact on the policies, practices, or operations of the agency.  *See* 29 C.F.R. § 1614.405(b).

After reconsidering the previous decision and the entire record, the Commission finds that the request fails to meet the criteria of 29 C.F.R. § 1614.405(b), and it is the decision of the Commission to deny the request.  The decision in EEOC Appeal No. 0120071829 remains the Commission's final decision.  There is no further right of administrative appeal on the decision of the Commission on this request.

## COMPLAINANT'S RIGHT TO FILE A CIVIL ACTION (P0900)

This decision of the Commission is final, and there is no further right of administrative appeal from the Commission's decision.  You have the right to file a civil action in an appropriate United States District Court **within ninety (90) calendar days** from the date that you receive this decision.  If you file a civil action, you must name as the defendant in the complaint the

2                                          0520070890

person who is the official agency head or department head, identifying that person by his or her full name and official title. Failure to do so may result in the dismissal of your case in court. "Agency" or "department" means the national organization, and not the local office, facility or department in which you work.

## RIGHT TO REQUEST COUNSEL (Z1199)

If you decide to file a civil action, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you and that the Court permit you to file the action without payment of fees, costs, or other security. *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*; the Rehabilitation Act of 1973, as amended, 29 U.S.C. §§ 791, 794(c). **The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend your time in which to file a civil action. Both the request and the civil action must be filed within the time limits as stated in the paragraph above ("Right to File a Civil Action").

FOR THE COMMISSION:

Carlton M. Hadden, Director
Office of Federal Operations

OCT 0 9 2007
Date

3                                    0520070890

## CERTIFICATE OF MAILING

**For timeliness purposes, the Commission will presume that this decision was received within five (5) calendar days after it was mailed**. I certify that this decision was mailed to the following recipients on the date below:

Benoit Brookens
460 Taylor St NE #G-44
Washington, DC 20017

Mary Todd
P.O. Box 960
Washington, D.C. 20044

Annabelle T. Lockhart, Director
Office of Civil Rights
Department of Labor
200 Constitution Ave., NW #N4123
Washington, DC 20210

OCT 0 9 2007
_____
Date

_____
Equal Opportunity Assistant



## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
### Washington Field Office

1801 L Street, N.W.
Suite 100
Washington, DC 20507
(202) 419-0710
TTY (202) 419-0702
FAX (202) 419-0701
1-800-669-4000

| | |
|---|---|
| Benoit Brookens,<br>    Complainant, | ) EEOC Nos. 570-2007-00778X<br>)             570-2008-00278X<br>)<br>      v.      ) Agency Nos. 07-11-027<br>)             07-11-051 |

Benoit Brookens,
    Complainant,

      v.

Elaine L. Chao, Secretary,
U.S. Dept. Of Labor,
    Agency.

    Date:   March 14, 2008

### DISMISSAL ORDER

On or about March 10, 2008, the Agency moved for dismissal of the above-captioned matters pursuant to 29 C.F.R.§1614.109(b) and 29 C.F.R.§1614.107(a)(3) (2007) on the grounds that Complainant filed a civil complaint in the United States District Court for the District of Columbia (Case: 1:08-cv-00086) requesting review of at least ten personnel actions, including the two non-selections that are at issue in the above-captioned complaints.   After careful consideration of the EEO complaint files , the exhibits attached therein and the Agency's Motion, I find that Complainant has raised the same claims in the civil action that he previously raised in the above-captioned EEO complaints.   Therefore, I now dismiss  the above-captioned complaints with prejudice.

For the Commission:

           It is so ORDERED.

Kurt C. Hodges
Administrative Judge
Telephone: (202) 419-0710
Facsimile: (202) 419-0701

## NOTICE TO THE PARTIES

*TO THE AGENCY:*

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a final order notifying the complainant whether or not you will fully implement this decision. You should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal Operations, the right to file a civil action in a federal district court, the name of the proper defendant in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees, and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

### TO THE COMPLAINANT:

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision. 29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

### WHERE TO FILE AN APPEAL:

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

BY PERSONAL DELIVERY:

Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW

Washington, D.C. 20507

BY FACSIMILE:

Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant, in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

**WITNESS AFFIDAVIT**

I, (name) Ericka Witt

m an ✓ employee of ___ applicant to ___ former employee of the U.S. Department of Labor's:

Agency Office of the Assistant secretary for Administration and Management

(Office) Human Resources Center

(Division) Office of Human Resources Consulting and Operations

(Branch) _____

Located in (city and state) Washington, DC

In the capacity of (show both your organization title and the classification of your job, if different):

Contracted Human Resources Specialist

Grade N/A between (date) _____ and (date) _____

My telephone number during working hours is: 202-693-7813

I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Labor policy to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation into a complaint of discrimination against the Department of Labor. I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. In addition, the Complainant and the appropriate Department of Labor officials involved in the EEO complaint process will receive the entire investigative report. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process (so long as my choice does not result in a conflict of interest). I have _____ have not ✓ chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the EEO complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly _____ swear or ✓ affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and concerns raised by the investigator.

RECEIVED

JUN 1 3 2007

BY: KC

# 492004

Exhibit F2

Page 1 of 10 Pages

Page _____ of _____ Pages

Initials _____

Witness Questionnaire
Witness: **Ericka Witt**
EEO Complaint of Benoit Brookens Case No. 07-11-051

Please respond to the following request for information relative to this formal complaint of discrimination, using the enclosed affidavit form. Number and initial each page and initial any corrections made to any items in your affidavit. Prepare your response in narrative form to best relate what occurred in this complaint. As you describe circumstances and facts in a time sensitive chronology, give specific and detailed information so that someone who is not familiar with the situation can understand what it is you are trying to explain/demonstrate. In other words, your affidavit should paint a picture for the person who will make the decision relative to the issue raised in this complaint.

Please provide your response to the following:

1. Please state for the record your name, race, EEO activity (if any), position and location within the Department of Labor.

   Ericka Witt; Caucasian; Prior EEO activity includes completing a witness questionnaire pertaining to a separate complaint; I am a contracted human resources specialist in the Office of the Assistant Secretary for Administration and Management.

2. Please describe your role/responsibilities pertaining to the allegations under investigation.

   My role in this vacancy announcement was to review applications and develop a certificate of eligibles for the position of Deputy Director.

3. Were you aware of Mr. Brookens' race?

   I had been made aware of Mr. Brookens' race in a separate complaint filed prior to this announcement being posted.

4. Were you aware of the Complainant's previous EEO complaints or past opposition to activities prohibited under the EEO regulations (e.g. allegations of discrimination)? If so, when/how did you become aware?

   I was aware of a previous complaint filed by Mr. Brookens. I received a questionnaire from an investigator pertaining to that complaint on August 29, 2006.

