## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

BENOIT BROOKENS                    *

              Plaintiff            *

    v.                         * Civil Action No. 08-0086 (ESH)

                       *

ELAINE L. CHAO                     *
Secretary, U.S. Department of Labor     *

            Defendant          *

_____     *

## PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR
## IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

      The Plaintiff by and though counsel respectfully opposes the motion filed by the

Defendant to dismiss or, in the alternative, for summary judgment and in support thereof

states the following[1]: (1) Count One of Plaintiff's First Amended Complaint was timely

filed; (2)  Counts One through Four of the First Amended Claim properly state claims of

employment discrimination as well as retaliation;  and (3)  the Plaintiff is eligible for the

positions for which he was not selected and may assert said non-selection before this

court. In further support of his opposition, the Plaintiff relies on the Memorandum

attached hereto.

_____

[1]  The Plaintiff will at this time voluntarily withdraw Count Five of his First Amended Complaint for Damages.

Respectfully Submitted,

 /s/ B. K. Cobbina                          
Boniface K. Cobbina, Esquire
DC Bar No. 347757
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036
202-463-6900
Bkc215@gmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

BENOIT BROOKENS                          *

               Plaintiff            *

      v.                              * Civil Action No. 08-0086 (ESH)

                          *

ELAINE L. CHAO
Secretary, U.S. Department of Labor   *

             Defendant           *

_____     *

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

Factual Allegations

The factual allegations are detailed in Plaintiff's First Amended Complaint for Damages filed with the court. Briefly stated, the Plaintiff is African-American and over 40 years of age and has been employed with the U.S. Department of Labor as an international economist (GS-12) since 1990. The Plaintiff has both law and graduate business degrees from Columbia University, New York, NY from which he graduated in 1973; his background and experience include practicing law and teaching as an adjunct professor at the University of Virginia, Falls Church, VA campus. Since his employment with the U.S. Department of Labor began in 1990, he has applied for and been denied numerous promotional and advancement opportunities and he remains an International

Economist, GS-12. Paragraph 16 of the Amended Complaint details the discriminatory conduct to which the Plaintiff has been subjected as follows:

Over the course of more than fifteen (15) years up to and including the present, the Defendant has intentionally subjected the Plaintiff to unequal and discriminatory treatment because of his race and age by:

(a)  repeatedly denying him promotions and instead selecting less qualified white or other employees for those positions;

(b)  excluding  the Plaintiff from officer, management and supervisory level positions;

(c)  Assigning higher grade levels to white or other employees who have the same or similar or lower level responsibilities as the Plaintiff;

(d)  denying the Plaintiff training and mentoring opportunities;

(e)  repeatedly denying the Plaintiff positions to which he can be detailed to provide him training, experience and promotional or advancement opportunities;

(f)  repeatedly denying the Plaintiff desk audits which would assess his competence and performance for purposes of promotional  or advancement opportunities;

(g)  Denying the Plaintiff grade level increases  to reflect his performance and responsibilities;

(h) falsely ranking the Plaintiff at a lower grade than white employees doing substantially similar work;

(i)  paying the Plaintiff less than similarly situated and less qualified white employees;

(j)  falsely representing that the Plaintiff's university level experience as a professor in economics does not qualify him for higher level promotional and advancement opportunities;

(k)  subjecting the Plaintiff  to higher level of scrutiny and to stricter standards than white employees; and

(l)  repeatedly retaliating against the Plaintiff because he has engaged in protected activity including complaining about the discriminatory conduct against him and filing complaints to attempt to redress said discriminatory conduct.

Similarly, paragraph 17 of the Amended Complaint sets forth the adverse impact on the Plaintiff of the discriminatory conduct of the Defendant as follows:

As a direct and proximate result of the wrongs committed by the Defendant, the Plaintiff has suffered and continues to suffer substantial damages to include loss of income, loss of professional opportunities and advancement, damage to his reputation and character, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other consequential damages.

<u>Argument</u>

5

1. **Count One of the Amended Complaint is timely**

Under Title VII**,** federal employees are required to file lawsuits seeking relief for employment discrimination within 90 days of receipt of notice of final administrative action. 42 U.S.C. § 2000e-16(c).  Equal Employment Opportunity Commission ("EEOC") regulations also require a claimant "under title VII**,** the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court . . . [w]ithin 90 days of receipt of the final action on an individual or class complaint." 29 C.F.R. § 1614.407(a) (2006). It bears emphasizing that the operative phrase is within ninety days of receipt of the final action.

In this case, it is incontrovertible that the Plaintiff received the notice of the final action on October 18, 2007. The Plaintiff has filed a declaration to that effect and it is attached hereto and marked Exhibit 1 for identification. As such, the action was due to be filed on or before January 16, 2008 and it was in fact so filed.

Summary judgment is warranted only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "[S]ubstantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.

In this case, the Plaintiff asserted in his Amended Complaint for Damages that he had "exhausted the administrative remedies where required and satisfied all administrative and statutory prerequisites necessary for the institution of this action; furthermore, the action is timely as to all counts herein." The assertion was supported by the declaration of the Appellant which was made a part of his opposition to Defendant's initial motion to dismiss and for summary judgment filed with the court on or about July 8, 2008. It would appear that the Defendant was not aware of the declaration and therefore based her arguments on the rebuttable presumption of five ( 5) days contained in the EEOC notice to the Plaintiff.  We certainly agree with the Defendant that EEOC's decision stated in bold print of the Plaintiff's right to file a civil action within 90 days of his receipt of the EEOC's decision. The Plaintiff in fact complied within that directive, even if he did it on the last day that he was required to do so.

In a recent similar case involving timeliness of claims,  the U.S.  Court of Appeals for the District of Columbia reversed the grant of summary judgment stating that the trial court "failed to acknowledge that a genuine issue of material fact existed as to the date" of appellant's contact with an EEO Counselor. See Steele v. Schafer, Secretary of Agriculture, 05-5430 (for ease of reference, a copy of the decision is attached hereto and marked Exhibit 5). In this case, the trial-worthy evidence is that the Plaintiff received the final action decision from the EEOC on October 18, 2007. The Plaintiff would therefore submit that summary judgment is inappropriate on this issue based on the facts and the record.

2. **Counts One through Four properly state Claims of Employment Discrimination as well as retaliation**

In the case of <u>Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc., 525 F.3d 8, 13-14 (D.C. Circuit 2008)</u>, the U.S. Court of Appeals for the District of Columbia stated the following:

> In deciding a 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiff's favor," "accept[ing] as true all of the factual allegations contained in the complaint," <u>Kassem v. Wash. Hosp. Ctr., No. 06-7161, 513 F.3d 251, 2008 U.S. App. LEXIS 1174, at 2 (D.C. Cir. Jan. 22, 2008)</u>, "with the benefit of all reasonable inferences derived from the facts alleged," <u>Stewart, 471 F.3d at 173</u>. However, the district court interpreted Twombly as establishing a new threshold for complaints: enough facts to "clarify the grounds" on which each claim rests and **"**nudge[] their claims across the line from conceivable to plausible." <u>Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc., 511 F. Supp. 2d 1, 18-19 (D.D.C. 2007)</u>. Many courts have disagreed about the import of Twombly. We conclude that Twombly leaves the long-standing fundamentals of notice pleading intact.

A review of the First Amended Complaint has detailed facts in support of his claims. The factual allegations set forth in Counts One through Four are detailed in paragraphs 1 though 17 and are incorporated into all the counts.

3. **The Plaintiff was qualified and eligible for all the positions in Counts One, Two and Three for which he was not selected and  he is entitled to hearing de novo  in this court.**

As are set forth in his Amended Complaint and in his Declaration(exhibit 1), the Plaintiff was qualified and eligible for selection for all positions the subject of his Amended Complaint, notwithstanding the fact that in more than 18 years  at  the U.S. Department of Labor, he has not been promoted and the Defendant has acted or not

acted in a sustained effort to scuttle and undermine all promotional and advancement opportunities for the Plaintiff. The Bargaining Agreement between Local 12, AFGE, AFL-CIO and the Defendant states that the Plaintiff is eligible for the detail as Acting Director under Count One of the complaint. (Exhibit 2).  Additionally, under the rules of the U.S. Office of Personnel management, some vacancies are advertized under the delegated examining authority as was done in the case of the Deputy Director position alleged in Count Three. (Exhibit 3). The Plaintiff was eligible and applied for the position under the delegated examining process.(Exhibit 4). Under  Fed. R. Civ. Proc. 56(f), the Plaintiff requests that he should be allowed to conduct discovery to document the facts essential to his opposition to the motion to dismiss and for summary judgment.(Exhibit 1)

The Defendant also seeks collateral estoppel regarding matters for which he has appealed to this court, as if seeking the Court's imprimatur for its unlawful and sustained discriminatory conduct. To apply collateral estoppel or issue preclusion to an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical to the one previously litigated; (2) the issue or fact was actually resolved in the prior proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the party to be foreclosed by the prior resolution of the issue or fact had a full and fair opportunity to litigate the issue or fact in the prior proceeding. See IN RE: MICROSOFT CORPORATION ANTITRUST LITIGATION, 355 F.3d 322; 2004 U.S. App. LEXIS 575 The decision at the EEOC by the administrative judge was not

in a court, was not a judgment and was not final. In any event, the Supreme Court has

held that the Plaintiff is entitled to appeal his case to this court and for this court to

hear the case de novo. <u>Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48</u>

<u>L.Ed.2d 416 (1976)</u>

Based on the foregoing, the Plaintiff would respectfully request that the motion

filed by the Defendant be denied..

Respectfully Submitted,

 /s/ B. K. Cobbina_____
Boniface K. Cobbina, Esquire
DC Bar No. 347757
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036
202-463-6900
Bkc215@gmail.com

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

_____

BENOIT BROOKENS                    *

           Plaintiff                    *

    v.                              * Civil Action No. 08-0086 (ESH)

                           *

ELAINE L. CHAO
Secretary, U.S. Department of Labor    *

           Defendant                    *

_____    *


## ORDER

      Upon consideration of the motion filed by the Defendant to dismiss or in the

alternative for summary judgment, the response there and for good cause shown, it is this

_____ day of  _____ 2008

      OREDERD: the motion is denied.



                              _____

.                                    JUDGE HUVELLE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing opposition  along with the

Memorandum, Statement of Material Facts with Genuine Issue, Order and Exhibits to be

served electronically on Alan Burch, Esquire, counsel for the defendant, at

alan.burch@usdoj.gov this 15th day of  August, 2008.


_____/s/ B.K. Cobbina_____
Boniface K. Cobbina

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

BENOIT BROOKENS                          *

               Plaintiff            *

    v.                                   * Civil Action No. 08-0086 (ESH)

                                   *

ELAINE L. CHAO                           *
Secretary, U.S. Department of Labor      *

               Defendant            *

_____         *

**<u>STATEMENT OF GENUINE ISSUES SETTING FORTH ALL MATERIAL
FACTS AS TO WHICH IT IS CONTENDED THERE EXISTS A GENUINE
ISSUE NECESSARY TO BE LITIGATED</u>**

      The Plaintiff hereby states his statement of genuine issues setting forth all material

facts as to which it is contended there exists a genuine issue necessary to be litigated:

1. The Plaintiff is eligible for GS-15 and GS- 14 under the positions under the

   delegated examining authority or process. See Plaintiff's Declaration (Exhibit 1)

   paragraphs 2, 3 and 4; also see Plaintiff's First Amended Complaint for Damages,

   paragraphs 9 and 12.

2. Plaintiff disputes that he was not qualified for the Senior Executive Service

   position. . See Plaintiff's Declaration (Exhibit 1) paragraphs 2, 3 and 4; also see

   Plaintiff's First Amended Complaint for Damages, paragraphs 9 and 12.

Respectfully Submitted,

_/s/ B. K. Cobbina_____
Boniface K. Cobbina, Esquire
1150 Connecticut Avenue, NW, Suite 900
Washington, DC 20036
202-463-6900
Bkc215@gmail.com

# EXHIBIT 1

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| BENOIT BROOKENS | * |
| Plaintiff | * |
| v. | * Civil Action No. 08-0086 (ESH) |
| | * |
| ELAINE L. CHAO<br>Secretary, U.S. Department of Labor | * |
| Defendant | * |
| | * |

## **DECLARATION OF PLAINTIFF BENOIT BROOKENS**

Pursuant to 28 U.S.C. § 1746, I hereby declare under the penalty of perjury that the following facts and things set forth herein are known to me of my own personal knowledge to be true, and if called upon to testify to the matters in this affidavit, I could and would competently do so:

1. I received the notification regarding my right to sue in respect of the personnel action denominated as Count One in Plaintiff's Proposed First Amended Complaint for Damages on October 18, 2007.

2. Exhibit 2 attached to Plaintiff's Opposition to the Motion to Dismiss Or, in the alternative for Summary Judgment is an excerpt at pages 55, 56 and 57 of the Agreement between Local 12, AFGE, AFL-CIO and the U.S. Department of Labor and it shows that the Plaintiff was eligible for detail in GS-14 and 15

1

positions if the detail lasted not more than 120 days. Furthermore, I am eligible to apply for GS-14 and GS-15 positions under the delegated examination process.

3.  Exhibit 3 attached to Plaintiff's Opposition to the Motion to Dismiss or, in the alternative for Summary Judgment is a page taken from the web site of the U.S. Office of Personnel Management describing the delegated examining authority.

4.  Exhibit 4 attached to Plaintiff's Opposition to the Motion to Dismiss Or, in the alternative for Summary Judgment is a copy of my application for consideration for the position of Deputy Director position alleged in Count Three of Plaintiff's First Amended Complaint for Damages. The "DE" designation at the end of the Announcement Number (ILAB 07-068DE) reflects my application for the position under the designated examining authority.

5.  Pursuant to Fed. R. Civ. Proc. 56(f), the Plaintiff states that because the discrimination and retaliation alleged herein are particularly within the province of the Defendant and he would need the assistance of expert witnesses, e.g. regarding his qualification and eligibility under the delegated examining authority, to document facts essential to his opposition, he requests the opportunity to conduct discovery in aid of this opposition to the motion to

dismiss and for summary judgment.

Benoit Brookens
August 15, 2008

# EXHIBIT 2

ed reduction in
at least 30 calendar
e has a right to
spond orally and/or
The notice will state
s, by which the
e made. The notice
tled to representa-
clude the name and
ent/Chief Steward
a notice of the
12 of the nature of

to review all
ion in grade or
ed or final action

iscrimination on
igin, age, or
oyee covered by
s Article through
it Systems Protec-
e shall be deemed
atter under either
procedure at such
eal with the MSPB.

iation on the basis
or disability in
l by this Article
ough the negoti-
gh the Equal
edure. An em-
ugh the EEO
ure may not
ce procedure. The

employee shall be deemed to have elected the forum under which
he/she wishes to proceed at the time he/she files a grievance, an
appeal with the MSPB, or a formal EEO complaint.