Exhibit ___F2___

Page __2__ of __10__ Pages



5. To the best of your knowledge, why was Mr. Brookens denied certification? If the DOL Online Opportunities Recruitment System (DOORS) process impacted this decision, please explain how DOORS works? Your response here must be sufficiently specific to permit the Complainant to mount an evidentiary challenge to any of the explanations offered by the agency for its actions.

> Mr. Brookens was denied certification because he lacked time-in-grade at the next lower grade level. The DOORS process did not affect this determination. He is currently a GS-12, and applied at the GS-14 and GS-15 grade levels. Because this was a merit promotion announcement, he would need to have worked for at least 52 weeks at the GS-13 grade level before he would be eligible for a GS-14 level position.

6. Please provide name(s), race, and EEO activity (if any) of the candidates certified and not certified for the position of Deputy Director, Bureau of International Labor Affairs, advertised under Vacancy Announcement ILAB-07-010M.

> The names of certified and non-certified applicants for this position are below. I do not have information pertaining to race or EEO activity for applicants.

**Certified**

| GS-14 | GS-15 |
|---|---|
| CALHOUN, MICHELLE | GOODE, JEFFREY |
| GEORGE, MICHAEL | HELM, CATHRYN |
| KLEMM, CHRISTOPHER | SHEA, JAMES |
| SULLIVAN, JERRY | |

**Not-Certified**

| GS-14 | GS-15 |
|---|---|
| BLANCO, ANDREW | BROOKENS, II, BENOIT |
| BREITLING, PAULA | CAPESTANY, CECILIA |
| BROOKENS, II, BENOIT | GATELY, JOSEPH |
| EL-FARRA, ABDELSALAM | HILTON, MARK |
| MCCLUNG, FLORI | JACKSON, JOSEPH |
| MCGREGOR, CARLA | KIM, MI-YONG |
| THOMPSON, MARY | KLEMM, CHRISTOPHER |
| TOHAMY, SOUMAYA | MCGREGOR, CARLA |
| | MIRELSON, PAMELA |
| | SULLIVAN, JERRY |
| | THOMPSON, MARY |

Exhibit ___F2___

Page __3__ of __10__ Pages

7. Please provide any other relevant information that you wish to add.


8. Have you received any assistance in preparing this statement and/or has your statement been reviewed by anyone other than an attorney from the Office of the Solicitor or a private legal representative? If yes, please provide the name, title, and contact information for any such individual(s).

       No



Exhibit _F2_

Page _4_ of _10_ Pages

**U.S. Department of Labor**       Office of the Assistant Secretary
for Administration and Management
Washington, D.C. 20210



August 6, 2007

TO:         Roderick Faulkner
            Civil Rights Center

FROM:       Ericka Witt
            Human Resources Center, OASAM

RE:         ILAB 07-010M, GS-131-14/15

RECEIVED
AUG 0 6 2007
BY: KC
#497758

In order to qualify for the subject vacancy, applicants must have specialized experience equivalent to at least the GS-13 level, if applying at grade GS-14. Specialized experience in International Relations at the GS-13 level involves serving in more of a lead role than at the GS-12 grade level in terms of the planning, reporting, review, analysis, and evaluation of related economic, social, cultural, and political issues. At the GS-13 level, the incumbent is responsible for the development of U.S. Government policy positions and guidance, and representing the U.S. Government at relevant meetings and conferences. Representation activities also involve building extensive and on-going partnerships with other relevant Agencies and international organizations. This information is contained in the position description for an International Relations Officer in the Office of International Relations, classified as a GS-131-13. The Federal, as well as non-Federal, experience Mr. Brookens details in his resume does not illustrate an equivalent level of planning and direction, representation, and relationship-building. Thus, it was determined that Mr. Brookens does not possess specialized experience equivalent to the next lower-grade level in or related to the work of the subject position.

Exhibit _F2_
Page _5_ of _10_ Pages



Affidavit of: Ericka Witt

I have reviewed this statement, which consists of __5__ pages, and hereby solemnly _____ swear __✓__ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

Ericka Witt                                                    10/13/07
     (Signature of Affiant)                                    (Date)

Signed before/received by me at (Street and City) 208 Constitution Ave, NW. Wash, DC 26210
on this 13th day of ___June___ , 20 07

Roderick J Faulkner
     (Signature of Investigator/Witness)

Exhibit __F2__
Page __6__ of __10__ Pages

CRC Form 10
(Rev. 3/03)

Page _____ of _____ Pages

Initials _____

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA


| | | |
|---|---|---|
| **BENOIT BROOKENS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Civil Action No. 08cv00086 (ESH)** |
| **ELAINE L. CHAO,** | ) | |
| **Secretary, Department of Labor,** | ) | |
| | ) | |
| **Defendant.** | ) | |


## DECLARATION OF JOANNE T. BRODERICK

I, Joanne Broderick, do hereby declare and state under the penalty of perjury:

1.      I am presently employed as the Director of the Office of Human Resources

Consulting and Operations, which is part of the Human Resources Center, in the Office of

the Assistant Secretary for Administration and Management (OASAM), at the U.S.

Department of Labor (DOL) in Washington, D.C.

2.      OASAM is the agency that provides administrative support to the Office of

Administration and certain other client agencies.  OASAM provides personnel advice and

services to the Bureau of International Labor Affairs (ILAB).

3.      I have served in this position since May 2006.

4.      In this position, my responsibilities include advising management and

supervising on Federal personnel matters and supervising staff performing human

resources services, including staffing, classification, and position management, processing

and payroll.

5.　　Prior to commencing this position with the U.S. Department of Labor, I worked as the Director of Staffing, Recruitment, and Training Policy for the Department of Justice in Washington, D.C. I possess 26 years of federal employment personnel experience advising Federal managers, supervisors, and employees about the Federal personnel rules and regulations.

5.　　I provided oral testimony on behalf of the Department of Labor in *Brookens v. Chao*, EEOC Case No. 570-2006-00121X. In that administrative hearing, my testimony primarily concerned the time-in-grade (eligibility) requirements for promotions under the Federal regulations.

6.　　The term "eligibility" as it relates to merit staffing promotions generally refers to the area of consideration stated in the vacancy announcement. For example, where a vacancy announcement states "Department of Labor only," then only current Department of Labor employees are eligible to apply for consideration to that position.

6.　　The term "eligibility" also refers to time-in-grade restrictions. In the competitive service, for positions at grades GS-12 or higher, a candidate must have served one year (52 weeks) at the next lower grade level in order to be eligible for a promotion, through merit promotion, to the next higher grade. *See* 5 C.F.R. § 300.604(a).