## ARTICLE 18
## Merit Staffing

### Section 1. Introduction

The Department will adhere to all applicable Government-wide rules and
regulations and the provisions in this Article in the administration of
Merit Staffing. Moreover, the Department shall administer this Article in
accordance with DPR 335, dated April 28, 2004, as specified or except as
provided herein. Any future changes to this regulation will be handled in
accordance with Article 38. The purpose and intent of this Article are to
ensure that employees are given full and fair consideration and to ensure
selection from among the best-qualified candidates. The Department and
Local 12 also agree to fill positions in the bargaining unit on the basis of
merit in accordance with systematic and equitable procedures adopted
for this purpose.

### Section 2. Coverage

The following personnel actions are covered under competitive merit
staffing procedures:

a. Promotions other than those which are excepted in Section 3
below;

b. Time-limited promotions for more than 120 days (prior service
during the preceding 12 months under noncompetitive time-limited
promotions and noncompetitive details to higher graded positions
counts toward the 120-day total);

c. Details for more than 120 days to a higher grade position or to a
position with higher promotion potential (prior service during the
preceding 12 months under noncompetitive time-limited promo-
tions and noncompetitive details to higher graded positions counts
toward the 120-day total);

d. Selection for training which is part of an authorized training
agreement, part of a promotion program, or required by a formal
training program before an employee may be considered for
promotion;

e. Reassignment or demotion to a position with more promotion potential than a position previously held on a permanent basis in the competitive service (except as permitted under reduction-in-force);

f. Transfer to a position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service; and

g. Reinstatement to a permanent or temporary position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service.

## Section 3. Exclusions

Actions not specifically described as covered actions in Section 2 above are excluded from coverage including, but not limited to, the following:

a. A promotion resulting from the upgrading of a position without significant change in the duties or responsibilities due to the issuance of a new classification standard or the correction of an initial classification error;

b. A position change permitted by reduction-in-force regulations;

c. A promotion without current competition of an employee who was appointed in the competitive service from a civil service register, by direct hire, by noncompetitive appointment or noncompetitive conversion, or under competitive procedures for an assignment intended to prepare the employee for the position being filled, (e.g., career ladder, trainee, and understudy positions, and conversions from various special appointing authorities (e.g., Career Intern Program, etc);

d. A promotion resulting from an employee's position being reclassified at a higher grade because of additional duties and responsibilities;

e. A temporary promotion, or detail to a higher-grade position or a position with known promotion potential, of 120 days or less;

f. Promotion to a grade previously held on a permanent basis in the competitive service (or similar OPM-approved system) from which the employee was separated or demoted for other than performance or conduct reasons;

---

g. Promotion, detail to a p potential of held on a p OPM-appr or conduct

h. Priority con ation in a c

i. Appointme reinstateme the compet positions es

j. A temporar tion was ma might lead potential ca

k. An appoint competitive

## Section 4. Vaca

Vacancy announce fair and open com U.S.C. 2301.

## Section 5. Inter

Selecting officials selection shall be viewed all availab The interview ma of the art technolo items such as wor complete writing

## Section 6. Care

a. A career lac the same lir progress fro performanc promoted a level, and n

---

with more promotion
on a permanent basis in
ted under reduction-in-

r with more promotion
on a permanent basis in

ary position at a higher
than a position previously
itive service.

ctions in Section 2 above
limited to, the following:

ig of a position without
nsibilities due to the
l or the correction of an

in-force regulations;

in of an employee who was
m a civil service register,
atment or noncompetitive
lures for an assignment
e position being filled,
udy positions, and conver-
uthorities (e.g., Career

e's position being reclassi-
mal duties and responsibili-

igher-grade position or a
al, of 120 days or less;

in a permanent basis in the
oproved system) from which
l for other than performance

g.  Promotion, reassignment, demotion, transfer, reinstatement or detail to a position having promotion potential no greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service (or similar OPM-approved system) and did not lose because of performance or conduct reasons;

h.  Priority consideration of a candidate not given proper consideration in a competitive promotion action;

i.  Appointments of career SES appointees with competitive service reinstatement eligibility to any position for which they qualify in the competitive service at any grade or salary level, including positions established under 5 CFR 319;

j.  A temporary promotion made permanent if the temporary promotion was made under competitive procedures and the fact that it might lead to a permanent promotion was made known to all potential candidates; and

k.  An appointment from a certificate of eligibles resulting from a competitive examination, e.g., delegated examining.

## Section 4. Vacancy Announcements

Vacancy announcements will be publicized in such a way as to ensure fair and open competition in accordance with Merit Systems Principles, 5 U.S.C. 2301.

## Section 5. Interviews and Selections

Selecting officials have the right to select or not to select.  However, no selection shall be made unless and until the selecting official has interviewed all available candidates on the certificate who are within the unit. The interview may be done face-to-face, by telephone, or by other state of the art technology as available.  Candidates may be required to submit items such as work products upon interview, or may be required to complete writing samples, etc., during interviews.

## Section 6. Career Ladders in DOL

a.  A career ladder is a series of positions of increasing difficulty in the same line of work through which a group of employees may progress from the entrance levels to the journey level of full performance.  They are all given grade-building experience and are promoted as they demonstrate ability to perform at the next higher level, and meet all eligibility requirements.

nd the U.S. Department of Labor

# EXHIBIT 3

# Chapter 1 – OPM and Agency Responsibilities

This chapter describes the responsibilities that are typically outlined in Interagency Delegated Examining Agreements between OPM and agencies. This chapter contains the following sections:

| | |
|---|---|
| Section A | What is Delegated Examining Authority? |
| Section B | OPM Responsibilities |
| Section C | Agency Responsibilities |
| Section D | Delegated Examining Training Responsibilities |
| Section E | References |

## Section A - What is Delegated Examining Authority?

**What is delegated examining authority?**

Delegated examining authority is an authority OPM grants to agencies to fill competitive civil service jobs with:

- Applicants applying from outside the Federal workforce,
- Federal employees who do not have competitive service status, or
- Federal employees with competitive service status.

Appointments made by agencies through delegated examining authority are subject to civil service laws and regulations. This is to ensure fair and open competition, recruitment from all segments of society, and selection on the basis of the applicants' competencies or knowledge, skills, and abilities (see 5 U.S.C. § 2301).

# EXHIBIT 4

# U.S. Department of Labor
# All Applicant Data Report

**Announcement Number:** ILAB 07-068DE
**Position Title:** Supervisory International Economist

**Name:** BENOIT BROOKENS, II
**SSN:** 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
**Address1:** 460 Taylor Street, NE
**Address2:** Apt. G-44
**City:** Washington,
**State:** DC
**Post Code:** 20017
**Plus4:**
**Phone:** 202/693-4868
**Email:** brookens-benoit@dol.gov
**United States Citizen:** Y
**Date of Birth:** Jan 1, 1900
**Veteran Preference:** NV
**Start of Service:**
**End of Service:**

## Core Questions

1. Are you a **veteran** who was separated from the armed forces under honorable conditions after completing an initial continuous tour of duty of 3 years (may have been released just short of 3 years)?
**Answer:**
1. Yes

2. Are you a current Federal employee?
**Answer:**
1. Yes

3. Are you a current Federal employee serving under a **Veterans Recruitment Appointment (VRA)** authority?
**Answer:**
2. No

4. If you are a current Federal employee, by what agency are you employed?
**Answer:**
1. U.S. Department of Labor

6. If you are a current Federal employee, what is your duty station? [City, State] (Enter N/A if Not Applicable)
**Answer:** Washington, DC

7. If you are a Federal employee, under what type of appointment are you currently serving?
**Answer:**
1. **Permanent-Career, competitive service**

8. Are you a student appointee under the **Student Career Experience Program** who has completed all requirements for graduation and conversion under the SCEP appointing authority and is within the 120 day period for conversion to term, career or career-conditional appointment?
**Answer:**
2. No

9. If you are NOT currently serving in the **competitive service** as a **permanent career** or **career-conditional** Federal employee, are you eligible for reinstatement based on career or career-conditional Federal status in the competitive service?
**Answer:**
1. Yes

10. If you are, or ever were, a Federal civilian employee, please indicate pay plan of the highest grade

Exhibit ___

Page _2_ of _21_ Pages



position you held:
**Answer:**
12. FC

**12.** If you are, or ever were, a Federal civilian employee, please indicate the highest-grade level you held.
**Answer:**
4. 04

**13.** If you are, or ever were, a Federal civilian employee, please indicate the dates of the highest title, series, graded position you held (MM-YYYY to MM-YYYY or Present, or NA if Not Applicable):
**Answer:** 01/1990 to present

**14.** If you are, or were, a Federal employee who held a permanent position in the competitive service, what is the **highest full performance level** of that position?
**Answer:**
12. 12

**15.** May we contact your current supervisor for a reference?
**Answer:**
2. No

**16.** Does the Department of Labor employ any member of your family?
**Answer:**
2. No

**18.** If you are a male at least 18 years of age, born after December 31, 1959, have you registered with the **Selective Service System**?
**Answer:**
3. Not Applicable

**19.** If you are a male at least 18 years of age, born after December 31, 1959 AND you have NOT registered with the **Selective Service System**, do you have an approved exemption?
**Answer:**
3. Not Applicable

**20.** Are you a retiree receiving a Federal annuity, either military or civilian?
**Answer:**
2. No

**21.** Have you accepted a buyout from a Federal agency within the past 5 years?
**Answer:**
2. No

**22.** Are you eligible for noncompetitive appointment under a Special Appointing Authority?
**Answer:**
2. No

**24.** Displaced employee information:
**Answer:**
3. I am not a displaced employee from a Federal Agency.

**25.** For DOL employees only, what is your bargaining union status?
**Answer:**
2. Local 12

**26.** The Department of Labor does not recognize academic degrees (including any coursework leading to a degree) from schools that are not accredited by an accrediting institution recognized by the Department of Education. Any applicant falsely claiming an academic degree from an accredited school will be subject to actions ranging from disqualification from federal employment to removal from federal service. Please check the appropriate box.
**Answer:**
1. I certify that my academic degree (or degrees) is from a college or university accredited by an accrediting institution recognized by the Department of Education.

**27.** Other employee consideration: I am an employee of the Department of Labor who has not been declared surplus or displaced, however, I have been notified in writing that I may be affected by reorganization, competitive sourcing, etc., AND I am requesting priority consideration under the Department of Labor's Career Transition Assistance Plan.
**Answer:**

Exhibit ___E4___
Page _2_ of _21_ Pages



2. No

<u>Assessment Questions</u>
What locations do you wish to apply to?
Washington DC Metro Area, DC

What Grades do you wish to apply to?
15

<u>Grade: 15</u>

1. To meet the Additional Qualifications Requirements for Economist, GS-15, select the option that best describes your experience background. Note: In addition to meeting the basic entry qualification requirements, applicants must have specialized experience and/or directly-related education.
**Answer:**
1. I have at least one year of work experience at a GS-14 level performing duties which demonstrates: (a) individual economic research assignments requiring planning, information assembly, analysis and evaluation, conclusions and report preparation; (b) supervisory or project coordination assignments involving a staff of professional economists, and requiring the evaluation and interpretation of economic information; or (c) teaching assignments in a college or university.

2. Where did you learn about this Department of Labor job opportunity? (check all that apply)
**Answer:**
10. Other

3. I understand submission of supporting documentation, e.g., transcripts, DD-214, SF-50, may be required for this position. I also understand that my application will not be considered if the required supporting documentation is not submitted or is not submitted in accordance with the time frames indicated in the announcement.
**Answer:**
1. Yes

4. Are you available for periodic travel throughout the United States and overseas?
**Answer:**
1. Yes

5. I have been responsible for taking a broad policy, directive or law, and translating it into program goals. I have tracked those goals during, and following, a project.
**Answer:**
1. True

6. Choose the one statement that best describes your experience developing and coordinating the organization's responses to legislative, regulatory or other proposals affecting assigned programs.
**Answer:**
2. I have performed this task as a regular part of my job, at the bureau (or equivalent) level. I performed this task independently and normally without review by a supervisor.

7. Select the one option that most accurately describes your ability to coordinate the evaluation and development of program performance and accountability methodologies as they relate to the Government Performance and Results Act (GPRA).
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

8. Please indicate the statement that best describes your level of expertise in forecasting such things as the potential impact of new policies, program costs, and/or legislation.
**Answer:**
4. I have performed this task as a regular part of a job, independently and usually without review by supervisor, manager or senior employee.

9. Do you have applied experience with human capital policy analysis related to a larger Corporate or Governmental initiatives? This might include, but is not limited to, workforce planning, attrition analysis, retirement projections, or a budgetary analysis related to workforce needs. To answer yes, you must have at least six months experience.
**Answer:**
1. Yes

10. Choose the statement that best describes your experience with projects in direct support of the President's Management Agenda (PMA) or other organizational initiatives that involve similar areas of focus. The PMA involves government-wide initiatives including strategic management of human capital, competitive

Exhibit ___ F4

Page _4_ of _21_ Pages

2/13/2008



sourcing, improved financial performance, expanded electronic government, and budget and performance integration.
**Answer:**
3. I have performed this task on the job, with close supervision from supervisor or senior employee.

**11.** Please select the statement that best describes your experience in conducting analysis of international economic policy.
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

**12.** Do you have at least six months of experience conducting research related to foreign economics?
**Answer:**
1. Yes

**13.** Indicate those written products for which you have been responsible as a regular part of a job. To accurately choose each product, you must have completed - start to finish - at least three of them over the course of a year. Assisting on a product does not count, for purposes of this response, but coauthoring does.
**Answer:**
1. Issue/position papers or summary reports on organizational data that included analysis and recommendations
2. Brief responses to Departmental or Corporate inquiries on a wide range of policy matters
3. Policy statements and guidance to internal stakeholders
4. Budget support, justification impact and analysis
5. Guidelines or procedural instructions for implementing new initiatives or systems
6. Recommendations for solutions to policy or reporting problems
7. Correspondence that consolidates input from a number of different sources (including contradictory viewpoints)
8. Presentation or briefing materials
9. Briefings and testimony for Congressional hearings

**14.** Choose the statement(s), if any, that describe your experience with talking points for presentations.
**Answer:**
1. I have prepared talking points that have later been presented to others.
2. I have helped someone else to prepare talking points by completing research or editing their draft talking points.
3. I have delivered presentations, based on prepared talking points.

**15.** Do you have at least six months' experience editing documents, reports or publications?
**Answer:**
1. Yes

**16.** Choose the statement that best describes your experience managing contracts and/or grants.
**Answer:**
3. I have performed this task on the job, with close supervision from supervisor or senior employee.