7.　　In order to be eligible for a GS-15 vacancy, a GS-14 candidate must have served for 52 weeks as a GS-14 employee.

8.　　In order to be eligible for a GS-14 vacancy a GS-13 candidate must have served for 52 weeks as a GS-13 employee.

8.    The exclusions to time-in-grade requirements are listed at 5 C.F.R. §

300.603(b).  Examples of exclusions to time-in-grade requirements include where a

candidate is eligible for a special appointment or the position was announced under

delegated examining authority for non-federal status candidates or the candidate was

eligible for an appointment as a disabled veteran.

9.    I have reviewed the personnel records of Benoit O. Brookens, II.

10.    Mr. Brookens has been employed as an International Economist in DOL's

Bureau of International Labor Affairs (ILAB) since 1990.

11.    My review of Mr. Brookens' personnel file shows that during his Federal

service career, he has not held any GS-13 positions.

12.    My review of Mr. Brookens' personnel file shows that during his Federal

service career, he has not held any GS-14 positions.

13.    My review of the records in Mr. Brookens' personnel file shows that he has

been employed as a GS-12 International Economist in ILAB since he was hired in 1990.

14.    Based on my review of the records in Mr. Brookens' personnel file, he is

not eligible for a promotion to GS-14 positions that are advertised under merit staffing

procedures for DOL employees because Mr. Brookens does not possess the required 52

weeks in a GS-13 position.

15.    Based on my review of the records in Mr. Brookens' personnel file, he is

not eligible for a promotion to GS-15 positions that are advertised under merit staffing

procedures for DOL employees because Mr. Brookens does not possess the required 52

weeks in a GS-14 position.

16.     Based on my review of Mr. Brookens' personnel file, there are no records to indicate that he is eligible for an exclusion from the time-in-grade requirements. *See* 5 C.F.R. § 300.604(b).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on 4/18 , 2008

By: Joanne Broderick

4

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| BENOIT BROOKENS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Civil Action No. 08cv00086 (ESH) |
| ELAINE L. CHAO, | ) | |
| Secretary, Department of Labor, | ) | |
| | ) | |
| Defendant. | ) | |

DECLARATION OF DALIAH N. HOLMES

I, Daliah Holmes, do hereby declare and state under the penalty of perjury:

1.    I am presently employed as Human Resources Specialist in the Office of the
Inspector General at the U.S. Department of Labor.  I began this position on February 4, 2008.

2.    From October 6, 2002 through February 3, 2008, I was employed as a Human
Resources Specialist in the Office of Executive Resources and Personnel Security (OERPS),
which is part of the Human Resources Center, in the Office of the Assistant Secretary for
Administration and Management (OASAM), at the U.S. Department of Labor (DOL) in
Washington, D.C.

3.    From February 27, 2000 through October 5, 2002, I was employed as a Human
Resources Specialist in the Mine Safety and Health Administration, U.S. Department of Labor.

4.    OASAM is a DOL agency that provides administrative support, including staffing
services for vacancy announcements to the Office of Administration and certain DOL client
agencies.

1

5.      I was the OASAM Human Resources Specialist responsible for staffing vacancy announcement DOL-SES-ILAB-06, which was a Senior Executive Service (SES) position in DOL's Bureau of International Labor Affairs (ILAB).

6.      In providing staffing services for vacancy announcement DOL-SES-ILAB-06-21, I was responsible for reviewing the application packages and conducting the qualifications examination.  I was also responsible for notifying each applicant about whether he/she advanced in the process or did not pass certain stages of the application process.

7.      During my eight years as a Human Resources Specialist at the Department of Labor, I have staffed approximately 40 SES positions.

8.      The Department of Labor's process for reviewing and selecting SES positions is as follows:

   a.      The basic qualifications are determined by a Human Resources Specialist;

   b.      Qualified applicants are referred to a ranking panel;

   c.      The ranking panel determines candidates who will be referred to the Selecting Official;

   d.      The Selecting Official makes a tentative selection;

   e.      The Secretary of Labor approves or disapproves the selection;

   f.      A Qualifications Review Board appointed by the Office of Personnel Management approves or disapproves the qualifications of the tentative selectee;

   g.      A final offer of employment can be made.

   h.      The DOL process is consistent with the Federal personnel regulations at 5 C.F.R. § 317 Part D and 5 C.F.R. § 317.502,

9.    I have reviewed my responses to the witness questionnaire that I provided during DOL's investigation of Mr. Brookens' formal complaint of discrimination in Case No. 07-11-027. *See* Exhibit F-2, attached.

10.    I have also reviewed the on-line application package submitted by Mr. Brookens for the DOL-SES-ILAB-06-21 vacancy. *See* Exhibit F-3, attached.

11.    The vacancy announcement for DOL-SES-ILAB-06-21 required applicants to provide responses to these three Mandatory Technical Qualifications:

(1)    Knowledge of U.S. labor, economic and trade laws and policies and their impact on U.S. employment;

(2)    Ability to identify and resolve successfully complex legal and policy issues related to trade and labor issues;

(3)    Ability and experience overseeing international technical assistance and cooperation programs.

*See* Exhibit F-4, p. 3, attached.

12.    The vacancy announcement for DOL-SES-ILAB-06-21 required applicants to address these five Mandatory Executive Core Qualifications: (1) Leading Change; (2) Leading People; (3) Results Driven; (4) Business Acumen; and (5) Building Coalitions/Communications. *See* Exhibit F-4, pp. 3-4.

13.    The vacancy announcement for DOL-SES-ILAB-06-21 stated that "Candidates must possess a broad experience that involves novel and complex issues related to labor, economic, and trade issues. This experience must have been at a major management level (normally equivalent to the GS-15 level in the Federal service)." *See* Exhibit F-4, p. 4.

14.    The vacancy announcement for DOL-SES-ILAB-06-21 stated that "Candidates will be evaluated upon their qualifications.  In addition applications will be evaluated upon their responses to any Mandatory Technical Qualifications and the Executive Core Qualifications." *See* Exhibit F-4, p. 4.

15.    In evaluating the application package of Mr. Brookens, I determined that he was not minimally qualified for this SES position.  Because Mr. Brookens had been a GS-12 employee since 1990, he had not achieved the executive experience needed for this SES position. *See* Exhibit F-2, p. 9.

16.    On October 16, 2006, I sent Mr. Brookens an e-mail message notifying him that he would not be further considered for this position because he did not possess significant senior level management experience.  *See* Exhibit F-3, p. 1.


Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on *April 18*_____, 2008        *Daliah N. Holmes*
                                           _____
                                           Daliah N. Holmes

**WITNESS AFFIDAVIT**

I, (name) _Daliah Holmes_

am an _✓_ employee of ____ applicant to ____ former employee of the U.S. Department of Labor's:

(Agency) _OASAM_

(Office) _Executive Resources and Personnel Security_

(Division)_____

(Branch)_____

Located in (city and state) _Washington, DC_

In the capacity of (show both your organization title and the classification of your job, if different):
_Human Resources Specialist_

Grade _13_ between (date) _10/19/03_ and (date) _present_

My telephone number during working hours is: _202-693-7704_

**I HAVE BEEN ADVISED OF THE FOLLOWING:**

I am required by Federal regulations and Department of Labor policy to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation into a complaint of discrimination against the Department of Labor. I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully discloses all of my firsthand knowledge having a bearing on the merits of the complaint.  My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor.  This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond.  In addition, the Complainant and the appropriate Department of Labor officials involved in the EEO complaint process will receive the entire investigative report.  I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate.  I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process (so long as my choice does not result in a conflict of interest).  I have ____ have not _✓_ chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the EEO complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly _✓_ swear or ____ affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and concerns raised by the investigator.

CRC Form 10
Rev. 3/03)

Exhibit _F2_
Page _1_ of _14_ Pages

Page _1_ of _6_ Pages

Initials _DH_



Witness Questionnaire
Witness: **Daliah Holmes**
EEO Complaint of Benoit Brookens Case No. 07-11-027

Please respond to the following request for information relative to this formal complaint of discrimination, using the enclosed affidavit form. Number and initial each page and initial any corrections made to any items in your affidavit. Prepare your response in narrative form to best relate what occurred in this complaint. As you describe circumstances and facts in a time sensitive chronology, give specific and detailed information so that someone who is not familiar with the situation can understand what it is you are trying to explain/demonstrate. In other words, your affidavit should paint a picture for the person who will make the decision relative to the issue raised in this complaint.

Please provide your response to the following:

1. Please state for the record your name, race, EEO activity (if any), position and location within the Department of Labor.

   **My name is Daliah Holmes, my race is African American. I have no EEO activity. Currently my position is Human Resources Specialist.**

2. Please describe your role/responsibilities pertaining to the allegations under investigation.

   **My role pertaining to the allegations under investigation is Human Resources Specialist in charge of staffing the position.**

3. Were you aware of Mr. Brookens' race?

   **No, I was not aware of Mr. Brookens' race.**

4. Were you aware of the Complainant's previous EEO complaints or past opposition to activities prohibited under the EEO regulations (e.g. allegations of discrimination)? If so, when/how did you become aware?

   **I am aware of only one EEO complaint that Mr. Brookens filled. This was an EEO complaint against another SES position in which I was the Human Resources Specialist who staffed the position. Outside of that case I am unaware of any other previous EEO complaints.**

Exhibit F2
Page 2 14 Pages



5. The Complainant testified that on October 17, 2006, you told him that he lacked "significant senior level managerial experience." Please respond in detail. Please submit any documentary evidence (policies or procedures) available to support your response.

**On October 17, 2006 I forwarded the complainant an email communication regarding the status of his application. I have never spoken with the complainant in regard to this position or any other position.**

**The vacancy announcement states the following:**

**Candidates must possess a broad experience that involves novel and complex issues related labor, economic, and trade issues. This experience must have been gained at a major management level (normally equivalent to the GS-15 grade level in the federal service).**

**As a result of the above criteria Mr. Brookens received the email communication forwarded to him.**

6. To the best of your knowledge, why was Mr. Brookens denied certification? If the DOL Online Opportunities Recruitment System (DOORS) process impacted this decision, please explain how DOORS works? Your response here must be sufficiently specific to permit the Complainant to mount an evidentiary challenge to any of the explanations offered by the agency for its actions.

**Mr. Brookens was not denied certification. The certification process occurs when the applications found minimally qualified are reviewed by an evaluation panel. The panel must then indicate who will be certified (referred to the selecting official for further consideration)**

**Mr. Brookens application was not found minimally qualified based on my review and was not presented for the panels review.**

**The DOORS process had no impact on the decision of Mr. Brookens application. Our office only uses DOORS to receive the resume and essay responses. We do not use the DOORS system to qualify candidates. All applications are manually reviewed and a determination is made regarding the applicants qualification for the position.**





7. Please provide name(s), race, and EEO activity (if any) of the candidates certified and not certified for the position of Director, Office of Trade and Labor Affairs, advertised under Vacancy Announcement DOL-SES-ILAB-06-21.

**\* Individuals Certified by the Panel**

**Patrick Coleman**
**Linda Droker**
**Gregory Schoepfle**


**\* Individuals Not Certified by the Panel**

**Jeffrey Goode**

**\* I am unaware of the EEO activity of any of the above individuals. In regard to the race of the above applicants I have generated a report from the DOORS system. Below outlines the Demographics of the applicants who responded to demographic questions when they applied. Of the 7 applicants who applied only 6 provided responses.**

**Demographics: 1 Hispanic Male, 3 White Males, 1 White Female and 1 African American.**

**Please note that I do not retrieve this information for any purpose during the application review process.**

8. Please provide any other relevant information that you wish to add.

**I am always available and responsive to candidates who have questions during the recruitment process. After the October 17 communication was forwarded to Mr. Brookens I was never contacted by him expressing any issues surrounding the qualification determination I had made.**

**There were no issues raised by Mr. Brookens nor were there any requests from him to elevate his application submission to a higher level for additional review.**



Exhibit F 2
Page 4 of 14 Pages



9. Have you received any assistance in preparing this statement and/or has your statement been reviewed by anyone other than an attorney from the Office of the Solicitor or a private legal representative?  If yes, please provide the name, title, and contact information for any such individual(s).

**No, I have not received any assistance in preparing this statement.**



Exhibit _F 2_

Page _5_ of _14_ Pages

Affidavit of: _Daliah Holmes_____

I have reviewed this statement, which consists of **6** ~~2b~~ pages, and hereby solemnly ____ swear ____ affirm that it is true and complete to the best of my knowledge and belief.  I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_Daliah Holmes_____    _5/29/07_____
(Signature of Affiant)                                         (Date)

Signed before/received by me at (Street and City) _200 Constitution Ave, NW Washington DC_

on this ____ day of _May 29th,_____ , 20 _07_              _20210_

_Rodney J Sanchez_____
(Signature of Investigator/Witness)

Exhibit __F2__
Page __6__ of __14__ Pages

CRC Form 10
(Rev. 3/03)

Page __6__ of __6__ Pages

Initials _DH_

This page used to separate documents.