**17.** Have you ever received a top performance rating (e.g., outstanding, exemplary) as a supervisor or manager? For purposes of this question, a supervisor is someone who has authority to hire, fire and evaluate employees. A manager is someone who has authority to hire, fire and evaluate those supervisors.
**Answer:**
1. Yes

**18.** Have you ever received a top performance rating (e.g., outstanding, exemplary) as a team leader? Team lead is a role similar to supervisor, but lacking the formal HR authority to hire, promote and discipline employees on the team.
**Answer:**
1. Yes

**19.** The following phrases describe different aspects of work related to technical assistance cooperative agreements and grants. Choose those that accurately describe your professional experience within the last ten years. Unless otherwise noted, the experience can pertain to any sector.
**Answer:**
15. My experience is not accurately described here

**20.** Choose the statement that best describes your experience researching and summarizing U.S. labor laws and regulations, within the past 10 years.
**Answer:**
5. This task has been a central or major part of my work. I have performed it myself routinely, and I have trained others in performance of this task and (or) others have consulted me as an expert for assistance in performing this task.

**21.** Choose the statement that best describes your experience researching and summarizing non-U.S. labor laws

Exhibit F4
Page 5 of 21 Pages



and regulations, within the past 10 years.
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

22. Do you have at least six months of experience researching, or assisting in the development of policy with respect to the reduction or elimination of tariffs and other barriers of international trade?
**Answer:**
1. Yes

23. Do you have at least six months of experience researching, or managing projects related to, economic development in developing countries?
**Answer:**
1. Yes

24. Choose the statement that best describes your experience researching, analyzing and summarizing activities and positions related to the International Labor Organization (ILO)
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

25. Choose the statement that best describes your experience researching, analyzing and summarizing activities and positions related to the World Trade Organization (WTO).
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

26. Choose the statement that best describes your experience researching, analyzing and summarizing activities and positions related to the Organization for Economic Cooperation and Development (OECD).
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

27. Have you participated in any meetings, conferences, or projects related to ILO, WTO, or OECD?
**Answer:**
1. Yes

28. Choose the statement that best describes your experience researching and summarizing U.S. labor trade-related international labor standards within the past 10 years.
**Answer:**
5. This task has been a central or major part of my work. I have performed it myself routinely, and I have trained others in performance of this task and (or) others have consulted me as an expert for assistance in performing this task.

29. Choose the statement that best describes your experience analyzing the labor provisions of recent Free Trade Agreements such as Chile, CAFTA, Oman, Bahrain, Jordan, Singapore, Australia, etc.
**Answer:**
2. I have had education or training in performing this task, but have not yet performed it on the job.

30. Have you completed at least one project, spanning a week or more, dealing with the Procedural Guidelines issued by DOL's Office of Trade and Labor Affairs regarding the acceptance and review of public submissions?
**Answer:**
2. No

31. Select each of the following organizations, offices, or groups with which you have work experience.
**Answer:**
1. World Trade Organization (WTO)
2. International Labor Organization (ILO)
3. Organization for Economic Cooperation and Development (OECD)
4. Bureau of International Labor Affairs (ILAB)
5. United States Trade Representative (USTR)
6. State Department
7. Trade Policy Review Group (TPRG)
8. Trade Policy Staff Committee (TPSC)
9. Other trade-related organizations or groups not listed here

32. Choose the statement that best describes your ability to read and understand Spanish in a business context, without the use of a dictionary.
**Answer:**
1. I can understand almost no written Spanish, in a business context.

Exhibit ___F4___

Page _6_ of _21_ Pages



33. Choose the statement that best describes your ability to speak Spanish in a business context, without the use of a dictionary.
**Answer:**
1. I can speak almost no Spanish, in a business context.

34. Choose the statement that best describes your ability to read and understand French in a business context, without the use of a dictionary.
**Answer:**
1. I can understand almost no written French, in a business context.

35. Choose the statement that best describes your ability to speak French in a business context, without the use of a dictionary.
**Answer:**
1. I can speak almost no French, in a business context.

36. Choose the statement that best describes your ability to read and understand Arabic in a business context, without the use of a dictionary.
**Answer:**
1. I can understand almost no written Arabic, in a business context.

37. Choose the statement that best describes your ability to speak Arabic in a business context, without the use of a dictionary.
**Answer:**
1. I can speak almost no Arabic, in a business context.


**Resume**
Benoit Brookens, II

460 Taylor Street, NE
Apt. G-44
Washington,, DC 20017
Day Phone: 202/693-4868
Email: brookens-benoit@dol.gov
Social Security Number: xxx-xx-6868
Country of citizenship: United States of America
Veterans' Preference: No
Highest Grade: GS-110-12, 01/1990-present
Contact Current Employer: No
AVAILABILITY
Job Type:
Permanent

Work Schedule:
Full Time

DESIRED LOCATIONS
US

WORK EXPERIENCE
U.S. Department of Labor
Washington,, DC
US
1/1990 - Present
Grade Level: GS-12
Salary: $80,000 USD Per Year
Hours per week: 40
International Economist, 110
Serve as a member of the inter-governmental Generalized System of Preference (GSP) Committee, U.S. trade delegations, and negotiating teams to assess the impact of trade agreements on the U.S. Labor force for industrial sectors. Sectors included automobiles, auto parts, satellites, supercomputers, and petrochemical. Represented the U.S. Department of Labor on trade delegations/trade policy committee which included negotiations with Japan, the European Community, the North American Free Trade Agreement (NAFTA) and the Latin American Free Trade Area of the Americas (FTAA). Served as a member of the trade sanctions (Section 301) Committee.

(1994) Detail, Program Officer (Information Officer GS-14, Acting Secretary, (Senior Executive Service, SES, Executive Level); National Administrative Office,(NAO) North American Free Trade Agreement (NAFTA)

Prepared comparative analysis of the labor side agreements for the U.S., Mexico, and Canada. Responsible for Public Information Officer duties, including disclosing sensitive hearing records to the public and for assuring compliance with provisions of the Freedom of Information (FOIA) statute.

Private Practice
Washington, D.C.

Exhibit ___F4___

Page __7__ of __21__ Pages



US
1/1980 - 1/1990
Hours per week: 40
Attorney/Economist/Professor
Private economic and regulatory practice, including consumer advocacy and trial practice, multi-unit
residential development and condominium conversion, business and financial planning and international
finance. Consultant, Export-Import Bank. Consumer Advocate, D.C. Public Service Commission. Won major housing
public interest litigation and successfully settled one the nation's largest title VIII actions. Served as an
Adjunct Professor Finance, University of Virginia--Falls Church Campus 1986-1990.


U.S. Department of State
Washington, D,C.
US
10/1973 - 3/1981
Grade Level: FS-4
Hours per week: 40
Foreign Service Officer, FS
Foreign Service Economic and Commercial Officer (Grade FS-4) 1979-1980

Program Officer for Economic and Social Affairs, Bureau of International Organizations (IO) U.S. National
Commission for U.N.E.S.C.O. Richard Knobbe, Director

Analyzed U.S. positions for presentation in multilateral specialized agencies in the areas of economics,
human rights, and social science programs. Coordinated with U.S. delegations and formulated instructions for
U.S. Mission to U.N.E.S.C.O., Paris.

1977-79, U.S. Department of State
Special Assistant, Bureau of Oceans, International Environment, and Scientific Affairs, Ambassador, John D.
Negroponte, Supervisor

Formulated, developed, and implemented programs in the oceans and living marine resources for multilateral
fisheries including U.N. Food and Agricultural Organization (FAO). Served as the State Department
representative on the Caribbean and Mid-Atlantic Regional Fisheries Commission. Member of negotiating team
for commercial fishing treaties concerning the Virgin Islands, Cuba, African fisheries, and the Law of the
Seas. Prepared legal and economic analyses for the 35 member division.

1975-77 U.S. Department of State, Assistant Commercial Attache, American Embassy, The Hague, Netherlands,
Joseph Harrary, Supervisor

Prepared economic, commercial, and legislative analysis on 15 targeted sectors evaluating banking, financial,
budgetary, export and micro-macro-economic effects. Supervised 4 professional staff at the Embassy, 2 senior
commercial officers in Rotterdam and Amsterdam, and 20 travel trade specialists in the Visit America
Information Center, Amsterdam. Chairman, Netherlands National Travel Trade Chamber of Commerce. Editor-in-
Chief, U.S. Department of Commerce, Commercial Newsletter, Benelux and Northern European Edition.

Department of Commerce, 1974

(Inter-agency Detail) Legal Advisor Bureau of International Economic Policy, European Communities Staff;
Assessed implications of European Companies Law requiring participation of labor unions of board of directors
of companies;


Acting Director, Netherlands Affairs, Bobette K. Orr, Supervisor;
Oversaw U.S. commercial and trade policy for the Netherlands

Staff member, to design and automate World Trade Data Reports and Agent-Distributor Service

1973-74 U.S. Department of State
Financial Economist, Bureau of Economic and Business Affairs, (EB) Office of Investment Affairs, Moorhead
Kennedy, Esq., Supervisor

Staffed the Cabinet level Expropriations Committee. Prepared legal opinions regarding the legality of
expropriation of U.S. commercial interests abroad. Analyzed portfolio and direct investment policies of
foreign governments and U.S. under reciprocal treatment treaties.

MBA Consultants, Inc.
New York City, NY
US
9/1971 - 10/1973
Hours per week: 20
Associate Director for Finance and Accounting
Began as staff financial consultant preparing financial and accounting statements and implementing and
designing financial management systems. Promoted to head one of two major divisions supervising 20
consultants on 10 projects valued up to $5,000,000 including plant mergers, banking and cash flows, and a New
York hospital multi-million dollar working capital/cash management system.

EDUCATION
George Washington University Law School

Exhibit F4

Page 8 of 21 Pages



Washington, DC
US
Professional
Major: Masters of Law in International Law (LLM)

Columbia University Law School
New York, NY
US
Professional
Major: (JD) International Law

Columbia University Graduate School of Business
New York, NY
US
Master's Degree
Relevant Coursework, Licensures and Certifications:
(MBA) International Finance; International Business

University of Wisconsin-Madision
Madison, WI
US
Bachelor's Degree
Major: International Economics/International Relations
Relevant Coursework, Licensures and Certifications:
(BA) Honors program

Netherlands National Economics (Erasmus) University
Rotterdam, Netherlands
Netherlands
Some College Coursework Completed
Relevant Coursework, Licensures and Certifications:
Doctoral studies in International Finance 1976-86

Columbia School of International Affairs
New York, NY
US
Some College Coursework Completed
Major: International Economics/ International Organizations
Relevant Coursework, Licensures and Certifications:
Additional studies in international economics/international organizations

LANGUAGES
Dutch
Spoken: Advanced
Written: Advanced
Read: Advanced

French
Spoken: Advanced
Written: Advanced
Read: Advanced

Spanish
Spoken: Intermediate
Written: Intermediate
Read: Intermediate


PROFESSIONAL PUBLICATIONS
Child Labor Report for Mozambique, 2006 Report, 2005 Findings on the Worst Forms of Child Labor, U.S.
Department of Labor, Government Printing Office, 2006;

Book Review "North American Free Trade: Issues and Recommendations"; Journal of Inter-American Studies and
World Affair, Volume 34, Number 2, Summer 1992;

Book Review "North America Without Borders? Integrating Canada, the United States, and Mexico;" Journal of
Inter-American Studies and World Affairs, Volume 35, Number 1, 1993;

"Diplomatic Protection of Foreign Economic Interests in the New International Economic Order" Journal of
Inter-American Studies and World Affairs, Spring 1978;

U.S. Department of Commerce, International Marketing Series 1976
The Netherlands Markets for "Scientific and Laboratory Equipment"; Industrial Maintenance Equipment; Health
Care and Hospital Equipment

REFERENCES
Benoit Brookens
U.S. Department of Labor

Exhibit P4
Page 9 of 21 Pages



International Economist
Phone Number: 202/693-4868
Email Address: brookens-Benoit@dol-gov
Reference Type: Professional

ADDITIONAL INFORMATION
Department of Labor Group Awards for establishing the National Administrative Office (NAO) for NAFTA and
Negotiating the Automotive Chapter, North American Free Trade Agreement (NAFTA);

Columbia University, International Fellow;
Columbia Law School, Hughes Fellow in Human Rights;
Columbia Journal of International Affairs, Associate for Business Affairs;
Sloan Foundation, COGME Fellow in International Financial Management;
Pi Sigma Alpha, National Political Science Honor Society, Secretary, Pi Chapter, University of Wisconsin-
Madison;
Honors Program, University of Wisconsin-Madison.

Exhibit ___F4___

Page __10__ of __21__ Pages

# EXHIBIT 5

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 5, 2007          Decided August 1, 2008

No. 05-5430

CHERYL STEELE,
APPELLANT

v.

ED SCHAFER, SECRETARY OF AGRICULTURE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00452)

———

*S. Micah Salb* argued the cause for appellant. With him on the briefs was *Richard H. Semsker* and *Julie Glass Martin-Korb*.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Michael J. Ryan* and *Stratton C. Strand*, Assistant U.S. Attorneys, entered appearances.

Before: GARLAND and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

2

GARLAND, *Circuit Judge*:  On this appeal, Cheryl Steele contends that the district court wrongly dismissed her claims against her former employer, the United States Department of Agriculture, for creating a hostile work environment and unlawfully retaliating against her in violation of Title VII of the Civil Rights Act of 1964.  We agree.  We therefore reverse the court's grant of summary judgment against Steele on those claims.

I

Steele is an African-American woman who worked as an economist in the U.S. Department of Agriculture (USDA).  She alleges that the USDA -- principally through her supervisor, James Johnson -- discriminated against her because of her race in numerous ways, including:  intentionally giving her an incompetent assistant;  falsely accusing her of misusing government credit cards; unjustifiably denying her a promotion; depriving her of credit for her work; interfering with her professional development by excluding her from important projects; and unreasonably denying her several cash awards.

Steele further alleges that, after she complained about her discriminatory treatment, the Department retaliated against her by, inter alia:  giving her the lowest performance rating of her career; awarding her the lowest performance bonus in her branch and half the amount given to all white employees; denying her a "special act award" in 1999; and denying her a cash bonus that was given to every other member of her "Y2K" team that prepared the Department's technical systems for the transition to the year 2000.  Steele also asserts that the USDA's harassment forced her to resign in 2000, and that the Department continued to retaliate against her after her resignation by falsely contesting her unemployment benefits at the District of Columbia Office of Unemployment Compensation.