Exhibit _F2_

Page _7 14_ Pages

# WITNESS AFFIDAVIT

I, (name) _Daliah Holmes_

am an ✓ employee of ____ applicant to ____ former employee of the U.S. Department of Labor's:

Agency _OASAM_

(Office) _Office of Executive Resources and Personnel Security_

(Division) _____

(Branch) _____

Located in (city and state) _Washington DC_

In the capacity of (show both your organization title and the classification of your job, if different):

_Human Resources Specialist_

Grade _13_ between (date) _10/19/03_ and (date) _present_

My telephone number during working hours is: _202-693-7704_

## I HAVE BEEN ADVISED OF THE FOLLOWING:

I am required by Federal regulations and Department of Labor policy to cooperate fully with the investigator who has been assigned to conduct an impartial and appropriate investigation into a complaint of discrimination against the Department of Labor. I must provide a statement for the investigative record that is true and complete to the best of my knowledge and belief and fully discloses all of my firsthand knowledge having a bearing on the merits of the complaint. My statement is made under oath (or affirmation), without a pledge of confidentiality, in accordance with the rules, regulations, policies, and procedures of the Equal Employment Opportunity Commission and the Department of Labor. This means that any employee(s) whom I accuse of discrimination or other acts of impropriety may be shown this statement or relevant portions and be given an opportunity to respond. In addition, the Complainant and the appropriate Department of Labor officials involved in the EEO complaint process will receive the entire investigative report. I have the right to review my statement prior to signing it and may make initialized corrections if it is incomplete or inaccurate. I have the right to receive a copy of the signed statement.

I am entitled to representation by a person of my choice during my participation in the EEO process (so long as my choice does not result in a conflict of interest). I have ____ have not ✓ chosen a personal representative at this time.

EEO regulations specifically protect participants in the EEO complaint process from any acts of reprisal, discrimination, coercion, harassment, restraint, or interference as a result of their participation in the EEO complaint process.

Having been advised of the above information about my role as a witness in the investigative process, I solemnly ✓ swear or ____ affirm that the statement to follow is true and complete to the best of my knowledge and belief, and fully addresses the issues and concerns raised by the investigator.

Exhibit _F2_

Page _8_ of _14_ Pages

Page _1_ of _3_ Pages

Initials _DH_

Affidavit of: _Daliah Holmes_

In reviewing the applicants who were found qualified below outlines the caliber of experience possessed; which Mr. Benoit lacked.

Of the 7 applicants who applied 4 were GS-15's, 1 was a former SES member, and one was not qualified due to being outside the area of consideration, 1 (Mr. Benoit) who was found to lack significant senior level managerial experience. All applicants who are GS-15 employees have been at that level since 2002 at the latest.  At the GS-15 level these applicants have held positions of significant responsibility within their organizations. All of the applicants held Director Positions within their organizations and the scope of the responsibility were of a wide impact.

Mr. Benoit's application reflects that he is a GS-12 and has been such since 1990.  At that grade level it is not possible for him to possess the level of experience needed for this position.

CRC Form 10
(Rev. 3/03)

Exhibit _F2_
Page _9_ of _14_ Pages

Page _2_ of _3_ Pages
Initials _DH_

Affidavit of: _Daliah Holmes_

I have reviewed this statement, which consists of _3_ pages, and hereby solemnly _✓_ swear _____ affirm that it is true and complete to the best of my knowledge and belief. I understand that the information I have given will not be held confidential, will become a permanent part of the record of investigation, and may be shown to any necessary party.

_Daliah Holmes_                                              _7/16/07_
(Signature of Affiant)                                        (Date)

Signed before/received by me at (Street and City) _200 Constitution Ave. NW W.D.C._

on this _16_ day of _July_, 20_07_

_Naomi Barry-Perez for Roderick Faulkner_
(Signature of Investigator/Witness)

CRC Form 10
(Rev. 3/03)

Exhibit _F2_

Page _10_ of _14_ Pages

Page _3_ of _3_ Pages

Initials _DH_

**Holmes, Daliah - OASAM**

From:                        holmes.daliah@dol.gov
                             Tuesday, October 17, 2006 8:20 AM
                             Brookens, Benoit - ILAB
                             Holmes, Daliah - OASAM
**Subject:**                 Important information regarding your application

Dear BENOIT BROOKENS, II:

Your application for vacancy announcement number DOL-SES-ILAB-06-21 Director, Office of
Trade and Labor Affairs, ES-0110-99 in Washington DC  has been reviewed.

It has been determined that you do not possess significant senior level managerial
experience, and therefore will not be considered further for this position.

We appreciate your interest in Bureau of International Labor Affairs OERPS and hope that
you will consider us again in the future.

Sincerely,
Daliah Holmes
U.S. Department of Labor

Exhibit _F3_

Page _1_ of _15_ Pages

1

## U.S. Department of Labor
## All Applicant Data Report

Announcement Number: DOL-SES-ILAB-06-21
**Position Title:** Director, Office of Trade and Labor Affairs

Name: BENOIT  BROOKENS, II
SSN:
Address1: 460 TAYLOR STREET, NE
Address2: APT. G-44
City: WASHINGTON,
State: DC
Post Code: 20017
Plus4:
Phone: 202/693-4868
Email: brookens-benoit@dol.gov
United States Citizen: Y
Date of Birth: Jan 1, 1900
**Veteran Preference:** NV
**Start of Service:**
**End of Service:**

**Assessment Questions**
What locations do you wish to apply to?
Washington DC

What Grades do you wish to apply to?
99

**All Grades**

1. Knowledge of U.S. labor, economic and trade laws and policies and their impact on
U.S. employment
**Answer:** My legal background, (JD Columbia University School of Law and a Master of Law,
(LLM) George Washington University School of Law) and economic assignments as a
financial economist at the Department of State, Assistant Commercial Attaché, U.S.
Embassy, The Netherlands, and ten years in private law practice provide me with
extensive technical and managerial experience in international trade, economics, and
trade laws.

As an economist, my assignments on interagency committees and international trade
delegations as well as my position as Assistant Commercial Attaché U.S. Embassy The
Hague, Netherlands-- also provided me with experience and publication expertise in the

Exhibit _F3_
Page _2_ of _15_ Pages

## U.S. Department of Labor
## All Applicant Data Report

**Announcement Number:** DOL-SES-ILAB-06-21
**Position Title:** Director, Office of Trade and Labor Affairs
international trade area. My U.S. embassy position provided first level supervisory
responsibilities for the Dutch professional staff in the Embassy Commercial Section and
gave me second level supervisory duties for the 20 staff members of the Visit US
Information Service in Amsterdam. In my U.S. Embassy position in The Hague,
Netherlands, I  also served as Chairman of the U.S.-Netherlands Chamber of Commerce for
the travel industry, a major European trade association, which included the regional
vice-presidents for the Dutch and American travel industry  American Express, Wagon-Lits
Cook and representatives from the travel agencies, airlines, rail, and bus carriers.

As a current member of the Interagency Generalized System of Preferences (GSP) Products
Subcommittee, I have a global perspective on US international trade policy and its
impact on domestic U.S. employment. My publications on  Diplomatic Protection of Foreign
Economic Interests  and  Labor aspects of the North American Free Trade Agreement (NAFTA)
are indicia of my interest and expertise.