3

After unsuccessfully pursuing administrative remedies, Steele filed suit in the district court, asserting Title VII claims of discrimination, a hostile work environment, retaliation, and constructive discharge.[1]  The USDA moved for summary judgment on all of the claims, and the court granted the motion. *See* Order Granting Def.'s Mot. for Summ. J., *Steele v. Veneman*, 1:02-cv-00452 (D.D.C. Sept. 28, 2005) ("Order").

The district court first addressed the timeliness of Steele's claims under 29 C.F.R. § 1614.105(a)(1), which requires a federal employee in the Executive Branch to "initiate contact" with an Equal Employment Opportunity (EEO) Counselor in her agency within 45 days of an allegedly discriminatory action. The court noted a "discrepancy" in the record regarding the date of Steele's first contact with an EEO Counselor:  different documents stated that the initial contact occurred in January, February, and June of 1999.  Order at 9 n.3.  The court adopted the June date on the ground that it was the date that Steele alleged "in her complaint and . . . admissions."  *Id.* Accordingly, the court denied relief on those of Steele's claims that it found arose more than 45 days before June 18, 1999.  *Id.* at 11.  The court also rejected Steele's argument that otherwise untimely claims could be included as part of a timely hostile work environment claim.  *Id.*

Next, the district court addressed the USDA's contention that Steele failed to state a prima facie case of discrimination or retaliation because a number of the incidents she alleged did not constitute "adverse employment actions."  *Id.*  The court defined an "adverse employment action" as "an action that results in 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'"  *Id.* (quoting *Brown*

---

[1]The title of Steele's complaint mentions "sex discrimination," but Steele pursues only claims of racial discrimination on appeal.

4

*v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)).  Under that definition, the court ruled that at least six incidents could not constitute actionable discrimination or retaliation.  *Id.* at 12.

Finally, the court granted summary judgment to the USDA on Steele's constructive discharge claim.  The court explained that "a constructive discharge claimant must show that (1) her employer intentionally discriminated against her, (2) the employer deliberately made her working conditions intolerable, and (3) aggravating factors justified the claimant's conclusion that she had no option but to end her employment."  *Id.* at 14 (citing *Carter v. George Wash. Univ.*, 180 F. Supp. 2d 97, 110 (D.D.C. 2001)).  The court held that Steele could not prevail because the record "contains no evidence" of "conditions that were so intolerable, so aggravating, that any reasonable person would have felt compelled to quit."  *Id.* at 15.

Without further specification, the district court entered final judgment in favor of the USDA and dismissed the case.  Steele now appeals.  Her briefs do not dispute the dismissal of her discrimination and constructive discharge claims, *see* Oral Argument Rec. 36:44, 37:00 (acknowledgment by Steele's counsel that she does not raise those claims on appeal), but do challenge the district court's rejection of her retaliation and hostile work environment claims.  We address those challenges below.

II

This court reviews a district court's grant of summary judgment de novo.  *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002).  Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  A fact is material if it "might affect the

5

outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* at 255.

Steele argues that the district court's decisions regarding her hostile work environment and retaliation claims rested on three legal errors. We agree. First, in determining that several of Steele's claims were time-barred, the court failed to acknowledge that a genuine issue of material fact existed as to the date of Steele's contact with an EEO counselor. Although the district court's opinion was oblique as to the scope of its ruling, that date affects both Steele's hostile work environment and retaliation claims. Second, regarding Steele's hostile work environment claim, the court adopted a timeliness rule that is inconsistent with the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and as a consequence never reached the merits of that claim. Third, the court applied a standard for retaliation claims that is inconsistent with the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

Although the government acknowledges that the district court erred, it invites us to review the evidence de novo and affirm on other grounds. We decline the invitation. In light of the tangled record on appeal, we lack confidence that we have all of the information necessary to conduct such a review.

6

In the following subparts, we present our analysis in more detail. Part II.A addresses the district court's error in granting summary judgment with respect to the timeliness of certain of Steele's claims, notwithstanding the existence of a genuine issue of material fact. Part II.B discusses the court's adoption of an erroneous timeliness rule for Steele's hostile work environment claim. Finally, Part II.C examines the court's application of an inapposite standard for evaluating Steele's retaliation claims.

A

An employee of the federal government who believes that she has been the subject of unlawful discrimination must "initiate contact" with an EEO Counselor in her agency "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see Weber v. Battista*, 494 F.3d 179, 182-83 (D.C. Cir. 2007); *see also* 42 U.S.C. § 2000e-16. "Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government," a court may not consider a discrimination claim that has not been exhausted in this manner absent a basis for equitable tolling. *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003); *see Greer v. Paulson*, 505 F.3d 1306, 1316-17 (D.C. Cir. 2007).

The district court held that Steele's first contact with an EEO Counselor was June 18, 1999, and that those of her claims involving incidents that took place more than 45 days before that date were therefore barred. Steele's complaint does state that, "[f]rom June 18, 1999, to April, 2000, . . . Steele took issues regarding discriminatory treatment . . . to an EEO counselor at defendant agency." Compl. ¶ 6. But the complaint does not say that this was the only period in which she contacted a counselor, and, as the district court noted, other documents in the record create a "discrepancy" regarding the first contact date. Order at

7

9 n.3.  Steele's admissions to the USDA, submitted as an exhibit to the government's motion for summary judgment, state: "[Steele] contacted an EEO Counselor for the first time in January, 1999, but did not pursue filing a formal complaint at that time.  The Plaintiff contacted an EEO Counselor again in June 1999 to file a formal complaint."  Pl.'s Admis. ¶ 8. Moreover, the USDA's own Record of Investigation states that Steele "made initial contact with an EEO Counselor on February 22, 1999."  JA 185.  At the summary judgment stage, the district court was not free to resolve this disputed issue by disregarding the January and February dates.

Although we cannot tell from the district court's Order how many incidents it thought could not be considered based on the erroneously chosen contact date, there is no doubt that the date is material to Steele's hostile work environment and retaliation claims.  To the extent the district court relied on the June 1999 date in rejecting or limiting those claims, its judgment is reversed.

B

The district court also rejected Steele's contention that, even if some of her individual claims were time-barred, she could still rely on their underlying events to support her claim that she was subjected to a hostile work environment.  *See* Order at 11. Accordingly, the court dismissed that claim without reaching the merits.  This was error.

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court explained that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct."    536 U.S. 101, 115 (2002). Therefore, the Court held, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time

8

period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. This is precisely the rule that the district court rejected in Steele's case, and the USDA concedes that the court's holding was incorrect. *See* Oral Argument Rec. 28:12.

Notwithstanding the district court's error, the USDA urges us to affirm the judgment on several independent grounds.

First, the Department contends that Steele did not assert a hostile work environment claim in her complaint. This argument is unavailing. The complaint alleges "discrimination," which in principle includes a hostile work environment theory; it also specifically requests Steele's reassignment "to a less hostile working environment." Compl. at 1, 12. Moreover, Steele indisputably raises a constructive discharge claim premised on a hostile work environment, and under *Pennsylvania State Police v. Suders*, 532 U.S. 129, 133-34 (2004), the facts necessary to prove a hostile work environment are a subset of those necessary to prove this type of constructive discharge. Indeed, the government's motion for summary judgment acknowledged that Steele "appears to allege that all the events alleged in the complaint caused her to experience a hostile work environment," and it both sought summary judgment on that claim and responded to it (a response qualified, to be sure, by the observation that it responded to such a claim "to the extent" raised). Def.'s Mem. of P. & A. at 2, 17-19; *see also* Def.'s Mot. for Summ. J. Steele's opposition responded by expressly contesting the government's motion as to that claim. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4-6. Given all these circumstances, and in the absence of any apparent prejudice, we think it too late to argue that the plaintiff never asserted such a claim.

9

Second, the USDA argues that, even if Steele did assert a hostile work environment claim, we should affirm because the district court effectively reached and rejected the merits of that claim by ruling against Steele on her constructive discharge claim. The district court, the government maintains, "rightly interpreted [Steele's hostile work environment claim] to be coextensive with her constructive discharge claim." Appellee's Br. 13. But as the Supreme Court made clear in *Suders*, the standards for hostile work environment and constructive discharge claims are not coextensive. 542 U.S. at 133-34 (2004). To establish hostile work environment claims under Title VII, the Court explained, plaintiffs "must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment.'" *Id.* at 133 (alteration in original) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "Beyond that, . . . to establish 'constructive discharge,' the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.* at 134. The district court's rejection of Steele's constructive discharge claim on the ground that she did not show working conditions "so intolerable, so aggravating, that any reasonable person would have felt compelled to quit," Order at 15, simply does not address whether Steele successfully made the lesser showing that she experienced severe or pervasive harassment that altered the conditions of her employment. Accordingly, the district court's holding as to the former does not suffice to warrant rejection of Steele's hostile work environment claim.

Finally, the government invites us to affirm the district court's judgment on the alternative basis that Steele's allegations fail as a matter of law to rise to the level of actionable harassment. As noted at the outset, we think the more prudent course is to allow the district court to decide this issue on remand. *See Doe v. DiGenova*, 779 F.2d 74, 89 (D.C.

10

Cir. 1985) ("'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))).  In remanding the issue, we express no opinion as to whether Steele's hostile work environment claim is meritorious.

## C

Title VII's *anti-discrimination* provision makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race."  42 U.S.C. § 2000e-2(a).  Title VII's *anti-retaliation* provision makes it unlawful for an employer "to discriminate against [an] employee[] . . . because he has opposed any practice" made unlawful by Title VII or "has made a charge, testified, assisted, or participated in" a Title VII proceeding. *Id.* § 2000e-3(a). The district court held that, for retaliatory conduct to be actionable, it must meet the same standard required for discriminatory conduct -- i.e., it must constitute an "adverse employment action," which the court defined as "an action that results in 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'" Order at 11 (quoting *Brody*, 199 F.3d at 457).  Under that standard, the court found that a number of Steele's retaliation claims did not survive review.  *Id.* at 12.

Nine months after the district court dismissed Steele's claims, the Supreme Court decided *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).  In *Burlington*, the Court expressly rejected the Sixth Circuit's standard for retaliation claims, which was the same standard that circuit applied to substantive discrimination claims and identical to the standard applied by the district court in this case.  The Sixth Circuit's view was that, to succeed on a retaliation claim,

11

"a plaintiff must show an 'adverse employment action,' which [that circuit] defined as a 'materially adverse change in the terms and conditions' of employment." *Id.* at 60 (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004)). Finding that the "language of the substantive provision differs from that of the anti-retaliation provision in important ways," *id.* at 61, the Supreme Court concluded that "Title VII's substantive provision and its anti-retaliation provision are not coterminous," and that the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," *id.* at 67.

As to "how harmful an act of retaliatory discrimination must be in order to fall within the provision's scope," *id.* at 61, the Court "agree[d] with the formulation" this court set forth in *Rochon v. Gonzalez*: "In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted)). That standard does not require consideration either of the severity of the underlying act of discrimination to which the employee objected, or -- as the USDA insists -- of the courage that particular employee demonstrated by reporting it (and hence of her asserted imperviousness to acts of retaliation). Indeed, *Burlington* expressly forecloses such considerations. *Id.* at 69 ("[T]his standard does *not* require a reviewing court or jury to consider the nature of the discrimination that led to the filing of the charge." (internal quotation marks omitted)); *id.* at 68 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective.").

12

In light of the Court's decision in *Burlington*, the government concedes that the district court applied the wrong standard for retaliatory conduct. It nonetheless urges us to affirm on the ground that Steele's allegations do not in any event constitute actionable retaliation. Appellee's Br. 19. As we have already explained, the state of the record and the factual intricacies intertwined with some of the allegations make us unwilling to delve into most of the questions that the district court did not address.

We do note, however, that at least four alleged incidents that Steele describes as retaliatory -- the denial of the Y2K award, the issuance of the lowest performance rating of her career combined with the lowest performance bonus in her branch, the denial of the special act award, and the false report to the D.C. Office of Unemployment Compensation contesting her unemployment benefits -- involve conduct that this court or the Supreme Court has already indicated can support a retaliation claim. As the district court correctly noted, we held in *Russell v. Principi* that a cash bonus diminished as a result of a poor performance evaluation can constitute a cognizable action under Title VII. Order at 13 (citing 257 F.3d 815, 819 (D.C. Cir. 2001)); *see also Weber*, 494 F.3d at 184-86 (D.C. Cir. 2007) (holding that two performance evaluations "qualif[ied] as adverse actions" under *Burlington* "insofar as they resulted in . . . losing a financial award or an award of leave"). And in *Burlington*, the Supreme Court indicated that a false report to government authorities can constitute retaliation, citing with approval the Tenth Circuit's finding of "actionable retaliation where [an] employer filed false criminal charges against [a] former employee who complained about discrimination." 548 U.S. at 64 (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (10th Cir. 1996)).

13

We express no opinion as to whether the actions alleged in Steele's remaining retaliation claims can constitute "materially adverse actions." On remand, the district court should apply the *Burlington* standard to those allegedly retaliatory actions that it determines took place after Steele complained about discriminatory conduct, and that it finds are otherwise properly before the court.

III

For the foregoing reasons, we reverse the dismissal of Steele's hostile work environment and retaliation claims and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

BENOIT BROOKENS                             *

                Plaintiff                *

     v.                                  * Civil Action No. 08-0086 (ESH)

                                   *

ELAINE L. CHAO                              *
Secretary, U.S. Department of Labor         *

             Defendant             *

_____            *

### PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS OR
### IN THE ALTERNATIVE FOR SUMMARY JUDGMENT

    The Plaintiff by and though counsel respectfully opposes the motion filed by the

Defendant to dismiss or, in the alternative, for summary judgment and in support thereof

states the following[1]: (1) Count One of Plaintiff's First Amended Complaint was timely

filed; (2)  Counts One through Four of the First Amended Claim properly state claims of

employment discrimination as well as retaliation;  and (3)  the Plaintiff is eligible for the

positions for which he was not selected and may assert said non-selection before this

court. In further support of his opposition, the Plaintiff relies on the Memorandum

attached hereto.

---

[1] The Plaintiff will at this time voluntarily withdraw Count Five of his First Amended Complaint for Damages.