**2.** Ability to identify and resolve successfully complex legal and policy issues related
to trade and labor issues
**Answer:** Resolving Complex Legal and Policy Issues.

As a member of the GSP Subcommittee which includes both a worker rights and products
component and previously having served with the State Department s International
Organizations  Bureau for the United Nations Economic and Social Council (UNESCO), I
have a global perspective on identifying and resolving complex policy issues related to
trade and labor issues for US manufacturer and employees. I am currently involved in
U.S. preparations for trade preference legislation renewal and policy formulation and
interagency discussions on GSP product linkages.  This includes both product and
country graduation issues for which 700 comments have been received from the 13
affected countries and industries.  During my tenure in the U.S. Department of Labor, I
acquired an understanding of the policy debate and U.S. efforts to link ILO labor
standards to trade sanctions n the World Trade Organization (WTO).  My prior work as a
State Department member on the Inter-Agency Expropriation Committee provides me insight
into U.S. investment policy and U.S. strategic economic interests.  My teaching
assignments at the University of Virginia-Falls Church and while assigned to the U.S.
Embassy The Hague, Netherlands provided me with a prospective on U.S. programs and those
of other governments in trade, investment, and finance.  Working with the GSP program
for products this year provided me experience in working with a mixed worker-
rights/products case intertwining worker rights violations and adverse impact
implications for products.  Reflecting my knowledge of the programs and their foreign
policy implications, I have been invited to make presentations to professional
organizations which include topics on  International Trade Sanctions and Worker Rights
Violations  to the D.C. and Philadelphia Bar Associations.  This melding of program
information would be useful in working with upcoming strategic alliances, for
of unions and industry challenging China currency and labor policies in the World Trade

Exhibit  B

Page  3  of  15  Pages

## U.S. Department of Labor
## All Applicant Data Report

**Announcement Number:** DOL-SES-ILAB-06-21
**Position Title:** Director, Office of Trade and Labor Affairs
Organization.

When evaluating the bottom line, I have had the ability to achieve results.  I took a leadership role in negotiating the U.S.-British Virgin Islands and U.S.-Cuban Fishing Agreements.  My creativity contributed to the successful exchange of U.S. and multinational food resources techncial assistance for land locked African nation and their support of the U.S. proposal for deep seabed mining in the Law of the Seas Negotiation.

**3.** Ability and experience overseeing international technical assistance and cooperation programs.
**Answer:** Overseeing Technical Cooperation.

My ability to oversee technical assistance and cooperative programs is reflected in my overseeing of the State Department Labor Attache program at the U.S. Department of State, service an a Commercial Officer at the U.S. Embassy, The Hague, Netherlands--to provide export assistance and guidance for U.S. manufacturers--and in my leadership in the GSP program to extend outreach to countries in the Middle East and Africa. My ability to get the job done in an environment of intergovernmental advocacy is reflected in Interagency support for my Department of Labor position achieving consensus in a recent GSP policy decision.  My agency initially was the only advocate for a position on 100 of 120 product petitions. However, upon conclusion of the review, all agencies, unanimously adopted the position of the Labor Department.

During my assignment to the Office of Oceans and Fisheries, U.S. Department of State, I was able to utilize my expertise in foreign policy formulation to reach agreement in seven months for the U.S. British Virgin Island Reciprocal Fishing Agreement.  Prior to my involvement, the direct discussions, between Washington and London, had been stalled for seven years.

**4.** Executive Core Qualification: Leading Change
**Answer:** Results Driven.

My formal education a Masters degree in Business Administration and work experience in both business and government for more than two decades has provided me with the ability to be results oriented and to watch the bottom line for efficiency and effectiveness. As General Counsel for the African Business and Economics Review (ABER), I had, for example, helped plan and oversee the publishing and distribution contracts for cooperative publishing arrangements in Africa and correspondents in Europe. This was to assure that the legal aspects of the business were properly monitored and effective.

For the first time since 1986, the U.S. initiated a procedure to graduate countries from the GSP program to make the program for beneficial to less industrialized

# U.S. Department of Labor
## All Applicant Data Report

**Announcement Number:** DOL-SES-ILAB-06-21
**Position Title:** Director, Office of Trade and Labor Affairs

countries.  Not only was my ability to lead change and positively focus this long
overdue exercise, I was able to help shape the involvement of the leadership of my own
agency to meld a comprehensive policy for what is clearly a historic global economic
initiative.

**5.** Executive Core Qualification: Leading People
**Answer:** Leading People.

My supervisory positions in the U.S. Embassy, the Hague, service as Director, Finance
and Accounting Group of M.B.A. Associates, and leadership role for the international
and economic regulatory sections while in private law practice, equipped me with the
ability to design and implement organizational missions and strategic visions. My
service on the board of directors of credit unions, religious, and civic organizations
provide me with oversight and management responsibilities for strategic leadership and
planning. My work with employees and supervisors in both the government and private
sector has provided me with insight into the needs and objectives for effective equal
employment, labor, and personnel management abilities.

**6.** Executive Core Qualification: Results Driven
**Answer:** Results Driven.

My formal education a Masters degree in Business Administration and work experience in
both business and government for more than two decades has provided me with the ability
to be results oriented and to watch the bottom line for efficiency and effectiveness.
In oversight for the US GSP program for the Labor Department, I have to assure U.S.
workers and industry that their interests are being protected--no greater that six
percent (6%) adverse impact on employment and profits, while shaping the programs
operation to meet the U.S. global commitment to assist developing nations in the United
Nations Conference on Trade and Development (UNCTAD) and the World Trade Organization
(WTO) duty-free, quota-free initiative. In the  private sector, as General Counsel for
the African Business and Economics Review (ABER), overseeing distribution and
publishing contracts for cooperative publishing arrangements in Africa and
correspondents in Europe was required. I have a track record of effectiveness, for
example, at the U.S. Embassy in The Netherlands, to assure increased business and trade
promotion benefits for U.S. firms.

**7.** Executive Core Qualification: Business Acumen
**Answer:** Business Acumen.

My business acumen is reflected in my over ten (10) years in the private sector,
heading the finance and accounting section of a New York City consulting business, and
serving as a director of two credit unions, and on the board of civic and religious
groups, provide me with business skills and abilities to enhance organizational

Exhibit F3
Page 5 of 15 Pages

## U.S. Department of Labor
### All Applicant Data Report

**Announcement Number:** DOL-SES-ILAB-06-21
**Position Title:** Director, Office of Trade and Labor Affairs
strategic planning and operations.  Managing business private organizations requires
financial management skills and talent to oversee a profitable economic entity. My
teaching and practical skills in business finance and accounting contribute to my
ability to be both an effective manager and an efficient business leader.