Respectfully Submitted,

 /s/ B. K. Cobbina_____
Boniface K. Cobbina, Esquire
DC Bar No. 347757
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036
202-463-6900
Bkc215@gmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

BENOIT BROOKENS                          *

            Plaintiff                *

    v.                                   * Civil Action No. 08-0086 (ESH)

                        *

ELAINE L. CHAO                           
Secretary, U.S. Department of Labor      *

            Defendant                *

_____  *

**PLAINTIFF'S MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**
**OR IN THE ALTERNATIVE FOR SUMMARY JUDGMENT**

Factual Allegations

       The factual allegations are detailed in Plaintiff's First Amended Complaint for

Damages filed with the court. Briefly stated, the Plaintiff is African-American and over

40 years of age and has been employed with the  U.S. Department of Labor as an

international economist (GS-12) since 1990. The Plaintiff has both law and graduate

business degrees from Columbia University, New York, NY from which he graduated in

1973; his background and experience include practicing law and teaching as an adjunct

professor at the University of Virginia, Falls Church, VA campus. Since his employment

with the U.S. Department of Labor began in 1990, he has applied for and been denied

numerous promotional and advancement opportunities and he remains an International

3

Economist, GS-12. Paragraph 16 of the Amended Complaint details the discriminatory

conduct to which the Plaintiff has been subjected as follows:

> Over the course of more than fifteen (15) years up to and including the present, the
>
> Defendant has intentionally subjected the Plaintiff to unequal and discriminatory
>
> treatment because of his race and age by:

> (a)  repeatedly denying him promotions and instead selecting less qualified
>
> white or other employees for those positions;

> (b)  excluding  the Plaintiff from officer, management and supervisory level
>
> positions;

> (c)  Assigning higher grade levels to white or other employees who have
>
> the same or similar or lower level responsibilities as the Plaintiff;

> (d)  denying the Plaintiff training and mentoring opportunities;

> (e)  repeatedly denying the Plaintiff positions to which he can be detailed to
>
> provide him training, experience and promotional or advancement
>
> opportunities;

> (f)  repeatedly denying the Plaintiff desk audits which would assess his
>
> competence and performance for purposes of promotional  or
>
> advancement opportunities;

> (g)  Denying the Plaintiff grade level increases  to reflect his performance
>
> and responsibilities;

(h) falsely ranking the Plaintiff at a lower grade than white employees doing substantially similar work;

(i)  paying the Plaintiff less than similarly situated and less qualified white employees;

(j)  falsely representing that the Plaintiff's university level experience as a professor in economics does not qualify him for higher level promotional and advancement opportunities;

(k)  subjecting the Plaintiff  to higher level of scrutiny and to stricter standards than white employees; and

(l)  repeatedly retaliating against the Plaintiff because he has engaged in protected activity including complaining about the discriminatory conduct against him and filing complaints to attempt to redress said discriminatory conduct.

Similarly, paragraph 17 of the Amended Complaint sets forth the adverse impact on the Plaintiff of the discriminatory conduct of the Defendant as follows:

As a direct and proximate result of the wrongs committed by the Defendant, the Plaintiff has suffered and continues to suffer substantial damages to include loss of income, loss of professional opportunities and advancement, damage to his reputation and character, great mental anguish, humiliation, degradation, physical and emotional pain and suffering, and other consequential damages.

<u>Argument</u>

1. <u>**Count One of the Amended Complaint is timely**</u>

Under Title VII**,** federal employees are required to file lawsuits seeking relief for employment discrimination within 90 days of receipt of notice of final administrative action. 42 U.S.C. § 2000e-16(c).  Equal Employment Opportunity Commission ("EEOC") regulations also require a claimant "under title VII**,** the ADEA and the Rehabilitation Act to file a civil action in an appropriate United States District Court . . . [w]ithin 90 days of receipt of the final action on an individual or class complaint." 29 C.F.R. § 1614.407(a) (2006). It bears emphasizing that the operative phrase is within ninety days of receipt of the final action.

In this case, it is incontrovertible that the Plaintiff received the notice of the final action on October 18, 2007. The Plaintiff has filed a declaration to that effect and it is attached hereto and marked Exhibit 1 for identification. As such, the action was due to be filed on or before January 16, 2008 and it was in fact so filed.

Summary judgment is warranted only where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." <u>FED. R. CIV. P. 56(c)</u>. See also <u>Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)</u>. A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." <u>Id. at 248</u>. "[S]ubstantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.

In this case, the Plaintiff asserted in his Amended Complaint for Damages that he had "exhausted the administrative remedies where required and satisfied all administrative and statutory prerequisites necessary for the institution of this action; furthermore, the action is timely as to all counts herein." The assertion was supported by the declaration of the Appellant which was made a part of his opposition to Defendant's initial motion to dismiss and for summary judgment filed with the court on or about July 8, 2008. It would appear that the Defendant was not aware of the declaration and therefore based her arguments on the rebuttable presumption of five ( 5) days contained in the EEOC notice to the Plaintiff.  We certainly agree with the Defendant that EEOC's decision stated in bold print of the Plaintiff's right to file a civil action within 90 days of his receipt of the EEOC's decision. The Plaintiff in fact complied within that directive, even if he did it on the last day that he was required to do so.

In a recent similar case involving timeliness of claims,  the U.S.  Court of Appeals for the District of Columbia reversed the grant of summary judgment stating that the trial court "failed to acknowledge that a genuine issue of material fact existed as to the date" of appellant's contact with an EEO Counselor. See Steele v. Schafer, Secretary of Agriculture, 05-5430 (for ease of reference, a copy of the decision is attached hereto and marked Exhibit 5). In this case, the trial-worthy evidence is that the Plaintiff received the final action decision from the EEOC on October 18, 2007. The Plaintiff would therefore submit that summary judgment is inappropriate on this issue based on the facts and the record.

### 2.  Counts One through Four properly state Claims of Employment Discrimination as well as retaliation

In the case of Aktieselskabet AF 21 November 2001 v. Fame Jeans Inc., 525 F.3d 8, 13-14 (D.C. Circuit 2008), the U.S. Court of Appeals for the District of Columbia stated the following:

> In deciding a 12(b)(6) motion, a court "constru[es] the complaint liberally in the plaintiff's favor," "accept[ing] as true all of the factual allegations contained in the complaint," Kassem v. Wash. Hosp. Ctr., No. 06-7161, 513 F.3d 251, 2008 U.S. App. LEXIS 1174, at 2 (D.C. Cir. Jan. 22, 2008), "with the benefit of all reasonable inferences derived from the facts alleged," Stewart, 471 F.3d at 173. However, the district court interpreted Twombly as establishing a new threshold for complaints: enough facts to "clarify the grounds" on which each claim rests and "nudge[] their claims across the line from conceivable to plausible." Aktieselskabet AF 21. November 2001 v. Fame Jeans, Inc., 511 F. Supp. 2d 1, 18-19 (D.D.C. 2007). Many courts have disagreed about the import of Twombly. We conclude that Twombly leaves the long-standing fundamentals of notice pleading intact.

A review of the First Amended Complaint has detailed facts in support of his claims.  The factual allegations set forth in Counts One through Four are detailed in paragraphs 1 though 17 and are incorporated into all the counts.

### 3.  The Plaintiff was qualified and eligible for all the positions in Counts One, Two and Three for which he was not selected and  he is entitled to hearing de novo  in this court.

As are set forth in his Amended Complaint and in his Declaration(exhibit 1), the Plaintiff was qualified and eligible for selection for all positions the subject of his Amended Complaint, notwithstanding the fact that in more than 18 years  at  the U.S. Department of Labor, he has not been promoted and the Defendant has acted or not

8

acted in a sustained effort to scuttle and undermine all promotional and advancement

opportunities for the Plaintiff. The Bargaining Agreement between Local 12, AFGE,

AFL-CIO and the Defendant states that the Plaintiff is eligible for the detail as Acting

Director under Count One of the complaint. (Exhibit 2).  Additionally, under the rules

of the U.S. Office of Personnel management, some vacancies are advertized under the

delegated examining authority as was done in the case of the Deputy Director position

alleged in Count Three. (Exhibit 3). The Plaintiff was eligible and applied for the

position under the delegated examining process.(Exhibit 4). Under  Fed. R. Civ. Proc.

56(f), the Plaintiff requests that he should be allowed to conduct discovery to

document the facts essential to his opposition to the motion to dismiss and for

summary judgment.(Exhibit 1)

The Defendant also seeks collateral estoppel regarding matters for which he

has appealed to this court, as if seeking the Court's imprimatur for its unlawful and

sustained discriminatory conduct. To apply collateral estoppel or issue preclusion to

an issue or fact, the proponent must demonstrate that (1) the issue or fact is identical

to the one previously litigated; (2) the issue or fact was actually resolved in the prior

proceeding; (3) the issue or fact was critical and necessary to the judgment in the prior

proceeding; (4) the judgment in the prior proceeding is final and valid; and (5) the

party to be foreclosed by the prior resolution of the issue or fact had a full and fair

opportunity to litigate the issue or fact in the prior proceeding. See IN RE:

MICROSOFT CORPORATION ANTITRUST LITIGATION, <u>355 F.3d 322; 2004</u>

<u>U.S. App. LEXIS 575</u> The decision at the EEOC by the administrative judge was not

in a court, was not a judgment and was not final. In any event, the Supreme Court has

held that the Plaintiff is entitled to appeal his case to this court and for this court to

hear the case de novo. <u>Chandler v. Roudebush, 425 U.S. 840, 96 S.Ct. 1949, 48</u>

<u>L.Ed.2d 416 (1976)</u>

Based on the foregoing, the Plaintiff would respectfully request that the motion

filed by the Defendant be denied..

Respectfully Submitted,

_/s/ B. K. Cobbina_____
Boniface K. Cobbina, Esquire
DC Bar No. 347757
1150 Connecticut Avenue, NW
Suite 900
Washington, DC 20036
202-463-6900
Bkc215@gmail.com

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

_____

| | |
|---|---|
| BENOIT BROOKENS | * |
| Plaintiff | * |
| v. | * Civil Action No. 08-0086 (ESH) |
| | * |
| ELAINE L. CHAO | |
| Secretary, U.S. Department of Labor | * |
| Defendant | * |
| _____ | * |

<u>ORDER</u>

Upon consideration of the motion filed by the Defendant to dismiss or in the

alternative for summary judgment, the response there and for good cause shown, it is this

_____ day of   _____ 2008

OREDERD: the motion is denied.


_____
.                                JUDGE HUVELLE

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I caused a copy of the foregoing opposition  along with the

Memorandum, Statement of Material Facts with Genuine Issue, Order and Exhibits to be

served electronically on Alan Burch, Esquire, counsel for the defendant, at

alan.burch@usdoj.gov this 15th day of  August, 2008.


                                           ____/s/ B.K. Cobbina_____
                                           Boniface K. Cobbina

**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

_____

BENOIT BROOKENS                          *

                    Plaintiff            *

        v.                               * Civil Action No. 08-0086 (ESH)

                                         *

ELAINE L. CHAO                           *
Secretary, U.S. Department of Labor

                    Defendant            *

_____         *

**<u>STATEMENT OF GENUINE ISSUES SETTING FORTH ALL MATERIAL
FACTS AS TO WHICH IT IS CONTENDED THERE EXISTS A GENUINE
ISSUE NECESSARY TO BE LITIGATED</u>**

The Plaintiff hereby states his statement of genuine issues setting forth all material

facts as to which it is contended there exists a genuine issue necessary to be litigated:

1. The Plaintiff is eligible for GS-15 and GS- 14 under the positions under the

   delegated examining authority or process. See Plaintiff's Declaration (Exhibit 1)

   paragraphs 2, 3 and 4; also see Plaintiff's First Amended Complaint for Damages,

   paragraphs 9 and 12.

2. Plaintiff disputes that he was not qualified for the Senior Executive Service

   position. . See Plaintiff's Declaration (Exhibit 1) paragraphs 2, 3 and 4; also see

   Plaintiff's First Amended Complaint for Damages, paragraphs 9 and 12.

Respectfully Submitted,

_/s/ B. K. Cobbina_____
Boniface K. Cobbina, Esquire
1150 Connecticut Avenue, NW, Suite 900
Washington, DC 20036
202-463-6900
Bkc215@gmail.com

# EXHIBIT 1

# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

BENOIT BROOKENS                                    *

               Plaintiff                  *

      v.                                          * Civil Action No. 08-0086 (ESH)

                                            *

ELAINE L. CHAO
Secretary, U.S. Department of Labor                *

               Defendant                  *

                                            *

## <u>DECLARATION OF PLAINTIFF BENOIT BROOKENS</u>

Pursuant to 28 U.S.C. § 1746, I hereby declare under the penalty of perjury that the following facts and things set forth herein are known to me of my own personal knowledge to be true, and if called upon to testify to the matters in this affidavit, I could and would competently do so:

1. I received the notification regarding my right to sue in respect of the personnel action denominated as Count One in Plaintiff's Proposed First Amended Complaint for Damages on October 18, 2007.

2. Exhibit 2 attached to Plaintiff's Opposition to the Motion to Dismiss Or, in the alternative for Summary Judgment is an excerpt at pages 55, 56 and 57 of the Agreement between Local 12, AFGE, AFL-CIO and the U.S. Department of Labor and it shows that the Plaintiff was eligible for detail in GS-14 and 15

1

positions if the detail lasted not more than 120 days. Furthermore, I am eligible to apply for GS-14 and GS-15 positions under the delegated examination process.

3.  Exhibit 3 attached to Plaintiff's Opposition to the Motion to Dismiss or, in the alternative for Summary Judgment is a page taken from the web site of the U.S. Office of Personnel Management describing the delegated examining authority.

4.  Exhibit 4 attached to Plaintiff's Opposition to the Motion to Dismiss Or, in the alternative for Summary Judgment is a copy of my application for consideration for the position of Deputy Director position alleged in Count Three of Plaintiff's First Amended Complaint for Damages. The "DE" designation at the end of the Announcement Number (ILAB 07-068DE) reflects my application for the position under the designated examining authority.

5.  Pursuant to Fed. R. Civ. Proc. 56(f), the Plaintiff states that because the discrimination and retaliation alleged herein are particularly within the province of the Defendant and he would need the assistance of expert witnesses, e.g. regarding his qualification and eligibility under the delegated examining authority, to document facts essential to his opposition, he requests the opportunity to conduct discovery in aid of this opposition to the motion to

dismiss and for summary judgment.

Benoit Brookens
August 15, 2008

# EXHIBIT 2

employee shall be deemed to have elected the forum under which he/she wishes to proceed at the time he/she files a grievance, an appeal with the MSPB, or a formal EEO complaint.

## ARTICLE 18
## Merit Staffing

### Section 1. Introduction

The Department will adhere to all applicable Government-wide rules and regulations and the provisions in this Article in the administration of Merit Staffing. Moreover, the Department shall administer this Article in accordance with DPR 335, dated April 28, 2004, as specified or except as provided herein. Any future changes to this regulation will be handled in accordance with Article 38. The purpose and intent of this Article are to ensure that employees are given full and fair consideration and to ensure selection from among the best-qualified candidates. The Department and Local 12 also agree to fill positions in the bargaining unit on the basis of merit in accordance with systematic and equitable procedures adopted for this purpose.