**8.** Executive Core Qualification: Building Coalitions/Communication
**Answer:** Building Coalitions/Communications.

My ability to serve as an advocate and negotiator with individuals and organizations,
in the international context, is reflected in my successful negotiation of a fishing
agreement for the U.S. and British Virgin Islands. Working in the U.S. Embassy in
Holland I build industry coalitions to establish export priorities reflecting the needs
of the Department of Commerce and U.S. industry while maintaining the diplomatic
objectives of the U.S. Embassy in The Netherlands for good relations with the host
government while maintaining market-share expanding export opportunities for U.S.
business and workers. My service on interagency committees all of my professional
career has provided me expertise and subject matter experience in building coalitions to
achieve objectives from different agency perspectives, reflecting and respecting their
different constituencies and political pressures, while not losing sight that the
ultimate beneficiary, for whom we all work, is the American people.

**9.** Have you completed at least 21 semester hours in economics AND 3 semester hours in
statistics, accounting, or calculus at a college or university?
**Answer:**
1. Yes

**10.** Where did you learn about this Department of Labor job opportunity? (check all that
apply)
**Answer:**
3. DOL Employee (former or current)

## Certification of Course

I certify that a transcript of my courses of the required 21 semester hours in economics, and three semester hours in statistics, accounting, or calculus at a college or university is on file in my offical personnel folder.

Benoit Brookens
September 22, 2006

Exhibit _F3_

Page _7_ of _15_ Pages



**Department: Department Of Labor**
**Agency: Bureau of International Labor Affairs**
**Sub Agency: U.S. Department of Labor**

**Job Announcement Number:**
**DOL-SES-ILAB-06-21**

Overview    

# Director, Office of Trade and Labor Affairs

**Salary Range:** 109,808.00 - 165,200.00 USD per year

**Series & Grade:** ES-0110-99/99

**Promotion Potential:** 99
**Who May Be Considered:**
Open to all Qualified Federal Employees

**Open Period:** Wednesday, September 06, 2006
to Tuesday, September 26, 2006

**Position Information:** Full Time Permanent

**Duty Locations:** 1 vacancy - Washington DC

IF NECESSARY, PERMANENT CHANGE OF DUTY STATION (PCS) WILL BE PAID BY DEPARTMENT OF LABOR, BUREAU OF INTERNATIONAL LABOR AFFAIRS FOR THE SELECTED CANDIDATE.

**Job Summary:**
**Join the team!** Begin a challenging career with the U.S. Department of Labor (DOL), and you will help shape the workforce of tomorrow. DOL offers rewarding opportunities to contribute to a noble mission; to serve and protect American workers, prepare them for new and better jobs, and to ensure the safety and fairness of American workplaces.

U. S. Department of Labor
Bureau of International Labor Affairs
Washington, DC

**Key Requirements:**
- Subject to a full field security investigation
- Must complete 1 year SES probationary period if not previously completed.
- Subject to Federal financial disclosure requirements

Exhibit _F4_

Page _1_ of _1_ Pages

## Duties

**Major Duties:**
Incumbent of this position serves as Director of the Office of Trade and Labor Affairs (OTLA) in the Bureau of International Labor Affairs (ILAB) with primary responsibility for providing advice on international economic policy, conducting research, negotiating and administrating the labor provisions of free trade agreements, and overseeing technical cooperation activities. The incumbent serves as an expert and advisor on trade and international economic policy and foreign economic research matters arising under the trade agreements program and related bilateral, regional, or multilateral trade issues; administers the program of the Labor Advisory Committee for Trade Policy and Trade Negotiations; and directs and supervises the staff of OTLA. Incumbent is responsible for initiating, developing, and carrying out polices and programs designed to secure the most effective participation of the Department in economic programs of certain international organizations, particularly the WTO, the ILO, the OECD, and other international organizations concerned with international economic policy matters. Incumbent participates in conferences and meetings with the Secretary, Deputy Secretary, Deputy Undersecretary, Assistant Secretaries, and other top officials of the Department, with officials of other Federal agencies, particularly the Office of the United States Trade Representative (USTR) and the State Department, with officials of foreign countries, and with representatives of labor organizations and industry regarding international economic matters.

As Director, incumbent directs and coordinates the activities of the three program groups within the Office of Trade and Labor Affairs: the Division of Trade Policy and Negotiations, which is engaged in the development of Departmental positions on international trade and investment policy matters and in assuring the adequate reflection of Department interests in U.S. participation in international trade and investment negotiations and other fora; the Division of Economic and Labor Research, which conducts analytical research on the U.S. employment impact and income effects of international trade and investment flows and policy initiatives and labor rights reports for free trade agreements; and Division of Trade Agreement Administration and Technical Cooperation, which serves as the point of contact for submissions under labor provisions contained in trade agreements and develops and implements cooperative activities programs under those agreements.

The executive furthers the President's Management Agenda (PMA) to improve management and performance through the execution of Initiatives contained in the PMA.

For detailed information on the PMA and these Initiatives, click on the following link:
http://www.whitehouse.gov/omb/budget/fy2002/mgmt.pdf

## Qualifications and Evaluation

Exhibit _F4_

Page _2_ of _1_ Pages

**Qualifications:**

All applicants MUST separately address the mandatory technical qualifications (MTQs) and Executive Core Qualifications (ECQs). Applicants will be required to address the MTQs and ECQs when applying on line.

Responses to ECQs must not exceed 10 pages.  For additional guidance, applicants may visit the Office of Personnel Management's Guide to Senior Executive Qualifications located at: http://www.opm.gov/ses/handbook.html.  Applicants are encouraged to follow the Challenge, Context, Action, and Result model outlined in the guide.

Current/Former Career SES or SES Candidate Development graduates who have been certified by OPM must address the MTQs, but need not address the ECQs. In order to successfully complete the online application process you must input the term, "noncompetitive eligible" in the text boxes for each of the ECQs. You must submit a Standard Form 50 that documents your SES Career appointment or a copy of your OPM Candidate Development certification.

MANDATORY TECHNICAL QUALIFICATIONS (MTQ's):

1.  Knowledge of U.S. labor, economic and trade laws and policies and their impact on U.S. employment.

2.  Ability to identify and resolve successfully complex legal and policy issues related to trade and labor issues.

3.  Ability and experience overseeing international technical assistance and cooperation programs.

MANDATORY EXECUTIVE CORE QUALIFICATIONS (ECQs):

1. Leading Change:  This factor involves the ability to ensure that key national and organizational goals, priorities and values are considered in making program decisions and exercising leadership to implement and to ensure that the organization's mission and strategic vision are reflected in the management of its people.

2. Leading People: This factor involves the ability to design human resource strategies to meet the organization's mission, strategic vision, and goals to achieve maximum potential of all employees in an equitable manner.