### Section 2. Coverage

The following personnel actions are covered under competitive merit staffing procedures:

a. Promotions other than those which are excepted in Section 3 below;

b. Time-limited promotions for more than 120 days (prior service during the preceding 12 months under noncompetitive time-limited promotions and noncompetitive details to higher graded positions counts toward the 120-day total);

c. Details for more than 120 days to a higher grade position or to a position with higher promotion potential (prior service during the preceding 12 months under noncompetitive time-limited promotions and noncompetitive details to higher graded positions counts toward the 120-day total);

d. Selection for training which is part of an authorized training agreement, part of a promotion program, or required by a formal training program before an employee may be considered for promotion;

Case 1:08-cv-00086-ESH   Document 15-2   Filed 08/15/2008   Page 21 of 48

e. Reassignment or demotion to a position with more promotion potential than a position previously held on a permanent basis in the competitive service (except as permitted under reduction-in-force);

f. Transfer to a position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service; and

g. Reinstatement to a permanent or temporary position at a higher grade or with more promotion potential than a position previously held on a permanent basis in the competitive service.

## Section 3. Exclusions

Actions not specifically described as covered actions in Section 2 above are excluded from coverage including, but not limited to, the following:

a. A promotion resulting from the upgrading of a position without significant change in the duties or responsibilities due to the issuance of a new classification standard or the correction of an initial classification error;

b. A position change permitted by reduction-in-force regulations;

c. A promotion without current competition of an employee who was appointed in the competitive service from a civil service register, by direct hire, by noncompetitive appointment or noncompetitive conversion, or under competitive procedures for an assignment intended to prepare the employee for the position being filled, (e.g., career ladder, trainee, and understudy positions, and conversions from various special appointing authorities (e.g., Career Intern Program, etc);

d. A promotion resulting from an employee's position being reclassified at a higher grade because of additional duties and responsibilities;

e. A temporary promotion, or detail to a higher-grade position or a position with known promotion potential, of 120 days or less;

f. Promotion to a grade previously held on a permanent basis in the competitive service (or similar OPM-approved system) from which the employee was separated or demoted for other than performance or conduct reasons;

g. Promotion, detail to a p potential of held on a p OPM-appro or conduct

h. Priority con ation in a c

i. Appointme reinstateme the compet positions es

j. A temporar tion was ma might lead potential ca

k. An appoint competitive

## Section 4. Vaca

Vacancy announce fair and open com U.S.C. 2301.

## Section 5. Inter

Selecting officials selection shall be viewed all availab The interview ma of the art technolo items such as wor complete writing

## Section 6. Care

a. A career lad the same lin progress fro performanc promoted as level, and n

with more promotion
on a permanent basis in
:ted under reduction-in-

r with more promotion
on a permanent basis in

ary position at a higher
than a position previously
itive service.

ictions in Section 2 above
limited to, the following:

ig of a position without
nsibilities due to the
l or the correction of an

m-in-force regulations;

n of an employee who was
m a civil service register,
atment or noncompetitive
lures for an assignment
e position being filled,
udy positions, and conver-
uthorities (e.g., Career

:e's position being reclassi-
onal duties and responsibili-

igher-grade position or a
al, of 120 days or less;

n a permanent basis in the
)proved system) from which
l for other than performance

nd the U.S. Department of Labor

g. Promotion, reassignment, demotion, transfer, reinstatement or detail to a position having promotion potential no greater than the potential of a position an employee currently holds or previously held on a permanent basis in the competitive service (or similar OPM-approved system) and did not lose because of performance or conduct reasons;

h. Priority consideration of a candidate not given proper consideration in a competitive promotion action;

i. Appointments of career SES appointees with competitive service reinstatement eligibility to any position for which they qualify in the competitive service at any grade or salary level, including positions established under 5 CFR 319;

j. A temporary promotion made permanent if the temporary promotion was made under competitive procedures and the fact that it might lead to a permanent promotion was made known to all potential candidates; and

k. An appointment from a certificate of eligibles resulting from a competitive examination, e.g., delegated examining.

## Section 4. Vacancy Announcements

Vacancy announcements will be publicized in such a way as to ensure fair and open competition in accordance with Merit Systems Principles, 5 U.S.C. 2301.

## Section 5. Interviews and Selections

Selecting officials have the right to select or not to select. However, no selection shall be made unless and until the selecting official has interviewed all available candidates on the certificate who are within the unit. The interview may be done face-to-face, by telephone, or by other state of the art technology as available. Candidates may be required to submit items such as work products upon interview, or may be required to complete writing samples, etc., during interviews.

## Section 6. Career Ladders in DOL

a. A career ladder is a series of positions of increasing difficulty in the same line of work through which a group of employees may progress from the entrance levels to the journey level of full performance. They are all given grade-building experience and are promoted as they demonstrate ability to perform at the next higher level, and meet all eligibility requirements.

# EXHIBIT 3

# Chapter 1 – OPM and Agency Responsibilities

This chapter describes the responsibilities that are typically outlined in Interagency Delegated Examining Agreements between OPM and agencies. This chapter contains the following sections:

| Section A | What is Delegated Examining Authority? |
| Section B | OPM Responsibilities |
| Section C | Agency Responsibilities |
| Section D | Delegated Examining Training Responsibilities |
| Section E | References |

## Section A - What is Delegated Examining Authority?

### What is delegated examining authority?

Delegated examining authority is an authority OPM grants to agencies to fill competitive civil service jobs with:

- Applicants applying from outside the Federal workforce,
- Federal employees who do not have competitive service status, or
- Federal employees with competitive service status.

Appointments made by agencies through delegated examining authority are subject to civil service laws and regulations. This is to ensure fair and open competition, recruitment from all segments of society, and selection on the basis of the applicants' competencies or knowledge, skills, and abilities (see 5 U.S.C. § 2301).

# EXHIBIT 4



# U.S. Department of Labor
# All Applicant Data Report

**Announcement Number:** ILAB 07-068DE
**Position Title:** Supervisory International Economist

**Name:** BENOIT BROOKENS, II
**SSN:** 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
**Address1:** 460 Taylor Street, NE
**Address2:** Apt. G-44
**City:** Washington,
**State:** DC
**Post Code:** 20017
**Plus4:**
**Phone:** 202/693-4868
**Email:** brookens-benoit@dol.gov
**United States Citizen:** Y
**Date of Birth:** Jan 1, 1900
**Veteran Preference:** NV
**Start of Service:**
**End of Service:**

**Core Questions**
1. Are you a **veteran** who was separated from the armed forces under honorable conditions after completing an initial continuous tour of duty of 3 years (may have been released just short of 3 years)?
**Answer:**
1. Yes

2. Are you a current Federal employee?
**Answer:**
1. Yes

3. Are you a current Federal employee serving under a **Veterans Recruitment Appointment (VRA)** authority?
**Answer:**
2. No

4. If you are a current Federal employee, by what agency are you employed?
**Answer:**
1. U.S. Department of Labor

6. If you are a current Federal employee, what is your duty station? [City, State] (Enter N/A if Not Applicable)
**Answer:** Washington, DC

7. If you are a Federal employee, under what type of appointment are you currently serving?
**Answer:**
1. **Permanent-Career, competitive service**

8. Are you a student appointee under the **Student Career Experience Program** who has completed all requirements for graduation and conversion under the SCEP appointing authority and is within the 120 day period for conversion to term, career or career-conditional appointment?
**Answer:**
2. No

9. If you are NOT currently serving in the **competitive service** as a **permanent career** or **career-conditional** Federal employee, are you eligible for reinstatement based on career or career-conditional Federal status in the competitive service?
**Answer:**
1. Yes

10. If you are, or ever were, a Federal civilian employee, please indicate pay plan of the highest grade

Exhibit ____
Page 2 of 21 Pages



position you held:
**Answer:**
12. FC

**12.** If you are, or ever were, a Federal civilian employee, please indicate the highest-grade level you held.
**Answer:**
4. 04

**13.** If you are, or ever were, a Federal civilian employee, please indicate the dates of the highest title, series, graded position you held (MM-YYYY to MM-YYYY or Present, or NA if Not Applicable):
**Answer:** 01/1990 to present

**14.** If you are, or were, a Federal employee who held a permanent position in the competitive service, what is the **highest full performance level** of that position?
**Answer:**
12. 12

**15.** May we contact your current supervisor for a reference?
**Answer:**
2. No

**16.** Does the Department of Labor employ any member of your family?
**Answer:**
2. No

**18.** If you are a male at least 18 years of age, born after December 31, 1959, have you registered with the **Selective Service System**?
**Answer:**
3. Not Applicable

**19.** If you are a male at least 18 years of age, born after December 31, 1959 AND you have NOT registered with the **Selective Service System**, do you have an approved exemption?
**Answer:**
3. Not Applicable

**20.** Are you a retiree receiving a Federal annuity, either military or civilian?
**Answer:**
2. No

**21.** Have you accepted a buyout from a Federal agency within the past 5 years?
**Answer:**
2. No

**22.** Are you eligible for noncompetitive appointment under a Special Appointing Authority?
**Answer:**
2. No

**24.** Displaced employee information:
**Answer:**
3. I am not a displaced employee from a Federal Agency.

**25.** For DOL employees only, what is your bargaining union status?
**Answer:**
2. Local 12

**26.** The Department of Labor does not recognize academic degrees (including any coursework leading to a degree) from schools that are not accredited by an accrediting institution recognized by the Department of Education. Any applicant falsely claiming an academic degree from an accredited school will be subject to actions ranging from disqualification from federal employment to removal from federal service. Please check the appropriate box.
**Answer:**
1. I certify that my academic degree (or degrees) is from a college or university accredited by an accrediting institution recognized by the Department of Education.

**27.** Other employee consideration: I am an employee of the Department of Labor who has not been declared surplus or displaced, however, I have been notified in writing that I may be affected by reorganization, competitive sourcing, etc., AND I am requesting priority consideration under the Department of Labor's Career Transition Assistance Plan.
**Answer:**

Exhibit ___EY___

Page __2__ of __21__ Pages



2. No


**Assessment Questions**
What locations do you wish to apply to?
Washington DC Metro Area, DC

What Grades do you wish to apply to?
15

**Grade: 15**


1. To meet the Additional Qualifications Requirements for Economist, GS-15, select the option that best describes your experience background. Note: In addition to meeting the basic entry qualification requirements, applicants must have specialized experience and/or directly-related education.
**Answer:**
1. I have at least one year of work experience at a GS-14 level performing duties which demonstrates: (a) individual economic research assignments requiring planning, information assembly, analysis and evaluation, conclusions and report preparation; (b) supervisory or project coordination assignments involving a staff of professional economists, and requiring the evaluation and interpretation of economic information; or (c) teaching assignments in a college or university.

2. Where did you learn about this Department of Labor job opportunity? (check all that apply)
**Answer:**
10. Other

3. I understand submission of supporting documentation, e.g., transcripts, DD-214, SF-50, may be required for this position. I also understand that my application will not be considered if the required supporting documentation is not submitted or is not submitted in accordance with the time frames indicated in the announcement.
**Answer:**
1. Yes

4. Are you available for periodic travel throughout the United States and overseas?
**Answer:**
1. Yes

5. I have been responsible for taking a broad policy, directive or law, and translating it into program goals. I have tracked those goals during, and following, a project.
**Answer:**
1. True

6. Choose the one statement that best describes your experience developing and coordinating the organization's responses to legislative, regulatory or other proposals affecting assigned programs.
**Answer:**
2. I have performed this task as a regular part of my job, at the bureau (or equivalent) level. I performed this task independently and normally without review by a supervisor.

7. Select the one option that most accurately describes your ability to coordinate the evaluation and development of program performance and accountability methodologies as they relate to the Government Performance and Results Act (GPRA).
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

8. Please indicate the statement that best describes your level of expertise in forecasting such things as the potential impact of new policies, program costs, and/or legislation.
**Answer:**
4. I have performed this task as a regular part of a job, independently and usually without review by supervisor, manager or senior employee.

9. Do you have applied experience with human capital policy analysis related to a larger Corporate or Governmental initiatives? This might include, but is not limited to, workforce planning, attrition analysis, retirement projections, or a budgetary analysis related to workforce needs. To answer yes, you must have at least six months experience.
**Answer:**
1. Yes

10. Choose the statement that best describes your experience with projects in direct support of the President's Management Agenda (PMA) or other organizational initiatives that involve similar areas of focus. The PMA involves government-wide initiatives including strategic management of human capital, competitive

Exhibit ___F4___

Page __4__ of __21__ Pages



sourcing, improved financial performance, expanded electronic government, and budget and performance integration.
**Answer:**
3. I have performed this task on the job, with close supervision from supervisor or senior employee.

**11.** Please select the statement that best describes your experience in conducting analysis of international economic policy.
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

**12.** Do you have at least six months of experience conducting research related to foreign economics?
**Answer:**
1. Yes

**13.** Indicate those written products for which you have been responsible as a regular part of a job. To accurately choose each product, you must have completed - start to finish - at least three of them over the course of a year. Assisting on a product does not count, for purposes of this response, but coauthoring does.
**Answer:**
1. Issue/position papers or summary reports on organizational data that included analysis and recommendations
2. Brief responses to Departmental or Corporate inquiries on a wide range of policy matters
3. Policy statements and guidance to internal stakeholders
4. Budget support, justification impact and analysis
5. Guidelines or procedural instructions for implementing new initiatives or systems
6. Recommendations for solutions to policy or reporting problems
7. Correspondence that consolidates input from a number of different sources (including contradictory viewpoints)
9. Presentation or briefing materials
10. Briefings and testimony for Congressional hearings

**14.** Choose the statement(s), if any, that describe your experience with talking points for presentations.
**Answer:**
1. I have prepared talking points that have later been presented to others.
2. I have helped someone else to prepare talking points by completing research or editing their draft talking points.
3. I have delivered presentations, based on prepared talking points.

**15.** Do you have at least six months' experience editing documents, reports or publications?
**Answer:**
1. Yes

**16.** Choose the statement that best describes your experience managing contracts and/or grants.
**Answer:**
3. I have performed this task on the job, with close supervision from supervisor or senior employee.

**17.** Have you ever received a top performance rating (e.g., outstanding, exemplary) as a supervisor or manager? For purposes of this question, a supervisor is someone who has authority to hire, fire and evaluate employees. A manager is someone who has authority to hire, fire and evaluate those supervisors.
**Answer:**
1. Yes

**18.** Have you ever received a top performance rating (e.g., outstanding, exemplary) as a team leader? Team lead is a role similar to supervisor, but lacking the formal HR authority to hire, promote and discipline employees on the team.
**Answer:**
1. Yes

**19.** The following phrases describe different aspects of work related to technical assistance cooperative agreements and grants. Choose those that accurately describe your professional experience within the last ten years. Unless otherwise noted, the experience can pertain to any sector.
**Answer:**
15. My experience is not accurately described here

**20.** Choose the statement that best describes your experience researching and summarizing U.S. labor laws and regulations, within the past 10 years.
**Answer:**
5. This task has been a central or major part of my work. I have performed it myself routinely, and I have trained others in performance of this task and (or) others have consulted me as an expert for assistance in performing this task.