3. Results Driven: This factor involves the ability to establish program and/or policy goals and the structure and processes necessary to implement the organization's mission and strategic vision.  It includes ensuring that programs and policies are being implemented and adjusted as necessary, that appropriate results are achieved, and that a process for continually examining the quality of program activities is in place.

Exhibit ___F4___

Page _3_ of _7_ Pages

4. Business Acumen: This factor involves the ability to acquire and administer financial, material, and information resources as well as to accomplish the organization's mission. This includes managing the budgetary process; overseeing procurement and contracting procedures and processes; integrating and coordinating logistical operations; overseeing the allocation of financial resources; establishing and assuring use of internal financial systems controls; and ensuring the development and utilization of management information systems and other technological resources to meet the organization's needs.

5. Building Coalitions/Communication: This factor involves the ability to explain, advocate and negotiate with individuals and groups internally and externally as well as to develop an expansive professional network with other organizations and organizational units.

The Department of Labor does not recognize academic degrees from schools that are not accredited by an accrediting institution recognized by the Department of Education. Any applicant falsely claiming an academic degree from an accredited school will be subject to actions ranging from disqualification from federal employment to removal from federal service.

Candidates must possess a broad experience that involves novel and complex issues related to labor, economic, and trade issues. This experience must have been at a major management level (normally equivalent to the GS-15 level in the Federal service).

In addition, candidates must possess a Bachelor's degree in economics that included at least 21 semester hours in economics and 3 semester hours in statistics, accounting, or calculus. Appropriate professional experience, combined with education that included the specified course work, may be substituted for the Bachelor's degree.

**How You Will Be Evaluated:**
Candidates will be evaluated based upon their qualifications. In addition applicants will be evaluated based upon their responses to any Mandatory Technical Qualifications and the Executive Core Qualifications.

To preview questions please <u>click here</u>.

┌─────────────────────────────────┐
│ Benefits and Other Information   │
└─────────────────────────────────┘

**Benefits:**

The Department of Labor offers a variety of benefits and workplace enhancements.

For details click: <u>BENEFITS</u>

Exhibit F4

Page 4 of 1 Pages

Members of the Senior Executive Service accrue eight (8) hours of annual leave and four (4)hours of sick leave per pay period.

**Other Information:**

**How to Apply**

**How To Apply:**

Paper applications submitted without prior approval from the agency point of contact will be handled as incomplete applications and will not be considered.

If you require assistance, contact the agency point of contact identified within the vacancy announcement.

***STEP ONE - (Online Resume – USAJOBS)***

You must create a user account and at least one Federal resume at USAJOBS. Information you provide in USAJOBS is general information completed by all applicants. The information you provide and your Federal resume will become part of your application and will automatically be transferred to the DOORS system when you apply on-line.  You may edit your resume up until midnight EST of the announcement close date.

***STEP TWO - (Vacancy Specific Questions – DOORS)***

In DOORS, you will answer vacancy specific questions necessary to evaluate your qualifications for the specific job to which you are applying. When completed, the information you provided at USAJOBS and the answers to the DOORS questions will become your application. You may edit your answers up until midnight EST of the announcement close date.  After the vacancy closes the HR office will evaluate your application package.
***STEP THREE - (Supporting Documentation)***

All required supplemental information, as specified under the required documents section of this vacancy announcement must be received by midnight Eastern Standard Time (EST) on the closing date of the vacancy announcement. Documentation forwarded to the DOORS Help Desk will not meet the submission requirements for this position.

Exhibit F4

Page 5 of 7 Pages

Your application will be considered incomplete and YOU WILL BE FOUND INELIGIBLE, if you fail to submit the required documentation, as specified under the required documents section by midnight Eastern Standard Time (EST) on the closing date of the vacancy announcement.

DOORS is compatible with the following Internet Web Browsers: Netscape; IE versions 5.x and above; and Safari 1.0 and above on Mac.

**Required Documents:**
DOCUMENTS SHOULD BE FAXED TO 202-693-7705 Attn: Daliah Holmes

_ SF - 50 Documentation of career SES appointment (if applicable)
_ Certificate of completion of OPM certified SES candidate program. (if applicable)
_ Copy of most recent performance appraisal (optional)
- Copy of SF- 50 documenting federal status (mandatory)
- documentation of required course work (mandatory)

**Contact Information:**
    Daliah Holmes
    Phone: 202-693-7704
    Fax: 202-693-7705
    TDD: 202-693-7758
    Email: holmes-daliah@dol.gov

    Or write:
    U.S. Department of Labor
    200 Constitution Ave., NW
    C-5508
    Washington, DC 20210
    Fax: 202-693-7705

**What To Expect Next:**
Applicants who are current or former career SES or have completed an OPM approved SES candidate development program will be referred to the selecting official noncompetitively. All other applicants will be evaluated by an Agency rating panel, and the most highly qualified candidates will be referred to selecting official.

| EEO Policy Statement |

The United States Government does not discriminate in employment on the basis of race, color, religion, sex, national origin, political affiliation, sexual orientation, marital status, disability, age, membership in an employee organization, or other non-merit factor.

Exhibit _F 4_

Page _6_ of _7_ Pages

**Reasonable Accommodation Policy Statement**

Federal agencies must provide reasonable accommodation to applicants with disabilities where appropriate. Applicants requiring reasonable accommodation for any part of the application and hiring process should contact the hiring agency directly. Determinations on requests for reasonable accommodation will be made on a case-by-case basis.





**Send Mail to:**
U.S. Department of Labor
200 Constitution Ave., NW
C-5508
Washington, DC 20210
Fax: 202-693-7705

**Questions?**

**For questions about this job:**
Daliah Holmes
Phone: 202-693-7704
Fax: 202-693-7705
TDD: 202-693-7758
Email: holmes-daliah@dol.gov

PRINT

**USAJOBS Control Number:** 733066

Exhibit _____ F4

Page __7__ of __7__ Pages

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                          )
BENOIT BROOKENS,                                          )
                                                          )
                    Plaintiff,                            )
                                                          )
          v.                                              )        Civil Action No. 08-0086 (ESH)
                                                          )
ELAINE L. CHAO,                                           )
Secretary, Department of Labor                            )
                                                          )
                    Defendant.                            )
_____)

**<u>FINAL JUDGMENT</u>**

UPON CONSIDERATION of Defendant's motion to dismiss amended complaint, or in

the alternative, for summary judgment, any opposition thereto, and the entire record herein, it is

hereby

ORDERED that the motion is GRANTED, and it is further

ORDERED that this case is dismissed for the reasons set forth in Defendant's supporting

memorandum.

So ordered this _____ day of _____ 2008.

This is a final and appealable order.


                                              _____
                                              ELLEN S. HUVELLE
                                              United States District Judge