**21.** Choose the statement that best describes your experience researching and summarizing non-U.S. labor laws

Exhibit FU

Page 5 of 21 Pages



and regulations, within the past 10 years.
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

22. Do you have at least six months of experience researching, or assisting in the development of policy with respect to the reduction or elimination of tariffs and other barriers of international trade?
**Answer:**
1. Yes

23. Do you have at least six months of experience researching, or managing projects related to, economic development in developing countries?
**Answer:**
1. Yes

24. Choose the statement that best describes your experience researching, analyzing and summarizing activities and positions related to the International Labor Organization (ILO)
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

25. Choose the statement that best describes your experience researching, analyzing and summarizing activities and positions related to the World Trade Organization (WTO).
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

26. Choose the statement that best describes your experience researching, analyzing and summarizing activities and positions related to the Organization for Economic Cooperation and Development (OECD).
**Answer:**
4. I have performed this task as a regular part of the job, independently and usually without review by supervisor or senior employee.

27. Have you participated in any meetings, conferences, or projects related to ILO, WTO, or OECD?
**Answer:**
1. Yes

28. Choose the statement that best describes your experience researching and summarizing U.S. labor trade-related international labor standards within the past 10 years.
**Answer:**
5. This task has been a central or major part of my work. I have performed it myself routinely, and I have trained others in performance of this task and (or) others have consulted me as an expert for assistance in performing this task.

29. Choose the statement that best describes your experience analyzing the labor provisions of recent Free Trade Agreements such as Chile, CAFTA, Oman, Bahrain, Jordan, Singapore, Australia, etc.
**Answer:**
2. I have had education or training in performing this task, but have not yet performed it on the job.

30. Have you completed at least one project, spanning a week or more, dealing with the Procedural Guidelines issued by DOL's Office of Trade and Labor Affairs regarding the acceptance and review of public submissions?
**Answer:**
2. No

31. Select each of the following organizations, offices, or groups with which you have work experience.
**Answer:**
1. World Trade Organization (WTO)
2. International Labor Organization (ILO)
3. Organization for Economic Cooperation and Development (OECD)
4. Bureau of International Labor Affairs (ILAB)
5. United States Trade Representative (USTR)
6. State Department
7. Trade Policy Review Group (TPRG)
8. Trade Policy Staff Committee (TPSC)
9. Other trade-related organizations or groups not listed here

32. Choose the statement that best describes your ability to read and understand Spanish in a business context, without the use of a dictionary.
**Answer:**
1. I can understand almost no written Spanish, in a business context.

Exhibit  F4
Page  6  of  21  Pages



33. Choose the statement that best describes your ability to speak Spanish in a business context, without the use of a dictionary.
**Answer:**
1. I can speak almost no Spanish, in a business context.

34. Choose the statement that best describes your ability to read and understand French in a business context, without the use of a dictionary.
**Answer:**
1. I can understand almost no written French, in a business context.

35. Choose the statement that best describes your ability to speak French in a business context, without the use of a dictionary.
**Answer:**
1. I can speak almost no French, in a business context.

36. Choose the statement that best describes your ability to read and understand Arabic in a business context, without the use of a dictionary.
**Answer:**
1. I can understand almost no written Arabic, in a business context.

37. Choose the statement that best describes your ability to speak Arabic in a business context, without the use of a dictionary.
**Answer:**
1. I can speak almost no Arabic, in a business context.


**Resume**
Benoit Brookens, II

460 Taylor Street, NE
Apt. G-44
Washington,, DC 20017
Day Phone: 202/693-4868
Email: brookens-benoit@dol.gov
Social Security Number: xxx-xx-6868
Country of citizenship: United States of America
Veterans' Preference: No
Highest Grade: GS-110-12, 01/1990-present
Contact Current Employer: No
AVAILABILITY
Job Type:
Permanent

Work Schedule:
Full Time

DESIRED LOCATIONS
US

WORK EXPERIENCE
U.S. Department of Labor
Washington,, DC
US
1/1990 - Present
Grade Level: GS-12
Salary: $80,000 USD Per Year
Hours per week: 40
International Economist, 110
Serve as a member of the inter-governmental Generalized System of Preference (GSP) Committee, U.S. trade delegations, and negotiating teams to assess the impact of trade agreements on the U.S. Labor force for industrial sectors. Sectors included automobiles, auto parts, satellites, supercomputers, and petrochemical. Represented the U.S. Department of Labor on trade delegations/trade policy committee which included negotiations with Japan, the European Community, the North American Free Trade Agreement (NAFTA) and the Latin American Free Trade Area of the Americas (FTAA). Served as a member of the trade sanctions (Section 301) Committee.

(1994) Detail, Program Officer (Information Officer GS-14, Acting Secretary, (Senior Executive Service, SES, Executive Level); National Administrative Office,(NAO) North American Free Trade Agreement (NAFTA)

Prepared comparative analysis of the labor side agreements for the U.S., Mexico, and Canada. Responsible for Public Information Officer duties, including disclosing sensitive hearing records to the public and for assuring compliance with provisions of the Freedom of Information (FOIA) statute.

Private Practice
Washington, D.C.

Exhibit _F4_

Page _7_ of _21_ Pages



US
1/1980 - 1/1990
Hours per week: 40
Attorney/Economist/Professor
Private economic and regulatory practice, including consumer advocacy and trial practice, multi-unit
residential development and condominium conversion, business and financial planning and international
finance. Consultant, Export-Import Bank. Consumer Advocate, D.C. Public Service Commission. Won major housing
public interest litigation and successfully settled one the nation's largest title VIII actions. Served as an
Adjunct Professor Finance, University of Virginia--Falls Church Campus 1986-1990.

U.S. Department of State
Washington, D,C.
US
10/1973 - 3/1981
Grade Level: FS-4
Hours per week: 40
Foreign Service Officer, FS
Foreign Service Economic and Commercial Officer (Grade FS-4) 1979-1980

Program Officer for Economic and Social Affairs, Bureau of International Organizations (IO) U.S. National
Commission for U.N.E.S.C.O. Richard Knobbe, Director

Analyzed U.S. positions for presentation in multilateral specialized agencies in the areas of economics,
human rights, and social science programs. Coordinated with U.S. delegations and formulated instructions for
U.S. Mission to U.N.E.S.C.O., Paris.

1977-79, U.S. Department of State
Special Assistant, Bureau of Oceans, International Environment, and Scientific Affairs, Ambassador, John D.
Negroponte, Supervisor

Formulated, developed, and implemented programs in the oceans and living marine resources for multilateral
fisheries including U.N. Food and Agricultural Organization (FAO). Served as the State Department
representative on the Caribbean and Mid-Atlantic Regional Fisheries Commission. Member of negotiating team
for commercial fishing treaties concerning the Virgin Islands, Cuba, African fisheries, and the Law of the
Seas. Prepared legal and economic analyses for the 35 member division.

1975-77 U.S. Department of State, Assistant Commercial Attache, American Embassy, The Hague, Netherlands,
Joseph Harrary, Supervisor

Prepared economic, commercial, and legislative analysis on 15 targeted sectors evaluating banking, financial,
budgetary, export and micro-macro-economic effects. Supervised 4 professional staff at the Embassy, 2 senior
commercial officers in Rotterdam and Amsterdam, and 20 travel trade specialists in the Visit America
Information Center, Amsterdam. Chairman, Netherlands National Travel Trade Chamber of Commerce. Editor-in-
Chief, U.S. Department of Commerce, Commercial Newsletter, Benelux and Northern European Edition.

Department of Commerce, 1974

(Inter-agency Detail) Legal Advisor Bureau of International Economic Policy, European Communities Staff;
Assessed implications of European Companies Law requiring participation of labor unions of board of directors
of companies;

Acting Director, Netherlands Affairs, Bobette K. Orr, Supervisor;
Oversaw U.S. commercial and trade policy for the Netherlands

Staff member, to design and automate World Trade Data Reports and Agent-Distributor Service

1973-74 U.S. Department of State
Financial Economist, Bureau of Economic and Business Affairs, (EB) Office of Investment Affairs, Moorhead
Kennedy, Esq., Supervisor

Staffed the Cabinet level Expropriations Committee. Prepared legal opinions regarding the legality of
expropriation of U.S. commercial interests abroad. Analyzed portfolio and direct investment policies of
foreign governments and U.S. under reciprocal treatment treaties.

MBA Consultants, Inc.
New York City, NY
US
9/1971 - 10/1973
Hours per week: 20
Associate Director for Finance and Accounting
Began as staff financial consultant preparing financial and accounting statements and implementing and
designing financial management systems. Promoted to head one of two major divisions supervising 20
consultants on 10 projects valued up to $5,000,000 including plant mergers, banking and cash flows, and a New
York hospital multi-million dollar working capital/cash management system.

EDUCATION
George Washington University Law School

Exhibit _F4_

Page _8_ of _21_ Pages



Washington, DC
US
Professional
Major: Masters of Law in International Law (LLM)

Columbia University Law School
New York, NY
US
Professional
Major: (JD) International Law

Columbia University Graduate School of Business
New York, NY
US
Master's Degree
Relevant Coursework, Licensures and Certifications:
(MBA) International Finance; International Business

University of Wisconsin-Madision
Madison, WI
US
Bachelor's Degree
Major: International Economics/International Relations
Relevant Coursework, Licensures and Certifications:
(BA) Honors program

Netherlands National Economics (Erasmus) University
Rotterdam, Netherlands
Netherlands
Some College Coursework Completed
Relevant Coursework, Licensures and Certifications:
Doctoral studies in International Finance 1976-86

Columbia School of International Affairs
New York, NY
US
Some College Coursework Completed
Major: International Economics/ International Organizations
Relevant Coursework, Licensures and Certifications:
Additional studies in international economics/international organizations

LANGUAGES
Dutch
Spoken: Advanced
Written: Advanced
Read: Advanced

French
Spoken: Advanced
Written: Advanced
Read: Advanced

Spanish
Spoken: Intermediate
Written: Intermediate
Read: Intermediate


PROFESSIONAL PUBLICATIONS
Child Labor Report for Mozambique, 2006 Report, 2005 Findings on the Worst Forms of Child Labor, U.S.
Department of Labor, Government Printing Office, 2006;

Book Review "North American Free Trade: Issues and Recommendations"; Journal of Inter-American Studies and
World Affair, Volume 34, Number 2, Summer 1992;

Book Review "North America Without Borders? Integrating Canada, the United States, and Mexico;" Journal of
Inter-American Studies and World Affairs, Volume 35, Number 1, 1993;

"Diplomatic Protection of Foreign Economic Interests in the New International Economic Order" Journal of
Inter-American Studies and World Affairs, Spring 1978;

U.S. Department of Commerce, International Marketing Series 1976
The Netherlands Markets for "Scientific and Laboratory Equipment"; Industrial Maintenance Equipment; Health
Care and Hospital Equipment

REFERENCES
Benoit Brookens
U.S. Department of Labor

Exhibit __P4__

Page __9__ of __21__ Pages

International Economist
Phone Number: 202/693-4868
Email Address: brookens-Benoit@dol-gov
Reference Type: Professional

ADDITIONAL INFORMATION
Department of Labor Group Awards for establishing the National Administrative Office (NAO) for NAFTA and Negotiating the Automotive Chapter, North American Free Trade Agreement (NAFTA);

Columbia University, International Fellow;
Columbia Law School, Hughes Fellow in Human Rights;
Columbia Journal of International Affairs, Associate for Business Affairs;
Sloan Foundation, COGME Fellow in International Financial Management;
Pi Sigma Alpha, National Political Science Honor Society, Secretary, Pi Chapter, University of Wisconsin-Madison;
Honors Program, University of Wisconsin-Madison.

Exhibit F4
Page 10 of 21 Pages

**EXHIBIT 5**

# United States Court of Appeals

**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

———

Argued October 5, 2007          Decided August 1, 2008

No. 05-5430

CHERYL STEELE,
APPELLANT

v.

ED SCHAFER, SECRETARY OF AGRICULTURE,
APPELLEE

———

Appeal from the United States District Court
for the District of Columbia
(No. 02cv00452)

———

*S. Micah Salb* argued the cause for appellant. With him on the briefs was *Richard H. Semsker* and *Julie Glass Martin-Korb*.

*Alan Burch*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Jeffrey A. Taylor*, U.S. Attorney, and *R. Craig Lawrence*, Assistant U.S. Attorney. *Michael J. Ryan* and *Stratton C. Strand*, Assistant U.S. Attorneys, entered appearances.

Before: GARLAND and GRIFFITH, *Circuit Judges*, and WILLIAMS, *Senior Circuit Judge*.

Opinion for the Court filed by *Circuit Judge* GARLAND.

2

GARLAND, *Circuit Judge*:  On this appeal, Cheryl Steele contends that the district court wrongly dismissed her claims against her former employer, the United States Department of Agriculture, for creating a hostile work environment and unlawfully retaliating against her in violation of Title VII of the Civil Rights Act of 1964.  We agree.  We therefore reverse the court's grant of summary judgment against Steele on those claims.

I

Steele is an African-American woman who worked as an economist in the U.S. Department of Agriculture (USDA).  She alleges that the USDA -- principally through her supervisor, James Johnson -- discriminated against her because of her race in numerous ways, including:  intentionally giving her an incompetent assistant; falsely accusing her of misusing government credit cards; unjustifiably denying her a promotion; depriving her of credit for her work; interfering with her professional development by excluding her from important projects; and unreasonably denying her several cash awards.

Steele further alleges that, after she complained about her discriminatory treatment, the Department retaliated against her by, inter alia:  giving her the lowest performance rating of her career; awarding her the lowest performance bonus in her branch and half the amount given to all white employees; denying her a "special act award" in 1999; and denying her a cash bonus that was given to every other member of her "Y2K" team that prepared the Department's technical systems for the transition to the year 2000.  Steele also asserts that the USDA's harassment forced her to resign in 2000, and that the Department continued to retaliate against her after her resignation by falsely contesting her unemployment benefits at the District of Columbia Office of Unemployment Compensation.

3

After unsuccessfully pursuing administrative remedies, Steele filed suit in the district court, asserting Title VII claims of discrimination, a hostile work environment, retaliation, and constructive discharge.[1]  The USDA moved for summary judgment on all of the claims, and the court granted the motion. *See* Order Granting Def.'s Mot. for Summ. J., *Steele v. Veneman*, 1:02-cv-00452 (D.D.C. Sept. 28, 2005) ("Order").

The district court first addressed the timeliness of Steele's claims under 29 C.F.R. § 1614.105(a)(1), which requires a federal employee in the Executive Branch to "initiate contact" with an Equal Employment Opportunity (EEO) Counselor in her agency within 45 days of an allegedly discriminatory action. The court noted a "discrepancy" in the record regarding the date of Steele's first contact with an EEO Counselor:  different documents stated that the initial contact occurred in January, February, and June of 1999.  Order at 9 n.3.  The court adopted the June date on the ground that it was the date that Steele alleged "in her complaint and . . . admissions."  *Id.* Accordingly, the court denied relief on those of Steele's claims that it found arose more than 45 days before June 18, 1999.  *Id.* at 11.  The court also rejected Steele's argument that otherwise untimely claims could be included as part of a timely hostile work environment claim.  *Id.*

Next, the district court addressed the USDA's contention that Steele failed to state a prima facie case of discrimination or retaliation because a number of the incidents she alleged did not constitute "adverse employment actions." *Id.*  The court defined an "adverse employment action" as "an action that results in 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'" *Id.* (quoting *Brown*

---

[1]The title of Steele's complaint mentions "sex discrimination," but Steele pursues only claims of racial discrimination on appeal.

4

*v. Brody*, 199 F.3d 446, 457 (D.C. Cir. 1999)). Under that definition, the court ruled that at least six incidents could not constitute actionable discrimination or retaliation. *Id.* at 12.

Finally, the court granted summary judgment to the USDA on Steele's constructive discharge claim. The court explained that "a constructive discharge claimant must show that (1) her employer intentionally discriminated against her, (2) the employer deliberately made her working conditions intolerable, and (3) aggravating factors justified the claimant's conclusion that she had no option but to end her employment." *Id.* at 14 (citing *Carter v. George Wash. Univ.*, 180 F. Supp. 2d 97, 110 (D.D.C. 2001)). The court held that Steele could not prevail because the record "contains no evidence" of "conditions that were so intolerable, so aggravating, that any reasonable person would have felt compelled to quit." *Id.* at 15.

Without further specification, the district court entered final judgment in favor of the USDA and dismissed the case. Steele now appeals. Her briefs do not dispute the dismissal of her discrimination and constructive discharge claims, *see* Oral Argument Rec. 36:44, 37:00 (acknowledgment by Steele's counsel that she does not raise those claims on appeal), but do challenge the district court's rejection of her retaliation and hostile work environment claims. We address those challenges below.

II

This court reviews a district court's grant of summary judgment de novo. *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002). Summary judgment may be granted only if "there is no genuine issue as to any material fact and . . . the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). A fact is material if it "might affect the

5

outcome of the suit under the governing law," and a dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[A]t the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . ruling on a motion for summary judgment . . . ." *Id.* at 255.

Steele argues that the district court's decisions regarding her hostile work environment and retaliation claims rested on three legal errors. We agree. First, in determining that several of Steele's claims were time-barred, the court failed to acknowledge that a genuine issue of material fact existed as to the date of Steele's contact with an EEO counselor. Although the district court's opinion was oblique as to the scope of its ruling, that date affects both Steele's hostile work environment and retaliation claims. Second, regarding Steele's hostile work environment claim, the court adopted a timeliness rule that is inconsistent with the Supreme Court's decision in *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101 (2002), and as a consequence never reached the merits of that claim. Third, the court applied a standard for retaliation claims that is inconsistent with the Supreme Court's decision in *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006).

Although the government acknowledges that the district court erred, it invites us to review the evidence de novo and affirm on other grounds. We decline the invitation. In light of the tangled record on appeal, we lack confidence that we have all of the information necessary to conduct such a review.

6

In the following subparts, we present our analysis in more detail. Part II.A addresses the district court's error in granting summary judgment with respect to the timeliness of certain of Steele's claims, notwithstanding the existence of a genuine issue of material fact. Part II.B discusses the court's adoption of an erroneous timeliness rule for Steele's hostile work environment claim. Finally, Part II.C examines the court's application of an inapposite standard for evaluating Steele's retaliation claims.

A

An employee of the federal government who believes that she has been the subject of unlawful discrimination must "initiate contact" with an EEO Counselor in her agency "within 45 days of the date of the matter alleged to be discriminatory." 29 C.F.R. § 1614.105(a)(1); *see Weber v. Battista*, 494 F.3d 179, 182-83 (D.C. Cir. 2007); *see also* 42 U.S.C. § 2000e-16. "Because timely exhaustion of administrative remedies is a prerequisite to a Title VII action against the federal government," a court may not consider a discrimination claim that has not been exhausted in this manner absent a basis for equitable tolling. *Stewart v. Ashcroft*, 352 F.3d 422, 426 (D.C. Cir. 2003); *see Greer v. Paulson*, 505 F.3d 1306, 1316-17 (D.C. Cir. 2007).

The district court held that Steele's first contact with an EEO Counselor was June 18, 1999, and that those of her claims involving incidents that took place more than 45 days before that date were therefore barred. Steele's complaint does state that, "[f]rom June 18, 1999, to April, 2000, . . . Steele took issues regarding discriminatory treatment . . . to an EEO counselor at defendant agency." Compl. ¶ 6. But the complaint does not say that this was the only period in which she contacted a counselor, and, as the district court noted, other documents in the record create a "discrepancy" regarding the first contact date. Order at

7

9 n.3. Steele's admissions to the USDA, submitted as an exhibit to the government's motion for summary judgment, state: "[Steele] contacted an EEO Counselor for the first time in January, 1999, but did not pursue filing a formal complaint at that time. The Plaintiff contacted an EEO Counselor again in June 1999 to file a formal complaint." Pl.'s Admis. ¶ 8. Moreover, the USDA's own Record of Investigation states that Steele "made initial contact with an EEO Counselor on February 22, 1999." JA 185. At the summary judgment stage, the district court was not free to resolve this disputed issue by disregarding the January and February dates.

Although we cannot tell from the district court's Order how many incidents it thought could not be considered based on the erroneously chosen contact date, there is no doubt that the date is material to Steele's hostile work environment and retaliation claims. To the extent the district court relied on the June 1999 date in rejecting or limiting those claims, its judgment is reversed.

B

The district court also rejected Steele's contention that, even if some of her individual claims were time-barred, she could still rely on their underlying events to support her claim that she was subjected to a hostile work environment. *See* Order at 11. Accordingly, the court dismissed that claim without reaching the merits. This was error.

In *National Railroad Passenger Corp. v. Morgan*, the Supreme Court explained that "[h]ostile environment claims are different in kind from discrete acts" because "[t]heir very nature involves repeated conduct." 536 U.S. 101, 115 (2002). Therefore, the Court held, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time

8

period of the hostile environment may be considered by a court for the purposes of determining liability." *Id.* at 117. This is precisely the rule that the district court rejected in Steele's case, and the USDA concedes that the court's holding was incorrect. *See* Oral Argument Rec. 28:12.

Notwithstanding the district court's error, the USDA urges us to affirm the judgment on several independent grounds.

First, the Department contends that Steele did not assert a hostile work environment claim in her complaint. This argument is unavailing. The complaint alleges "discrimination," which in principle includes a hostile work environment theory; it also specifically requests Steele's reassignment "to a less hostile working environment." Compl. at 1, 12. Moreover, Steele indisputably raises a constructive discharge claim premised on a hostile work environment, and under *Pennsylvania State Police v. Suders*, 532 U.S. 129, 133-34 (2004), the facts necessary to prove a hostile work environment are a subset of those necessary to prove this type of constructive discharge. Indeed, the government's motion for summary judgment acknowledged that Steele "appears to allege that all the events alleged in the complaint caused her to experience a hostile work environment," and it both sought summary judgment on that claim and responded to it (a response qualified, to be sure, by the observation that it responded to such a claim "to the extent" raised). Def.'s Mem. of P. & A. at 2, 17-19; *see also* Def.'s Mot. for Summ. J. Steele's opposition responded by expressly contesting the government's motion as to that claim. *See* Pl.'s Opp'n to Def.'s Mot. for Summ. J. at 4-6. Given all these circumstances, and in the absence of any apparent prejudice, we think it too late to argue that the plaintiff never asserted such a claim.

9

Second, the USDA argues that, even if Steele did assert a hostile work environment claim, we should affirm because the district court effectively reached and rejected the merits of that claim by ruling against Steele on her constructive discharge claim. The district court, the government maintains, "rightly interpreted [Steele's hostile work environment claim] to be coextensive with her constructive discharge claim." Appellee's Br. 13. But as the Supreme Court made clear in *Suders*, the standards for hostile work environment and constructive discharge claims are not coextensive. 542 U.S. at 133-34 (2004). To establish hostile work environment claims under Title VII, the Court explained, plaintiffs "must show harassing behavior 'sufficiently severe or pervasive to alter the conditions of [their] employment.'" *Id.* at 133 (alteration in original) (quoting *Meritor Savings Bank, FSB v. Vinson*, 477 U.S. 57, 67 (1986)). "Beyond that, . . . to establish 'constructive discharge,' the plaintiff must make a further showing: She must show that the abusive working environment became so intolerable that her resignation qualified as a fitting response." *Id.* at 134. The district court's rejection of Steele's constructive discharge claim on the ground that she did not show working conditions "so intolerable, so aggravating, that any reasonable person would have felt compelled to quit," Order at 15, simply does not address whether Steele successfully made the lesser showing that she experienced severe or pervasive harassment that altered the conditions of her employment. Accordingly, the district court's holding as to the former does not suffice to warrant rejection of Steele's hostile work environment claim.

Finally, the government invites us to affirm the district court's judgment on the alternative basis that Steele's allegations fail as a matter of law to rise to the level of actionable harassment. As noted at the outset, we think the more prudent course is to allow the district court to decide this issue on remand. *See Doe v. DiGenova*, 779 F.2d 74, 89 (D.C.

10

Cir. 1985) ("'It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below.'" (quoting *Singleton v. Wulff*, 428 U.S. 106, 120 (1976))). In remanding the issue, we express no opinion as to whether Steele's hostile work environment claim is meritorious.

C

Title VII's *anti-discrimination* provision makes it unlawful for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race." 42 U.S.C. § 2000e-2(a). Title VII's *anti-retaliation* provision makes it unlawful for an employer "to discriminate against [an] employee[] . . . because he has opposed any practice" made unlawful by Title VII or "has made a charge, testified, assisted, or participated in" a Title VII proceeding. *Id.* § 2000e-3(a). The district court held that, for retaliatory conduct to be actionable, it must meet the same standard required for discriminatory conduct -- i.e., it must constitute an "adverse employment action," which the court defined as "an action that results in 'materially adverse consequences affecting the terms, conditions, or privileges of employment.'" Order at 11 (quoting *Brody*, 199 F.3d at 457). Under that standard, the court found that a number of Steele's retaliation claims did not survive review. *Id.* at 12.

Nine months after the district court dismissed Steele's claims, the Supreme Court decided *Burlington Northern & Santa Fe Railway Co. v. White*, 548 U.S. 53 (2006). In *Burlington*, the Court expressly rejected the Sixth Circuit's standard for retaliation claims, which was the same standard that circuit applied to substantive discrimination claims and identical to the standard applied by the district court in this case. The Sixth Circuit's view was that, to succeed on a retaliation claim,

11

"a plaintiff must show an 'adverse employment action,' which [that circuit] defined as a 'materially adverse change in the terms and conditions' of employment." *Id.* at 60 (quoting *White v. Burlington N. & Santa Fe Ry. Co.*, 364 F.3d 789, 795 (6th Cir. 2004)). Finding that the "language of the substantive provision differs from that of the anti-retaliation provision in important ways," *id.* at 61, the Supreme Court concluded that "Title VII's substantive provision and its anti-retaliation provision are not coterminous," and that the "scope of the anti-retaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm," *id.* at 67.

As to "how harmful an act of retaliatory discrimination must be in order to fall within the provision's scope," *id.* at 61, the Court "agree[d] with the formulation" this court set forth in *Rochon v. Gonzalez*: "In our view, a plaintiff must show that a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* at 68 (quoting *Rochon*, 438 F.3d 1211, 1219 (D.C. Cir. 2006) (internal quotation marks omitted)). That standard does not require consideration either of the severity of the underlying act of discrimination to which the employee objected, or -- as the USDA insists -- of the courage that particular employee demonstrated by reporting it (and hence of her asserted imperviousness to acts of retaliation). Indeed, *Burlington* expressly forecloses such considerations. *Id.* at 69 ("[T]his standard does *not* require a reviewing court or jury to consider the nature of the discrimination that led to the filing of the charge." (internal quotation marks omitted)); *id.* at 68 ("We refer to reactions of a *reasonable* employee because we believe that the provision's standard for judging harm must be objective.").

12

In light of the Court's decision in *Burlington*, the government concedes that the district court applied the wrong standard for retaliatory conduct. It nonetheless urges us to affirm on the ground that Steele's allegations do not in any event constitute actionable retaliation. Appellee's Br. 19. As we have already explained, the state of the record and the factual intricacies intertwined with some of the allegations make us unwilling to delve into most of the questions that the district court did not address.

We do note, however, that at least four alleged incidents that Steele describes as retaliatory -- the denial of the Y2K award, the issuance of the lowest performance rating of her career combined with the lowest performance bonus in her branch, the denial of the special act award, and the false report to the D.C. Office of Unemployment Compensation contesting her unemployment benefits -- involve conduct that this court or the Supreme Court has already indicated can support a retaliation claim. As the district court correctly noted, we held in *Russell v. Principi* that a cash bonus diminished as a result of a poor performance evaluation can constitute a cognizable action under Title VII. Order at 13 (citing 257 F.3d 815, 819 (D.C. Cir. 2001)); *see also Weber*, 494 F.3d at 184-86 (D.C. Cir. 2007) (holding that two performance evaluations "qualif[ied] as adverse actions" under *Burlington* "insofar as they resulted in . . . losing a financial award or an award of leave"). And in *Burlington*, the Supreme Court indicated that a false report to government authorities can constitute retaliation, citing with approval the Tenth Circuit's finding of "actionable retaliation where [an] employer filed false criminal charges against [a] former employee who complained about discrimination." 548 U.S. at 64 (citing *Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (10th Cir. 1996)).

13

We express no opinion as to whether the actions alleged in Steele's remaining retaliation claims can constitute "materially adverse actions." On remand, the district court should apply the *Burlington* standard to those allegedly retaliatory actions that it determines took place after Steele complained about discriminatory conduct, and that it finds are otherwise properly before the court.

III

For the foregoing reasons, we reverse the dismissal of Steele's hostile work environment and retaliation claims and remand the case for further proceedings consistent with this opinion.

*Reversed and remanded.*